# Appendix A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF<br>GULF INVESTMENT CORPORATION FOR<br>AN ORDER TO OBTAIN DISCOVERY FOR<br>USE IN FOREIGN PROCEEDINGS<br>PURSUANT TO 28 U.S.C. §1782 | Case No. _____ |

## DECLARATION OF KRISTIN N. TAHLER

    Pursuant to 28 U.S.C. § 1746, I, Kristin N. Tahler, declare under penalty of perjury as follows:

    1.  I am an attorney admitted to practice in New York and California. I am a partner in the law firm Quinn Emanuel Urquhart & Sullivan, LLP, which serves as counsel for Gulf Investment Corporation ("**GIC**"),[1] in legal matters involving The Port Fund L.P. ("**Port Fund**"), a private equity fund in which GIC is a significant limited partner.

    2.  I submit this declaration in support of the application submitted by GIC ("**Application**") in the Southern District of New York for an order under 28 U.S.C. § 1782 authorizing GIC to take discovery from: (a) Bank of America, N.A. ("**Bank of America**"); (b) The Bank of New York Mellon ("**Bank of New York**"); (c) Citibank, N.A. ("**Citibank**"); (d) Deutsche Bank AG, New York Branch ("**Deutsche Bank USA**"); (e) Deutsche Bank Trust Company USA ("**Deutsche Bank Trust**"); (f) Goldman Sachs and Co. ("**Goldman Sachs**"); (g) HSBC Bank USA, N.A. ("**HSBC**"); (h) J.P. Morgan Chase Bank, N.A. ("**J.P. Morgan**"); (i) Mashreqbank

---

[1]  GIC is a Kuwait-based corporation owned by the governments of the six member states of the Gulf Cooperation Council (i.e. Bahrain, Kuwait, Oman, Qatar, Saudi Arabia, and the United Arab Emirates). *See* Gulf Investment Corporation, http://www.gic.com.kw/.

PSC, New York Branch ("**Mashreqbank**"); (j) National Australia Bank Limited, New York Branch ("**National Australia Bank**"); (k) Standard Chartered Bank, New York Branch ("**Standard Chartered**"); and (l) Wells Fargo Bank N.A. ("**Wells Fargo**") (collectively, "**Correspondent Banks**"). I understand that GIC seeks documents and information from the Correspondent Banks, as defined in the Application as the "**Requested Discovery**."

3.      I further understand that the Requested Discovery is being sought to support the **Contemplated Cayman Litigation**, as also defined in the Application.

4.      I am familiar with the information set forth in this declaration either from personal knowledge or on the basis of documents I have prepared and/or reviewed.  Because I submit this declaration specifically in support of the Application, it does not contain each and every fact within my knowledge regarding the topics discussed herein.[2]

## I.      GIC'S RELATIONSHIP WITH THE PORT FUND

5.      Between 2007 and 2013, GIC invested a total of USD 20 million into the Port Fund.[3]

6.      Pursuant to the terms of an Amended and Restated Limited Partnership Agreement ("**LPA**") entered into between the Port Fund's limited partners and the Port Fund's general partner Port Link GP Ltd. ("**Port Link**"): (a) on an annual basis, Port Link was supposed to cause each of the Port Fund's limited partners (including GIC) to be provided with a report from the Port Fund's auditor setting out, among other things (i) the Port Fund's balance sheet; (ii) a statement of the Port Fund's net profit or net loss for the year; and (iii) a statement of changes in the Port Fund's financial

---

[2]      I also certify that the exhibits attached hereto are true and correct copies of the original documents.

[3]      *See* **Ex. A**, August 19, 2007 letter from the Port Fund to GIC (confirming acceptance of GIC's USD 10 million investment in 2007); **Ex. B**, May 28, 2013 letter from the Port Fund to GIC (confirming acceptance of GIC's USD 10 million investment in 2013); *see also* **Ex. C**, September 23, 2019 letter from Walkers (the Port Fund's Cayman counsel) to GIC (noting GIC's USD 20 million investment).

position or a cash flow statement; and (b) on a quarterly basis, the Port Fund's administrator, KGL Investment Company KSCC ("**KGLI**"), was supposed to cause each of the Port Fund's limited partners (including GIC) to be provided with a summary review of investments that the Port Fund had made and exited and financial information relating to the activities of the Port Fund.[4]

7.       The LPA also sets forth the process that the Port Fund was required to follow when making distributions from each of its exited investments.[5] Specifically, distributions were to be made in the following order:

a.       Distribution step one: the Port Fund would return any capital contributions made by its limited partners;

b.       Distribution step two: the Port Fund would pay the limited partners an 8% annual return on their respective capital contributions;

c.       Distribution step three: the Port Fund would pay its investment manager 20% of the return amounts paid to the limited partners as part of distribution step two; and

d.       Step four: the Port Fund would split any funds remaining after the first three distribution steps with 80% going to its limited partners and 20% going to its investment manager.[6]

---

[4]       *See* **Ex. D**, LPA at § 7.2.

[5]       *See* **Ex. D**, LPA at § 4.3(b).

[6]       *See* **Ex. D**, LPA at § 4.3(b).

## II.   THE PORT FUND'S DISTRIBUTIONS TO GIC

8.       The Port Fund maintained bank accounts in its own name at HSBC Bank Middle East Limited, Kuwait ("**HSBC Kuwait**") and Al Ahli Bank of Kuwait ("**Al Ahli Bank**"), which GIC used to make its capital commitments to the Port Fund.[7]

9.       In October 2016, supposedly in connection with the Port Fund's sale of its investment in Negros Navigation, as defined in the Application, Port Link distributed USD 2.8 million to GIC.[8]

10.       On November 14, 2017, in connection with the Port Fund's sale of its investment in the Clark Asset, as defined in the Application, USD 496 million was transferred from Philippine bank BDO Unibank to an account held by Port Link at Noor Bank in Dubai.[9]

11.       On November 15, 2017, Pork Link sent a letter to Noor Bank ("**November 2017 Port Link Letter**") instructing it to transfer USD 32.1 million from its account at Noor Bank – account number 02410890280039 – to GIC's account at Citibank, characterizing the transfer as a "2nd Distribution – Balance Capital & Accumulated Profit to date."[10]

12.       On February 5, 2019, after the USD 496 million held in Pork Link's account at Noor Bank was unfrozen, a distribution of USD 25.4 million was made to GIC in connection with

---

[7]       *See* **Ex. A**, August 19, 2007 letter from the Port Fund to GIC (providing account details for the Port Fund's account at HSBC Kuwait for payments of capital commitments); **Ex. B**, May 28, 2013 letter from the Port Fund to GIC (providing account details for the Port Fund's account at Al Ahli Bank for payments of capital commitments).

[8]       *See* **Ex. E**, February 7, 2019 letter from the Port Fund to GIC (noting this amount represented GIC's share of the Port Fund's exit from its investment in the parent of Negros Navigation, 2GO Group); *see also* September 23, 2019 letter from Walkers to GIC at 2 (noting this distribution).

[9]       *See, e.g.*, Davide Barbuscia, *Kuwait asks Dubai to release funds frozen in money laundering probe – letter*, REUTERS (Nov. 9, 2018), https://www.reuters.com/article/us-emirates-kuwait-probe-exclusive/exclusive-kuwait-asks-dubai-to-release-funds-frozen-in-money-laundering-probe-letter-idUSKCN1NE26T; *see also* Dodo Dulay, *BSP, AMLC and the Kuwait-Dubai money feud*, MANILA TIMES (Dec. 11, 2018), https://www.manilatimes.net/2018/12/11/opinion/columnists/bsp-amlc-and-the-kuwait-dubai-money-feud/480836/480836/.

[10]       *See* **Ex. F**, November 15, 2017 letter from Port Link to Noor Bank.

the sale of the Clark Asset ("**Clark Asset Distribution**").[11] GIC believes that the Clark Asset Distribution was made from Port Link's account at Noor Bank rather than from the Port Fund's bank accounts with HSBC Kuwait or Al Ahli Bank. (This is consistent with the November 2017 Port Link Letter.)

13.    The Clark Asset Distribution was made to GIC without any accounting for the commingling of Port Fund and Port Link monies.

14.    Further, the amount of the Clark Asset Distribution was based on total distributions to the limited partners from the sale of the Clark Asset of USD 305 million.[12] Given that the Port Fund has repeatedly stated that the proceeds from its sale of the Clark Asset amounted to USD 496 million,[13] the Clark Asset Distribution did not account for the remaining USD 191 million belonging to the Port Fund's limited partners, including GIC.

### III.    THE PORT FUND'S REFUSAL TO PROVIDE INFORMATION TO GIC

15.    Despite GIC's repeated efforts to seek further information concerning the Port Fund's finances – information to which GIC is entitled and owed under the LPA – the Port Fund and its principals have refused to provide GIC with (a) information showing how much the Port Fund invested in the Clark Asset; (b) a precise accounting for the USD 496 million proceeds from its sale of the Clark Asset; and (c) an explanation of the USD 191 million discrepancy between

---

[11]    *See* **Ex. E**, February 7, 2019 letter from the Port Fund to GIC.

[12]    *See* **Ex. C**, September 23, 2019 letter from Walkers to GIC.

[13]    *See, e.g.*, Press Release, Port Fund, The Port Fund Successfully Secures Release of $496 Million Frozen in Dubai (Feb. 5, 2019), https://www.prnewswire.com/news-releases/the-port-fund-successfully-secures-release-of-496-million-frozen-in-dubai-300789828.html.

this acknowledged USD 496 million amount and the USD 305 million that the Port Fund has distributed to date from the Clark Asset sale.[14]

16.     Indeed, the Port Fund and its principals have refused to provide GIC with any information regarding the whereabouts of the remaining USD 191 million from the sale of the Clark Asset.

### IV.     PROPOSED SUBPOENAS TO CORRESPONDENT BANKS

17.     Attached as Exhibit M is a draft subpoena *deuces tecum* to Bank of America.

18.     Attached as Exhibit N is a draft subpoena *deuces tecum* to Bank of New York.

19.     Attached as Exhibit O is a draft subpoena *deuces tecum* to Citibank.

20.     Attached as Exhibit P is a draft subpoena *deuces tecum* to Deutsche Bank Trust.

21.     Attached as Exhibit Q is a draft subpoena *deuces tecum* to Deutsche Bank USA.

22.     Attached as Exhibit R is a draft subpoena *deuces tecum* to Goldman Sachs.

23.     Attached as Exhibit S is a draft subpoena *deuces tecum* to HSBC.

24.     Attached as Exhibit T is a draft subpoena *deuces tecum* to J.P. Morgan.

25.     Attached as Exhibit U is a draft subpoena *deuces tecum* to Mashreqbank.

26.     Attached as Exhibit V is a draft subpoena *deuces tecum* to National Australia Bank.

---

[14]     *See, e.g.*, **Ex. G**, October 8, 2019 letter from GIC to Crowell & Moring (the Port Fund's U.S. counsel) (requesting information about the Port Fund's investment in the Clark Asset and distributions related thereto); **Ex. H**, October 17, 2019 letter from Walkers to GIC (refusing to provide the information requested in GIC's October 8 letter); **Ex. I**, October 23, 2019 letter from GIC to Walkers (again requesting information about the Port Fund's investment in the Clark Asset and distributions related thereto); **Ex. J**, November 4, 2019 letter from Walkers to GIC (refusing to provide the information requested in GIC's October 23 letter); **Ex. K**, November 13, 2019 letter from Meysan Partners (GIC's Kuwaiti counsel) to Walkers (again requesting information about the Port Fund's investment in the Clark Asset and distributions related thereto); **Ex. L**, November 21, 2019 letter from Walkers to Meysan Partners (simply acknowledging receipt of Meysan Partner's November 13 letter). Although the Port Fund offered to provide certain information to GIC in response to its requests, this offer was premised on the condition that GIC execute a non-disclosure agreement ("**NDA**"). *See, e.g.*, Ex. H at 1; Ex. J at 1-2. As GIC made clear to the Port Fund (*see, e.g.*, Ex. I at 1, Ex. K at 2-3), this precondition was unacceptable for many reasons, including the fact that the LPA already imposed strict duties of confidentiality on GIC in its capacity as a Port Fund limited partner. *See* LPA at § 7.3 (governing confidentiality). Moreover, the Port Fund never even provided GIC with a draft NDA.

27.     Attached as Exhibit W is a draft subpoena *deuces tecum* to Standard Chartered.

28.     Attached as Exhibit X is a draft subpoena *deuces tecum* to Wells Fargo.

29.     Attached as Exhibit Y is a proposed order granting GIC's Application.

* * *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in La Quinta, California on this the 26th day of December 2019.

_____

Kristin N. Tahler