# Appendix B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

EX PARTE APPLICATION OF GULF INVESTMENT CORPORATION FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No. _____

### DECLARATION OF ANNA PECCARINO

Pursuant to 28 U.S.C. § 1746, I, Anna Peccarino, declare under penalty of perjury as follows:

1. I am an attorney with the Cayman Islands office of Travers Thorp Alberga, Attorneys-at-Law ("**TTA**"). I am admitted to practice law in the Cayman Islands and the British Virgin Islands.

2. I represent Gulf Investment Corporation ("**GIC**"), one of the limited partners in The Port Fund L.P. ("**Port Fund**"), on a number of matters, including an ongoing proceeding in the Cayman Islands against the Port Fund and its general partner Port Link GP Ltd. ("**Port Link**"), which seeks information from the Port Fund and Port Link pursuant to Section 22 of the Cayman Islands Exempted Limited Partnership Law ("**Section 22 Proceeding**").[1]

3. I submit this declaration in support of the *ex parte* application submitted by GIC for an order under 28 U.S.C. § 1782 ("**Section 1782**") permitting GIC to take discovery from (a) Citibank, N.A. ("**Citibank**"); (b) Standard Chartered Bank, New York Branch ("**Standard Chartered**"); (c) The Bank of New York Mellon, N.A. ("**Bank of New York**"); (d) HSBC Bank

---

[1] Section 22 of the Exempted Limited Partnership Law states: "Subject to any express or implied term of the partnership agreement, each limited partner may demand and shall receive from a general partner true and full information regarding the state of the business and financial condition of the exempted limited partnership." *Id.*, http://www.gov.ky/portal/pls/portal/docs/1/12620500.PDF.

1



(USA), N.A. ("**HSBC**"); (e) Deutsche Bank Trust New York ("**Deutsche Bank Trust**"); (f) Deutsche Bank AG ("**Deutsche Bank**"); (g) Goldman Sachs and Co ("**Goldman Sachs**"); (h) National Australia Bank Limited ("**National Australia Bank**"); (i) J.P. Morgan Chase Bank, N.A. ("**J.P. Morgan**"); (j) Mashreqbank PSC ("**Mashreqbank**"); (k) Bank of America, N.A. ("**Bank of America**"); and (l) Wells Fargo Bank N.A. ("**Wells Fargo**") (collectively, "**Correspondent Banks**") in the Southern District of New York ("**Application**").

4. As Cayman counsel for GIC, I am familiar with the information set forth in this declaration from (a) information and documentation provided to me by my instructing attorneys, Quinn Emanuel Urquhart & Sullivan, LLP and Meysan Partners; and (b) documents I have prepared and/or reviewed.

5. I understand that GIC seeks documents and information from the Correspondent Banks relating to, among other things, hundreds of millions of dollars that have gone missing from the Port Fund ("**Requested Discovery**").

6. I further understand that the Requested Discovery is being sought to support potential claims that GIC is considering pursuing in the Cayman Islands in relation to the Port Fund ("**Contemplated Cayman Litigation**"), for which GIC has retained TTA.

7. On instruction in connection with the Contemplated Cayman Litigation, TTA has been evaluating potential claims against, among others, the Port Fund, Port Link, KGL Investment Company KSCC ("**KGLI**") (the Port Fund's sponsor, placement agent, and administrator), and Emerging Markets PE Management Limited ("**EMPEML**") (the Port Fund's fund manager) based on, among other things: (1) missing funds from the sale of the Port Fund's investment in Clark Global City, a major greenfield airport infrastructure site in the Philippines; (2) litigation in Dubai involving EMPEML that resulted in an uncontested USD 57 million judgment against the Port



Fund and Port Link; (3) payments to lobbying and public relations firms that were hired in the name of the Port Fund, without the knowledge or consent of the Port Fund's limited partners; (4) unexplained, favorable treatment of a party related to KGLI under a loan agreement related to the Port Fund's investment in Damietta International Ports Company; and (5) the Port Fund's engagement of a non-arm's length financial advisor, Apache Asia Limited, purportedly to assist with transactions relating to at least two of its investments.

8. The Correspondent Banks are not anticipated or intended to be participants in the Contemplated Cayman Litigation.

9. The purpose of this declaration is to explain Cayman court procedure in connection with Section 1782 applications filed in U.S. courts.

10. Courts in the Cayman Islands are familiar with and receptive to discovery obtained via Section 1782 applications. Indeed, discovery obtained in connection with Section 1782 applications has been used in Cayman courts. For example, in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, 2009 CILR 553 (Sep. 24, 2009) (a true and correct copy of which is attached hereto as **Exhibit 1**), the Cayman Islands Court of Appeal specifically allowed a party to obtain discovery in the United States under Section 1782, stating that "*prima facie* a party who can invoke the jurisdiction of the US District Court under §1782 may choose to do so." *Id.* at 575.

11. In addressing Lyxor's argument that the Cayman litigant should have been enjoined from seeking discovery from a non-party under U.S. law because it could have obtained the same information pursuant to Cayman law, the court stated that Lyxor's submission "misse[d] the point" because the "right to take pre-trial deposition testimony . . . is a right conferred by U.S. law—it is not a right conferred by, or to be withheld under, Cayman law." *Id.* Where the Cayman litigant



"has taken the view that its interests are best served by seeking to obtain the information which it needs" through U.S. discovery, "[i]t cannot be said that ... choice amounts to an abuse of the process of the Cayman Courts." *Id.*[2]

12. Furthermore, the Application does not "attempt to circumvent" proof-gathering restrictions of the Cayman courts nor hinder or restrict the Cayman court's ultimate authority to rule on issues pertaining to the admissibility of evidence. Indeed, Cayman courts will not generally interfere with the admission of evidence that assists a party in its prosecution as long as it is lawfully obtained in the relevant jurisdiction, in this instance, the United States. *See Lyxor*, 2009 CILR at 575.

\* \* \* \* \*

I declare under penalty of perjury under the laws of the United States and Cayman Islands that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Grand Cayman, Cayman Islands, on this the 20th day of December 2019.

_____
Anna Peccarino

---

[2] By contrast, I am not aware of any instance where Cayman courts would reject evidence properly collected pursuant to Section 1782.