# Appendix C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

EX PARTE APPLICATION OF
GULF INVESTMENT CORPORATION FOR
AN ORDER TO OBTAIN DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. §1782

Case No. _____

## DECLARATION OF NICHOLAS BORTMAN

Pursuant to 28 U.S.C. § 1746, I, Nicholas Bortman, declare under penalty of perjury as follows:

1. I am a director of Raedas Consulting Limited ("**Raedas**"), an investigations firm based in London, England, which provides litigation and arbitration support in complex global disputes, asset-tracing and enforcement of judgments and arbitral awards. Before founding Raedas, I served as a partner and co-chair of the dispute consulting group of GPW, a London-based investigations firm. I established GPW's office in the United Arab Emirates. I received a bachelor's degree from New York University in 2000 and a master's degree from the London School of Economics in Political Science in 2005.

2. Quinn Emanuel Urquhart & Sullivan, LLP, counsel to Gulf Investment Corporation ("**GIC**"), engaged Raedas relating to legal matters involving The Port Fund L.P. ("**Port Fund**"), a private equity fund in which GIC is a significant limited partner.

3. I submit this declaration in support of the application submitted by GIC ("**Application**") in the Southern District of New York for an order under 28 U.S.C. § 1782 authorizing GIC to take discovery from: (a) Bank of America, N.A. ("**Bank of America**"); (b) The Bank of New York Mellon ("**Bank of New York**"); (c) Citibank, N.A. ("**Citibank**"); (d) Deutsche

Bank AG, New York Branch ("**Deutsche Bank USA**"); (e) Deutsche Bank Trust Company USA ("**Deutsche Bank Trust**"); (f) Goldman Sachs and Co. ("**Goldman Sachs**"); (g) HSBC Bank USA, N.A. ("**HSBC**"); (h) J.P. Morgan Chase Bank, N.A. ("**J.P. Morgan**"); (i) Mashreqbank PSC, New York Branch ("**Mashreqbank**"); (j) National Australia Bank Limited, New York Branch ("**National Australia Bank**"); (k) Standard Chartered Bank, New York Branch ("**Standard Chartered**"); and (l) Wells Fargo Bank N.A. ("**Wells Fargo**") (collectively, "**Correspondent Banks**").

4. As described further below and in the Application, I understand that GIC seeks documents and information from the Correspondent Banks relating to, among other things, USD transactions: (a) concerning the Port Fund's investment in Clark Global City, a major greenfield airport infrastructure site in the Philippines ("**Clark Asset**");[1] (b) concerning the Port Fund's investment in Philippine shipping company Negros Navigation Co., Inc. ("**Negros Navigation**"); (c) concerning the Port Fund's investment in Damietta International Ports Company ("**DIPCO**"); (d) between the Port Fund, its general partner, its placement agent and administrator, and its fund manager (collectively, "**Port Fund Companies**") and the Port Fund's advisors; (e) between the Port Fund Companies and lobbying firms that worked on behalf of the Port Fund ("**Lobbying Firms**"); (f) between the Port Fund Companies and public relations companies that may have worked on behalf of the Port Fund ("**Public Relations Companies**"); (g) between the Port Fund Companies and entities controlled by the former parent of the Port Fund's placement agent and administrator, Kuwait and Gulf Link Transport Company K.S.C.P. ("**KGL**") ("**Related**

---

[1] At various times the Clark Asset has been also been referred to as the Sabah Al-Ahmad Global Gateway Logistics City and Clark Global City. *See, e.g.*, Miguel R. Camus, *Duterte pal continues expansion, buys 177-ha Clark property*, INQUIRER (PHILIPPINES) (Nov. 18, 2017), https://business.inquirer.net/240955/duterte-pal-continues-expansion-buys-177-ha-clark-property; Jun Malig, *Kuwait firm to invest $3B in Clark project*, INQUIRER (PHILIPPINES) (Mar. 28, 2012), https://business.inquirer.net/51557/kuwait-firm-to-invest-3b-in-clark-project.

2

Companies"); and (h) between the Port Fund Companies and certain companies outside of the Related Companies that have suspicious/hidden ownership structures ("**Anomalous Companies**"), (collectively, "**Requested Discovery**").

5.  I further understand that the Requested Discovery is being sought to support claims that GIC is considering pursuing in the Cayman Islands in relation to the Port Fund ("**Contemplated Cayman Litigation**").

6.  I am familiar with the information set forth in this declaration either from personal knowledge, witness interviews or on the basis of documents I have prepared and/or reviewed. Because I submit this declaration specifically in support of the Application, it does not contain each and every fact within my knowledge regarding the topics discussed herein.[2]

I.   **KEY ENTITIES AND INDIVIDUALS**

7.  The Port Fund is a Cayman Islands exempted limited partnership organized on March 21, 2007.[3] It is a private equity fund with limited partners that include GIC.[4] Although the Port Fund had intended to raise capital commitments of USD 500 million,[5] it only managed to amass USD 188 million.[6]

---

[2]  I also certify that the exhibits attached hereto are true and correct copies of the original documents. The translation provided is as a courtesy and has not been certified.

[3]  See **Ex. A**, Port Fund registration report.

[4]  See **Ex. B**, GIC subscription booklet.

[5]  See **Ex. C**, 2007 Port Fund executive summary.

[6]  See **Ex. D**, 2016 Port Fund Financials at p. 17; *see also* Press Release, Port Fund, *The Port Fund achieves success despite challenges* (Nov. 29, 2017), https://news.kuwaittimes.net/website/port-fund-achieves-success-despite-challenges/ (hereinafter, "**November 2017 Port Fund Press Release**") (noting capital commitments of USD 188 million).

8. KGL Investment Company KSCC ("**KGLI**") is a Kuwaiti private equity and venture capital firm established in 2006.[7] KGLI is the sponsor of and the placement agent and administrator for the Port Fund.[8]

9. Port Link GP Ltd. ("**Port Link**") is a Cayman Islands exempted limited company incorporated on March 8, 2007.[9] Port Link is the Port Fund's general partner.[10]

10. Emerging Markets PE Management Limited ("**EMPEML**") is a Cayman Islands exempted limited company incorporated on March 8, 2007.[11] EMPEML, which was known as KGL Investment Cayman Ltd. until at least August 2017 (collectively with EMPEML, "**Fund Manager**"),[12] serves as the Port Fund's investment manager pursuant to an Investment Management Agreement, dated June 28, 2007 ("**IMA**").[13] The Fund Manager was previously a wholly owned subsidiary of KGLI.[14]

---

[7] *See, e.g.*, Aaron Gregg & Anu Narayanswamy, *With food supply of U.S. troops at stake and executives facing prison, Kuwaiti company launches lobbying blitz*, WASH. POST (Sept. 11, 2019), https://www.washingtonpost.com/business/economy/with-us-military-funding-at-stake-and-executives-facing-prison-kuwaiti-food-company-launches-a-global-lobbying-blitz/2019/09/11/4422e70e-c903-11e9-a1fe-ca46e8d573c0_story.html.

[8] *See* **Ex. C**.

[9] *See* **Ex. E**, Port Link registration report.

[10] *See* **Ex. C**.

[11] *See* **Ex. F**, EMPEML registration report.

[12] *See* **Ex. G**, Email from Dato Capital; **Ex. F**, EMPEML registration report.

[13] *See* **Ex. H**, EMPEML DIFC claim form.

[14] *See* **Ex. I**, FARA Registration Statement, Exhibit A, filed by Marathon Strategies LLC on behalf of KGLI on July 30, 2019, https://efile.fara.gov/docs/6289-Exhibit-AB-20190730-12.pdf (noting that "[KGLI] is an investment company that, through a wholly-owned subsidiary, managed a separate private equity fund named The Port Fund, which invested in ports and related infrastructure projects").

11. Marsha Lazareva ("**Lazareva**") is the Vice Chairman and Chief Executive Officer of KGLI and is a former director of both Port Link and the Fund Manager.[15] Saeed Dashti ("**Dashti**") is the Chairman of the KGL Group of Companies and was a director of Port Link.[16]

12. In 2012, Lazareva and Dashti, among others, were criminally charged in Kuwait with misappropriation of public funds invested in the Port Fund.[17] On November 11, 2019, Lazareva and Dashti were convicted by a Kuwaiti court and sentenced to imprisonment for 15 years in connection with these charges.[18]

13. In 2015, Lazareva and Dashti, among others, were separately criminally charged in Kuwait with embezzlement from the Kuwait Ports Authority ("**KPA**") related to an advisory services contract between KPA and KGLI.[19] On May 6, 2018, Lazareva and Dashti were convicted by a Kuwaiti court and sentenced to imprisonment for 10 and 15 years, respectively, in connection with these charges.[20] Although that conviction was overturned by the Kuwait Court of Appeal on procedural grounds, Lazareva and Dashti are currently awaiting rehearing in connection with this matter.[21]

---

[15] *See* **Ex. J**, Lazareva's Application for Interim Measures at ¶¶ 6, 41 (referring to the Fund Manager by its prior name KGL Investment Cayman Ltd.).

[16] *See* **Ex. C**; **Ex. J** at ¶ 38.

[17] *See* **Ex. K**, Press Release, KPA, *Discovery of a systematic funded campaign to attack the State of Kuwait and the Kuwait Port Authority in the United States of America in order to subvert justice in Kuwait* (Aug. 17, 2019), http://www.kpa.gov.kw/assets/pdfs/KPA%20Press%20Release-17-august-2019.pdf. The Port Fund's limited partners include two Kuwaiti state-owned entities: the KPA and the Kuwait Public Institution for Social Security. *See id.*

[18] *See, e.g.*, Joseph N. DiStefano, *Ex-Main Line investor with friends in Congress 'shelters' at Russian embassy after 15- year Kuwait sentence: report*, PHILADELPHIA INQUIRER (Nov. 11, 2019), https://www.inquirer.com/news/lazareva-kuwait-us-supply-free-yvan-20191111.html.

[19] *See* **Ex. K**.

[20] *See, e.g.*, Adam Zagorin, *Inside the Cutthroat World of Billion-Dollar Military Supply Contracts*, FOREIGN POLICY (May 7, 2018), https://foreignpolicy.com/2018/05/07/billion-dollar-military-supply-contracts/

[21] *See* **Ex. K**.

5

14.     Mark Williams ("**Williams**") is KGLI's Investment Director, the Chief Executive Officer of KGLI subsidiary KGL Investment Company Asia, and the President of Global Gateway Development Corporation ("**GGDC**"), one of the special purpose vehicles created by the Port Fund in April 2008 for its investment in the Philippines.[22]

## II.     MISCONDUCT INVOLVING THE PORT FUND

15.     The Port Fund made just five investments.[23] Three investments were written off.[24] Two investments – the Clark Asset and Negros Navigation – generated sufficient profits to allow for distributions to the Port Fund's limited partners.

16.     Raedas has obtained evidence showing: (a) discrepancies in the quantum of investment, ownership structure, and sale valuation of the Clark Asset; (b) unexplained, favorable treatment of a party related to KGLI under a loan agreement related to the Port Fund's unprofitable investment in DIPCO; (c) litigation in Dubai involving the Fund Manager that resulted in an uncontested USD 57 million judgment against the Port Fund and Port Link; (d) the Port Fund's engagement of a non-arm's length financial advisor, Apache Asia Limited ("**Apache Asia**"), purportedly to assist with transactions relating to at least two of its investments; and (e) the engagement of lobbying and public relations firms who were hired in the name of the Port Fund, without the knowledge or consent of the Port Fund's limited partners.

---

[22]     *See, e.g.*, Mark Williams, KGL Investment Company Asia, https://www.kgliasia.com/index.php/2012-03-14-03-09-46/2012-03-14-03-11-58/2012-03-14-03-23-25; **Ex L**; Cayman Search Report for GGDC.

[23]     *See* **Ex. M**, Port Fund Marketing Brochure at pp. 27-31.

[24]     *See* **Ex. N**, November 22, 2019 Letter from Port Fund to LPs (noting only two distributions from the Port Fund).

### A. Clark Asset

17. There are material discrepancies in the reported value of the Port Fund's investment in the Clark Asset. A 2012 report states that the Port Fund had invested USD 200 million in the Clark Asset and planned to invest an additional USD 500 million.[25] A 2014 press release states that the Port Fund had invested USD 100 million and pledged to invest an additional USD 150 million by the end of 2015.[26] Raedas' investigation, however, has not uncovered evidence of an investment of this amount, but rather of an investment well under USD 100 million, significantly lower than all reported figures.

18. In April 2014, the Port Fund transferred its interest in the Clark Asset to a third party. Thereafter, Williams (acting as the President of GGDC) sent a letter to Peregrine Development Inc. ("**Peregrine**"), a developer on the Clark Asset, asserting that the Port Fund was no longer the majority owner of the Clark Asset.[27] Raedas has not identified any contemporaneous evidence that the Port Fund announced it had sold its interest in the Clark Asset.

19. Through a complex series of subsequent (and also undisclosed) transactions involving another special purpose vehicle, GGDC Holdings ("**GGDH**"), the Port Fund apparently regained control of the Clark Asset by October 19, 2017 – the date upon which it was disclosed that the Port Fund had sold the Clark Asset to Clark Global City Corporation ("**CGCC**"), a subsidiary of Philippine holding company Udenna Development Corporation ("**Udenna**").[28]

---

[25] *See* Press Release, Republic of the Philippines, Private-Public Partnership Center Press, *Aquino welcomes global logistics group's plan to invest $500M* (Jan. 10, 2012), https://ppp.gov.ph/in_the_news/aquino-welcomes-global-logistics-groups-plan-to-invest-500m/.

[26] *See GGDC assumes $3-billion Clark project*, SUNSTAR PHILIPPINES (Sept. 8, 2014), https://www.sunstar.com.ph/article/365697.

[27] *See* **Ex. O**, April 14, 2014 Letter from Williams to Peregrine.

[28] *See* **Ex. P**, Commission-Decision-No.-27-M-035-2017 (noting the approval of the sale of GGDH's shares to CGCC); Doris Dumlao-Abadilla, *Duterte pal buys $1-B Clark logistics project*, PHILIPPINE DAILY INQUIRER (Oct. 21,

7

20.     CGCC's audited financial statements for the year ended December 31, 2017, show that it paid PHP 50.179 billion (approximately USD 959 million) for the Clark Asset.[29]

21.     On November 22, 2017, the Port Fund wrote to its limited partners to inform them that (a) the Port Fund had successfully exited its investment in the Clark Asset in November 2017; (b) with the completion of the sale of the Clark Asset, the Port Fund has exited all of its investments; and (c) in addition to an earlier October 2016 distribution of USD 30 million to the Port Fund's limited partners stemming from the Negros Navigation investment exit, the Port Fund was now intending to distribute approximately USD 340 million to its limited partners by the end of 2017, resulting in a total distributions of USD 370 million to the limited partners.[30]

22.     On November 29, 2017, the Port Fund issued a press release announcing the "successful exit of [its] investments doubling its Fund's capital from $188 million to $380 million and generating an annual return of 10 percent over 10 years."[31]

23.     Weeks earlier on November 14, 2017, in a transaction for which Raedas has not identified evidence of contemporaneous disclosure, Philippine bank BDO Unibank transferred approximately USD 496 million to Port Link's account at Dubai's state-owned Noor Bank in connection with the sale of the Clark Asset.[32] As part of this transfer, the funds passed through an

---

2017), https://business.inquirer.net/238999/duterte-pal-buys-1-b-clark-logistics-project (noting that "Udenna bought the project from Kuwaiti fund KGL Investment Co. (KGLI), which started the project").

[29]     *See* **Ex. Q**, CGCC's financial statements for the year ended December 31, 2017.

[30]     *See* **Ex. M**; s*ee also* **Ex. R**, February 7, 2019 letter from the Port Fund to GIC.

[31]     *See* November 2017 Port Fund Press Release.

[32]     *See* **Ex. S**, Swift receipt, November 2017; *see also* Davide Barbuscia, *Kuwait asks Dubai to release funds frozen in money laundering probe – letter*, REUTERS (Nov. 9, 2018), https://www.reuters.com/article/us-emirates-kuwait-probe-exclusive/exclusive-kuwait-asks-dubai-to-release-funds-frozen-in-money-laundering-probe-letter-idUSKCN1NE26T (hereinafter, "**Reuters Article**") (noting same); Dodo Dulay, *BSP, AMLC and the Kuwait-Dubai money feud*, MANILA TIMES (Dec. 11, 2018), https://www.manilatimes.net/2018/12/11/opinion/columnists/bsp-amlc-and-the-kuwait-dubai-money-feud/480836/480836/ (hereinafter, "**Manila Times Article**") (noting same).

account at Citibank, which acted as a U.S. intermediary for the transfer.[33] Immediately upon arrival in Dubai, however, these funds were frozen by the UAE Central Bank under suspicion of money laundering.[34]

24. Raedas has not identified satisfactory acknowledgement by the Port Fund of the discrepancy between (a) the USD 496 million transferred to Port Link's account and the near USD 1 billion sale figure for the Clark Asset reported in the Philippines; or (b) the USD 496 million transferred to Port Link's account and the Port Fund's announcement that it planned to distribute USD 340 million to its limited partners from the sale of the Clark Asset.[35]

25. Although the USD 496 million of acknowledged Port Fund monies relating to the sale of the Clark Asset were unfrozen in February 2019,[36] to date, the Port Fund has only sought to distribute USD 305 million in exit proceeds to its limited partners.[37] Raedas has not identified evidence of a credible explanation from the Port Fund for the further discrepancy between the USD 496 million exit figure and the smaller USD 305 million distribution.[38]

---

[33] *See* **Ex. S**; *see also* Reuters Article; Manila Times Article.

[34] *See, e.g.*, Reuters Article; Manila Times Article.

[35] Indeed, it was not until after authorities in Dubai froze these funds transferred to Port Link's account at Noor Bank on suspicions of money laundering – thereby exposing the incorrect amounts at which the Port Fund previously stated that it exited the Clark Asset – that Lazareva and Williams acknowledged that this USD 496 million amount belonged to the Port Fund. *See, e.g.*, May 21, 2018 Lazareva tweet, https://twitter.com/MarshaLazareva/status/ 998735377488842752 (raising questions about the frozen funds); June 2, 2018 Williams tweet, https://twitter.com/ MarkWilliamsJD/status/1002957234966597632 (seeking assistance in securing the release of the funds).

[36] *See, e.g.*, Press Release, Port Fund, *The Port Fund Successfully Secures Release of $496 Million Frozen in Dubai* (Feb. 5, 2019), https://www.prnewswire.com/news-releases/the-port-fund-successfully-secures-release-of-496-million-frozen-in-dubai-300789828.html.

[37] *See* **Ex. T**, September 23, 2019 letter from Walkers.

[38] A similar unexplained discrepancy exists between the exit figure and distribution in the Port Fund's sale of Negros Navigation. Of the USD 120 million exit proceeds, the Port Fund said only that an amount of USD 61.9 million was used to settle "a loan outstanding for [GGDC] and other liabilities of the Fund." *See* **Ex. U**, October 10, 2016 Letter from TMF Mauritius Limited (the Port Fund's administrators) to Lazareva. The Port Fund has provided no information as to the nature of the loan or the "other liabilities."

9

### B. Damietta

26. In 2007, the Port Fund provided a USD 20 million convertible loan to another KGL group entity, KGL International for Ports, Warehousing and Transport KSCC ("**KGLIP**"),[39] at an interest of 28% per annum.[40] The loan was convertible into two million shares in DIPCO, the vehicle for the Port Fund's unprofitable investment in Damietta, Egypt.[41]

27. In 2014, the entirety of the loan and its interest was written off.[42] Raedas has not identified any evidence of an explanation for this write-off, nor of any attempt to convert the loan into shares in DIPCO, or to recover the loan.

28. Presumably as a result of the loan cancellation, the parent company of KGLIP, KGL, was able to strengthen its balance sheet by reflecting a corresponding decrease in its liabilities from KD 3.9 million in its audited financial statements for the period ending December 31, 2014,[43] with a further decrease in KD 3.4 million in its audited financial statements for the period ending December 31, 2015.[44]

29. The Port Fund's investment in Damietta has been the subject of no fewer than three separate arbitration disputes including allegations of commingling.[45]

---

[39] The financial statements and website of KGLIP's parent company, KGL, variously refer to KGLIP as "KGL International for Ports, Warehousing & Transport Company K.S.C. (Closed)," "KGL Ports International Company K.S.C. (Closed)," and "KGL Ports International K.S.C.C." *See, e.g.*, **Ex. V**, KGL 2014 financial statements at 32, 33; KGL website, http://www.kgl.com/Services/Supply%20Chain%20Management/KGLPI.aspx.

[40] *See* **Ex. W**, Port Fund 2009 financial statements at p. 13.

[41] *See id*.

[42] *See* **Ex. X**, Port Fund 2014 financial statements at p. 13.

[43] *See* **Ex. V** at 33 (noting that KGLIP's total liabilities decreased from KD 29.2 in 2013 to KD 25.3 in 2014).

[44] *See* **Ex. Y**, KGL 2015 financial statements at 33 (noting that KGLIP's total liabilities decreased from KD 25.3 in 2014 to KD 21.9 in 2015).

[45] *See, e.g.*, *KGL Logistics, KGL deny news on ruling against Egypt's DPA*, MUBASHER (Oct. 6, 2019), https://english.mubasher.info/news/3539846/KGL-Logistics-KGL-deny-news-on-ruling-against-Egypt-s-DPA/; Cosmo Sanderson, *Egypt threatened with claim over cancelled port project*, GLOBAL ARBITRATION REVIEW (Nov. 26, 2018), https://globalarbitrationreview.com/article/1177277/egypt-threatened-with-claim-over-cancelled-port-project;

### C. Dubai Litigation

30. On July 9, 2018, EMPEML filed a USD 57 million claim ("**Claim Form**") against the Port Fund and Port Link in the Dubai International Financial Centre ("**DIFC**") Courts, alleging, among other things, that the Port Fund and Port Link were in breach of the IMA for having withheld payments due to EMPEML in connection with the sale of the Clark Asset.[46]

31. The Claim Form states that the Investment Manager, under the terms of the IMA and Limited Partnership Agreement ("**LPA**") entered into between the Port Fund's limited partners and Port Link, was owed penalty interest on its management fees, and that it was entitled to receive a distribution even before any of the limited partners had been paid.[47] These statements are not accurate in view of the terms of the LPA.[48]

32. Despite the fact that the Port Fund and Port Link are Cayman entities without any substantial ties to Dubai,[49] the Port Fund and Port Link (a) voluntarily submitted to the jurisdiction of the DIFC court; and (b) declined to submit a substantive defense to the Claim Form.[50]

33. Within two weeks of the Claim Form being filed, the DIFC court issued a judgment for USD 57 million against the Port Fund and Port Link.[51] Raedas has not identified any evidence

---

*ICC orders Damietta Ports to pay Doosan $74 million*, PORTSEUROPE (Jan. 18, 2018), https://www.portseurope.com/icc-orders-damietta-ports-to-pay-doosan-74-million/.

[46]     *See* **Ex. H**, EMPEML DIFC claim form.

[47]     *See id*

[48]     *See* LPA, **Ex. D**, to Declaration of Kristin N. Tahler (filed contemporaneously herewith) at §4.3 (governing the amounts and priority of distributions). Pursuant to LPA §4.3(b), the Port Fund's limited partners were to receive distributions prior to any amounts being distributed to the Investment Manager. *Id.* At the time the DIFC Claim was filed on July 9, 2018, GIC had not received any distributions in connection with the Clark Asset. *See, e.g.*, **Ex. T** (noting that distributions related to the Clark Asset were not made until February 2019).

[49]     Raedas has not been able to identify any evidence that the Port Fund or Port Link had ties to Dubai beyond Port Link's account at Noor Bank.

[50]     *See* **Ex. Z**, EMPEML Amended Judgment, ¶¶ 3, 4, 12.

[51]     *See* **Ex. Z** at ¶¶ 16-18.

of the Port Fund or Port Link disclosing to the Port Fund's limited partners the existence of either the Claim Form or USD 57 million judgment.

### D. Apache Asia

34. The Port Fund engaged a Hong Kong-based financial advisor, Apache Asia, to assist with the sale and financing of at least two of its investments.[52]

35. Evidence suggests that Apache Asia was not conducting business on an arm's-length basis: (a) KGLI registered the domain for Apache Asia's website even before the company was incorporated;[53] (b) after Apache Asia was incorporated, the website was transferred to and hosted on a server owned by Williams's brother Matthew Williams;[54] (c) throughout the website's existence, KGLI's IT infrastructure manager has administered the domain;[55] and (d) Apache Asia's website identifies only three transactions handled by the firm – two of which clearly relate to the Port Fund while the third relates to an anonymous party.[56]

### E. Port Fund Lobbying and Public Relations Campaigns

36. In 2018, the Port Fund engaged five separate Lobbying Firms (through either Port Link or the Port Fund's counsel at Crowell & Moring, LLP) to lobby, according to disclosures made in their lobbying registrations, for the release of the Port Fund monies that were frozen in Dubai.[57] GIC did not have knowledge of or consent to the engagement of or payments to these

---

[52] *See* **Ex. AA,** Apache Asia, http://apacheasia.com/index.php/transactions/; **Ex. BB**, Negros Exit Report, p. 17.

[53] *See* **Ex. CC**, Apache Asia Domain report, p. 3 (showing that the domain was registered on Nov. 16, 2012); **Ex. DD**, Apache Asia Certificate of Incorporation (showing that the Apache Asia was incorporated on Feb. 7, 2013).

[54] *See* **Ex. CC** at p. 55 (showing server was moved to mattwilliamsconsulting.com on Apr. 20, 2013).

[55] *See id.* (showing that the domain was administered by Anas Matar); **Ex. EE**, Linkedin profile for Anas Matar.

[56] *See* **Ex. AA**.

[57] *See* Form LD-1, Lobbying Registration by American Continental Group to lobby for Crowell & Moring, LLP on behalf of the Port Fund, effective July 1, 2018, https://soprweb.senate.gov/index.cfm?event=getFilingDetails &filingID=F1BB27A9-198C-41B4-84A5-D0F62234B34C&filingTypeID=1; Form LD-1, Lobbying Registration by Crowell & Moring LLP to lobby for Port Link on behalf of the Port Fund, effective July 9, 2018,

Lobbying Firms and Raedas has not identified any evidence showing that any Port Fund's other limited partners had such knowledge or consent. During the period from Q3 2018 through Q1 2019, the Lobbying Firms were paid over USD 2.7 million.[58]

37. Four of the very same Lobbying Firms identified in the preceding paragraph also registered on behalf of KGLI, to lobby for, among other things, the imposition of sanctions against members of the Kuwaiti government and the release from prison of Lazareva and Dashti,[59] strongly suggesting that Port Fund monies may have been expended as part of a campaign that had nothing to do with the Port Fund.

38. An August 1, 2019 engagement letter from public relations firm Tricuro LLC ("**Tricuro**") to public relations firm Sanglier Media ("**Sanglier**") noted that Trircuro "ha[d] been appointed to support [Sanglier] in [its] work for The Port Fund … and the campaign for Ms.

---

https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=A3A9A716-E156-4C3B-8897-281453DD3AE1&filingTypeID=1; Form LD-1, Lobbying Registration by Squire Patton Boggs to lobby for Port Link on behalf of the Port Fund, effective July 9, 2018, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=2CC511EA-7C41-4966-B058-FE4BD1D18C7B&filingTypeID=1; Form LD-1, Lobbying Registration by Fahmy Hudome International, Inc to lobby for Port Link on behalf of the Port Fund, effective July 16, 2018, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=0E294720-341B-4F5C-A452-5E4B2D44DAE8&filingTypeID=1; Form LD-1, Lobbying Registration by Brownstein Hyatt Farber Schreck, LLP to lobby for Port Link on behalf of the Port Fund, effective Aug. 1, 2018, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=C48B4EDC-D2CC-44DF-806D-CD4020FC0624&filingTypeID=1.

[58]    *See* Bill Lambrecht, *A Bush, a Yeltsin and a Blair turn up heat on Kuwait over CEO's imprisonment*, HOUSTON CHRONICLE (May 16, 2019), https://www.houstonchronicle.com/news/politics/texas/article/A-Bush-a-Blair-and-a-Yeltsin-turn-up-heat-on-13848339.php.

[59]    *See* Form LD-1, Lobbying Registration by Crowell & Moring LLP to lobby for KGLI, effective February 12, 2019, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=0C042C29-FDE1-4E31-B584-8A81682188BE&filingTypeID=1; Form LD-1, Lobbying Registration by Brownstein Hyatt Farber Schreck, LLP to lobby for KGLI, effective Mar. 1, 2019, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=6C76A808-E045-4203-AFA4-0791AA62525C&filingTypeID=1; Form LD-1, Lobbying Registration by Fahmy Hudome International, Inc to lobby for KGLI, effective Mar. 8, 2019, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=352D7099-711F-4B45-8364-572E9597BFC7&filingTypeID=1; Form LD-1, Lobbying Registration by Squire Patton Boggs to lobby for Crowell & Moring LLP on behalf of KGLI, effective Aug. 1, 2019, https://soprweb.senate.gov/index.cfm?event=getFilingDetails&filingID=670A1F7A-7884-4264-83BC-F8C47664E0FB&filingTypeID=1.

Marsha Lazareva."[60] GIC did not have knowledge of or consent to the engagement of or payments to these Public Relations Companies, and Raedas has not identified any evidence of such knowledge of consent with regard to the Port Fund's other limited partners. The focus of the public relations campaign was: (a) "[t]he staggering injustice of the [Lazareva's and Dashti's] arrests and continued detentions"; and (b) [t]he significant damage this is doing to Kuwait's international reputation among foreign investors,"[61] strongly suggesting that Port Fund monies may have been expended as part of a campaign that had nothing to do with the Port Fund.

### III. TRANSACTIONS RELATED TO PORT FUND MISCONDUCT

39. Based on information gathered, reviewed, and learned during our investigation to date, Raedas has determined that the Port Fund Companies and their principals have relationships with nine foreign banks ("**Foreign Banks**") that are likely to have been involved in USD transactions related to the above-mentioned Port Fund-related misconduct. Those banks include: (a) ABN AMRO Bank N.V.; (b) Al Ahli Bank of Kuwait ("**Al Ahli Bank**"); (c) Bank of the Philippine Islands; (d) Burgan Bank; (e) HSBC Bank Middle East Limited, Kuwait ("**HSBC Middle East**"); (f) Kuwait Finance House; (g) Mashreqbank PSC; (h) National Bank of Kuwait; and (i) Noor Bank. Raedas has identified the Correspondent Banks included in the Application as U.S. correspondent banks for one or more of the Foreign Banks.

---

[60]   See **Ex. FF**, FARA Registration Statement, Exhibit A, filed by Tricuro on behalf of Lazareva (via subcontract with Sanglier) on Oct. 4, 2019, https://efile.fara.gov/docs/6285-Exhibit-AB-20191004-5.pdf.

[61]   See id.

40. In addition, an indictment filed in one of Lazareva's and Dashti's criminal prosecutions in Kuwait[62] reveals several alleged transactions of relevance to the Application:

    a. Lazareva debited funds from a Port Fund account in favor of an account held by KGLI – account number 0603723549201 – at Al Ahli Bank (whose U.S. correspondent banks are Standard Chartered and Bank of New York Mellon);[63]

    b. Lazareva transferred funds to an account held by Al-Morabitoon International Company (an entity owned by Dashti, among others) – account number 3160001319 – at Burgan Bank (whose U.S. correspondent banks is J.P. Morgan);[64]

    c. Lazareva transferred funds to an account held by Dashti at HSBC (likely HSBC Middle East, whose U.S. correspondent bank is HSBC);[65] and

    d. Lazareva transferred funds to an account held by Dashti at Kuwait Finance House (whose U.S. correspondent bank is Citibank).[66]

* * *

---

[62] *See supra* Section I.

[63] *See* **Ex. GG**, Translation of April 26, 2017 Certificate of Charges in Case 1496/2012, p. 5, Arabic original available at http://www.pogoarchives.org/m/co/KGL-indictment.pdf.

[64] *See id.*

[65] *See id.* at p. 10.

[66] *See id.*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in <u>SANTA BARCARA, CA.</u> on this the 26th day of December 2019.

Nicholas Bortman