**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

EX PARTE APPLICATION OF GULF
INVESTMENT CORPORATION FOR AN ORDER
TO OBTAIN DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No. 1:19-mc-00593-VSB

**MEMORANDUM OF LAW IN SUPPORT OF THE PORT FUND ENTITIES'**
**MOTION TO INTERVENE AND OPPOSITION TO GIC APPLICATION**
**PURSUANT TO 28 U.S.C. §1782**

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................. 3

ARGUMENT ..................................................................................... 6

I.    THE PORT FUND ENTITIES' MOTION TO INTERVENE SHOULD BE GRANTED.6

II.   THE GIC §1782 APPLICATION SHOULD BE DENIED DUE TO ITS  FAILURE TO MEET THE STATUTORY REQUIREMENTS OF SECTION 1782 ............................. 8

    A.    Legal Standard ................................................................. 8

    B.    GIC's Application Should Be Denied Because It Does Not Seek Discovery For Use In Reasonably Contemplated Litigation ........................................... 9

III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE GIC APPLICATION. ................................................................................. 13

    A.    The GIC Application Should Be Denied Because It Seeks Documents In Possession Of Likely Parties To The "Contemplated Cayman Litigation".. 13

    B.    The GIC Application Should Be Denied Because It Seeks To Circumvent The Outcome Of GIC's Pending Cayman Proceeding ................................ 16

    C.    The GIC Application Should Be Denied Because The Requested Discovery Is Overbroad And Unduly Burdensome ...................................................... 20

CONCLUSION .................................................................................. 25

DCACTIVE-54332465.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.,*
  869 F.3d 121 (2d Cir. 2017).....................................................................25

*Al Fayed v. CIA,*
  229 F.3d 272 (D.C. Cir. 2000) ..................................................................13

*Andover Healthcare, Inc. v. 3M Co.,*
  No. 14-mc-44, 2014 WL 4978476 (D. Minn. Oct. 6, 2014), *aff'd*, 817 F.3d
  621 (8th Cir. 2016)....................................................................................17

*In re Asia Mar. Pac. Ltd.,*
  253 F. Supp. 3d 701 (S.D.N.Y. 2015).........................................10, 11, 22

*In re Bracha Found.,*
  663 F. App'x 755 (11th Cir. 2016) ...........................................................11

*In re del Valle Ruiz,*
  939 F. 3d 520 (2d Cir. 2019).....................................................12, 13, 23, 24

*Deposit Ins. Agency v. Leontiev,*
  No. 17- mc-00414, 2018 WL 3536083 (S.D.N.Y. July 23, 2018)...........24

*In re Edelman,*
  295 F.3d 171 (2d Cir. 2002)....................................................................8, 9

*Euromepa S.A. v. R. Esmerian, Inc.,*
  51 F. 3d 1095 (2d Cir. 1995).......................................................................9

*In re Furstenberg Fin. SAS,*
  No. 10-mc-44, 2018 WL 3392882 (S.D.N.Y. July 12, 2018)..................11

*Gushlak v. Gushlak,*
  486 F. App'x 215 (2d Cir. 2012) ................................................................1

*Hake v. Citibank, N.A.,*
  No. 19-mc-00125, 2020 WL 1467132 (S.D.N.Y. Mar. 26, 2020)...........20

*In re Hornbeam Corp.,*
  722 F. App'x 7 (2d Cir. 2018) ..................................................................11

*In re Hornbeam Corp.,*
  No. 14 Misc. 424 (Part 1), 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17,
  2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) ...........................................6, 7

i

*In re Hulley Enters., Ltd.*,
    358 F. Supp. 3d 331 (S.D.N.Y. 2019)..................................................................20

*In re IJK Palm LLC*,
    No. 3:16-mc-171, 2019 WL 2191171 (D. Conn. Jan. 30, 2019) .............................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)........................................................................... *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015).......................................................................8, 9, 12

*Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*,
    No. 18-103, 2019 WL 1559433 (D.D.C. Apr. 10, 2019 .......................................24

*Jiangsu S.S. Co. v. Success Superior Ltd.*,
    No. 14 Civ. 9997, 2015 WL3439220 (S.D.N.Y. Feb. 5, 2015).........................10, 12

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
    No. 2:14-cv-00797, 2015 WL 3439103 (D. Nev. May 28, 2015) ....................22, 23

*In re Kiobel*,
    No. 16 Civ. 7992, 2017 WL 354183 (S.D.N.Y. Jan. 24, 2017), *rev'd*, 895 F.3d
    238 (2d Cir. 2018)..................................................................................11

*In re Kreke Immobilien KG*,
    No. 13 Misc. 110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) *abrogated on
    other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ......................17

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)......................................................................9, 25

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)......................................................14, 15, 17

*In re Microsoft Corp.*,
    428 F. Supp. 2d at 195–96 .........................................................................19

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
    No. 15 MISC. 319, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ......................10, 21

*In re OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign
    Proceeding*,
    No. M 19-99, 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ................................17

*In re RSM Prod. Corp.*,
    No. 17-mc-213, 2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018)................................15

ii

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017)...............................................................10, 22

*In re Sarrio, S.A.*,
   119 F.3d 143 (2d Cir. 1997)........................................................................................6

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004).......................................................................................15

*In re Top Matrix Holdings Ltd.*,
   No. 18 Misc. 465, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)...............................10

*U.S. v. Sealed 1, Letter Of Request For Legal Assistance From The Deputy*
   *Prosecutor General Of The Russian Federation*,
   235 F.3d 1200 (9th Cir. 2000) ................................................................................25

## Statutes

U.S.C. Title 28 Section 1782 ................................................................ *passim*

Cayman Islands Exempted Limited Partnership Law Section 22...........................16, 19

Confidential Information Disclosure Law Section 4 ..................................................18

DCACTIVE-54332465.1

# PRELIMINARY STATEMENT

The Port Fund L.P. ("Port Fund"), a Cayman Islands exempted limited partnership, and Port Link GP Ltd. ("Port Link"), Port Fund's general partner (together, the "Port Fund Entities"), respectfully submit this Memorandum of Law in support of their Motion to Intervene and in opposition to the ex parte application made by Gulf Investment Corporation ("GIC") on December 26, 2019 pursuant to Section 1782 to serve subpoenas on twelve correspondent banks (the "GIC Application").  As GIC freely acknowledges (ECF 20, 21), the Port Fund Entities are the ultimate targets of the GIC Application.[1]

In this Memorandum of Law, the Port Fund Entities will establish as Point I that, as the ultimate targets of the discovery sought, they are entitled to intervene.  Indeed, while it may be true that an applicant can readily avail itself of the benefits of Section 1782 ex parte, this practice can lead to abuses of the process and a waste of judicial resources.[2]  The Port Fund Entities appreciate the opportunity given by this Court to move to intervene and present their opposition in a single set of papers before a decision on the GIC Application is made. (ECF 19).

Point II of this Memorandum will demonstrate that GIC does not satisfy the statutory requirements for a Section 1782 application and that, even if it did, this Court could, and should,

---

[1] It is noteworthy that in its Application, GIC is far less certain about the defendants it intends to sue in the litigation it is allegedly planning to bring in the Cayman Islands (the "Contemplated Cayman Litigation").  *See* infra, Point IIB.

[2] As GIC is quick to point out, the Second Circuit has recognized that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to F.R.C.P. 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); GIC Memo at 1, n.1.  Hans Smit, a leading academic commentator and drafter of § 1782, was, until his death, a most ardent supporter of liberal construction of Section 1782; even Professor Smit, however, considered these *ex parte* applications to be improper and possibly a violation of due process, and suggested that courts should consider assessing costs and attorney's fees against the party that made the application.  *See* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l. L. & Com. 1, 16 (1998).  Encouraging litigants to file without notice with the expectation that further motion practice will be necessary to prevent a violation of constitutional norms can only increase the burden on district courts.

DCACTIVE-54332465.1

deny the application as an exercise of discretion (Point III).  GIC by its application has presented 800 pages filled with suspicion and unsubstantiated accusations—the kind of allegations that have been adequate under Kuwait's opaque criminal justice system to subject two former directors of Port Link to years of persecution and criminal prosecution and enabled a certain limited partner of the Port Fund with ties to the Kuwaiti government to obtain more of the proceeds of the Clark Asset Sale[3] than its entitlement. Now GIC, another limited partner located in Kuwait and owned in part by the Kuwaiti government, seeks to persuade this Court to assist it in a global fishing expedition that would require 12 banks to troll through records with respect to several dozen entities in a search virtually unlimited by time or place simply because these banks have correspondent banking relationships with banks that may have been utilized by the Port Fund Entities for transactions of interest to GIC.

GIC asks this of this Court even as the information that GIC claims to most urgently seek, the location of the allegedly missing Clark Asset Sale funds, has either already been given to GIC or is the subject of proceedings before the Cayman court commenced by GIC to obtain that information.  In that proceeding, the Cayman court is currently reviewing whether GIC and its fellow plaintiffs are entitled to the information under the Cayman law applicable to exempted limited partnerships, and, if they are so entitled, whether that information should be shared with protections adequate to ensure certain confidentiality obligations and concerns, including limits on how and where it will be used.  The twin aims of Section 1782 would not be served by granting the GIC Application under these circumstances.

---

[3] The Clark Asset Sale refers to the sale of Clark Civil Aviation Complex, a former airport infrastructure site in the Philippines that was successfully redeveloped, marketed, and sold by the Port Fund, resulting in significant profits for all limited partners of the Port Fund, including GIC.  (*See* Chin Decl. ¶¶ 5, 7.  *See also* GIC Memo at 1-3, 8-13).

DCACTIVE-54332465.1

For the reasons set forth below and in the accompanying declarations of Cayman counsel and US counsel to the Port Fund Entities, the Motion to Intervene should be granted and the GIC Application denied.

## BACKGROUND

The GIC Application presents this Court with hundreds of pages packed with descriptions of transactions and events that GIC deems suspicious or does not understand, all to reach the conclusion that "[i]n short, it appears that GIC is the victim of egregious misconduct directed by KGLI and its principals who managed the Port Fund . . ." (GIC Memo at 3). GIC highlights in particular its concerns about allegedly "Missing Funds from Sale of Clark Asset" and recounts the history of the freezing of the sale proceeds at Noor Bank (subsequently unfrozen and returned to Port Link). (GIC Memo at 2, 8, 10). GIC also mentions the criminal convictions of two former directors of Port Link, Marsha Lazareva and Saeed Dashti. (GIC Memo at 7). GIC identifies its two "unsettling questions" with respect to the Clark Asset Sale proceeds, and claims that "[d]espite GIC's repeated requests for answers to these basic queries, the Port Fund and its principals have failed to provide any response whatsoever. The Contemplated Cayman Litigation will address these issues." (GIC Memo at 3).

GIC has thereby presented to the Court the entire nebulous basis for its Section 1782 application. If granted the opportunity to intervene and oppose the application, the Port Fund Entities do not propose to rebut each accusation and lay to rest every suspicion, recognizing that this Court need not determine the validity of the accusations or the guilt or innocence of Ms. Lazareva and Mr. Dashti to determine whether the GIC Application should be granted. The Port Fund Entities do propose to provide this Court with information sufficient to demonstrate why GIC should not be permitted to use the power of this Court to continue GIC's global fishing

expedition for information to use ostensibly against the Port Fund Entities and presumably against Port Link's former directors and others as well.

As is more fully set forth in the accompanying declaration of the Port Fund Entities' Cayman counsel, on May 5 and 6 a hearing was held in the Grand Court of the Cayman Islands, Financial Services Division, to determine whether certain limited partners of the Port Fund (including plaintiff GIC) are entitled to information that would provide answers to not only the questions posed by GIC in this proceeding, but would respond to every suspicion voiced by GIC in its Application to this Court.  Although GIC provided minimal information about the Cayman proceeding in its ex parte application (which GIC commenced the month before it presented its application to this Court), the fact remains that the requests made overlap significantly.  (Chin Decl. ¶¶ 29-31, Ex. A).  The judge in the Cayman Islands will decide whether the limited partners are entitled to the information requested under the Cayman law governing the limited partnership and will also consider what, if any, confidentiality protections and other protections and/or restrictions will be put in place for the receipt and/or use of the information if it is ordered to be handed over.  (Gowrie Decl. ¶¶ 18-21, 25).  It is largely Port Link's concern over these protections that has driven the opposition to the requests in the Cayman Islands, and the same concern must be considered here, for the following reason.

As GIC notes, it is a Kuwait-based corporation owned in part by Kuwait, one of the six member states of the Gulf Cooperation Council.  (GIC Memo at 5).  The proceeds of the Clark Asset Sale were indeed frozen at Noor Bank in Dubai on suspicion of money laundering, as criminal complaints were pending in Kuwait against Mr. Dashti and Ms. Lazareva, who at that time were still directors of Port Link.  (Chin Decl. ¶¶ 10, 23). What is significant about this incident is the role of the Kuwaiti government in the freeze.  Correspondence between the UAE

4

government and the Kuwaiti government reveals that the Kuwaiti government sought the transfer of $400 million out of the $496 million of frozen funds to two Kuwaiti state-owned investors, KPA and PIFSS, far more than their entitlement. (*Id.* ¶ 24). Kuwait was not successful in its efforts to expropriate $400 million of the frozen funds, but Port Link was unable to convince the Dubai Attorney General to release the funds until it agreed to the Kuwait Attorney General's reduced demand to transfer to KPA more than $13 million above its legal entitlement. (*Id.* ¶ 25).[4]

Since then, KPA and GIC have asked the Kuwaiti Attorney General to bring still more criminal charges against Ms. Lazareva and Mr. Dashti, and KPA has warned third party law, lobbying, public relations, and other professional service providers to the Port Fund Entities of possible retribution, including being charged with crimes against the State of Kuwait carrying a minimum five-year sentence, if they receive payments not approved by the limited partners, despite the limited partners' lack of authority over the day-to-day operations of Port Fund.  (Chin Decl. ¶¶ 19-21; Gowrie Decl. ¶ 7).  Further detail about the various criminal proceedings are available in the Chin Declaration.  Such events demonstrate why the Port Fund Entities are concerned by any new efforts launched by GIC and KPA to obtain information about Port Fund transactions, and why the Port Fund Entities seek leave to intervene and oppose their applications in the Southern District of New York.

In sum, given the scope of disclosure to GIC in the Cayman proceedings to date, the alleged need of GIC for the information requested no longer exists, and to the extent GIC believes it does, closer scrutiny of its alleged desire to use the information sought for the Contemplated Cayman Litigation must be given in light of the history of criminal proceedings and government interference with the affairs of the Port Fund Entities outlined above.

---

[4] KPA is the Kuwaiti state-owned investor that brought a Section 1782 proceeding shortly after the GIC Application, which is currently pending before the Honorable Andrew L. Carter, Jr.  (*See* ECF 17 at 2; see also Ex Parte Application of Kuwait Ports Authority, Case No. 1:20-mc-00046, ECF 1).

## ARGUMENT

### POINT I

### THE PORT FUND ENTITIES' MOTION TO INTERVENE SHOULD BE GRANTED.

The Port Fund Entities are entitled to intervene in this action as a matter of right under controlling Second Circuit law. "[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness . . . parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties." *In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (citations omitted); *see also In re Hornbeam Corp.*, No. 14 Misc. 424 (Part 1), 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015) (Broderick, J.) (granting intervention as of right), *aff'd*, 722 F. App'x 7 (2d Cir. 2018). The GIC Application is premised on the assertion that it "may bring claims against, among others" the Port Fund and Port Link. (GIC Mem. at 13; Peccarino Decl. ¶ 7). In correspondence to this Court, GIC's counsel readily identify the Port Fund Entities as the ultimate targets. (ECF 20, 21). Because the Port Fund Entities are "parties against whom the requested information will be used," they are entitled to challenge the issuance of the § 1782 subpoenas, and their motion to intervene should be granted. *In re Sarrio,* 119 F.3d at 148.

Even if the Port Fund Entities were not entitled to intervene as of right, this Court should exercise its "broad discretion" to permit intervention under Rule 24(b). *In re Hornbeam Corp.*, 2015 WL 13647606, at *2. In making that determination, courts must consider whether the Port Fund Entities have (1) filed a timely application; (2) shown an interest in the action; (3) demonstrated that the interest may be impaired by the disposition of the action; and (4) shown that the interest is not adequately protected by the parties to the action. *Id*. The Court must also

6

consider whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *Id.*

Here there is no dispute that the Port Fund Entities made a timely application to this Court seeking to intervene and have amply shown their interests in the GIC Application. GIC filed its ex parte application on December 26, 2019 without providing notice to the Port Fund Entities. When the Port Fund Entities became aware of these proceedings, they immediately filed a January 6, 2020 letter with the Court copied to GIC counsel requesting leave to intervene. (ECF 8.) As to the interest of the Port Fund Entities that may be impaired, GIC by its application seeks to subpoena documentation of what appears to be every financial transaction the Port Fund has engaged in since its founding in 2007. Permissive intervention is an appropriate means to protect the Port Fund Entities' interest in this information. *See AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005); *In re Reyes*, No. 19 Civ. 7219, 2019 WL 6170901, at *2 (S.D.N.Y. Nov. 20, 2019) ("Bangladesh Bank has an interest in the proceeding, because Petitioner requests discovery for use against Bangladesh Bank in the Philippines Proceeding."); *In re Hornbeam*, 2015 WL 13647606 (proposed intervenor has an interest where information may be used against it and there were confidentiality concerns). Furthermore, no party to this action would adequately protect the Port Fund Entities' interests. Because GIC proceeded ex parte, it is the only party to this proceeding, and it is currently unknown whether any proposed subpoena recipient would undertake any effort to protect the Port Fund Entities' interest. Finally, GIC has not identified any prejudice it would suffer from permitting the Port Fund Entities to intervene. For all these reasons, the Port Fund Entities' motion to intervene should be granted.

DCACTIVE-54332465.1

**POINT II**

**THE GIC §1782 APPLICATION SHOULD BE DENIED DUE TO ITS
FAILURE TO MEET THE STATUTORY REQUIREMENTS OF SECTION 1782**

A.     **Legal Standard**

28 U.S.C § 1782 grants federal district courts discretion to permit "discovery of evidence in the United States for use in foreign proceedings" so long as the applicant can first demonstrate that (i) the person from whom discovery is sought resides or is found in the district to which the application is made, (ii) the discovery is for use in a proceeding before a foreign tribunal, and (iii) the application is made by a foreign or international tribunal or any interested person. *In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002); 28 U.S.C. § 1782. If any of the three statutory requirements are not met, the application must be denied. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015).

Moreover, "a district court is not required to grant a § 1782[] discovery application simply because it has the [statutory] authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). If the statutory factors are met, the court considers the discretionary factors, with an eye towards the twin aims of § 1782 to "'provid[e] efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *KPMG*, 798 F.3d at 117 (citation omitted).  The discretionary factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782[] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a

8

foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. If "the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto[.]" *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F. 3d 1095, 1101 n.6 (2d Cir. 1995).

**B.      GIC's Application Should Be Denied Because It Does Not Seek Discovery For Use In Reasonably Contemplated Litigation**

As a threshold issue, GIC cannot satisfy the second statutory requirement under Section 1782, that is, whether the discovery is for use in a foreign proceeding before a foreign tribunal. *In re Edelman*, 295 F.3d at 175.  An applicant satisfies this requirement by showing that the materials sought will be used at some stage of a foreign proceeding that is "within reasonable contemplation at the time" of the Section 1782 petition.  *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015).

In determining whether litigation is in reasonable contemplation, "a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *KPMG,* 798 F.3d at 123(internal quotations and citation omitted). GIC argues that it has satisfied the reasonable contemplation standard by "conducting a comprehensive investigation relating to the potential claims and retaining Cayman counsel to evaluate the potential claims." (GIC Memo at 19).  And indeed, review of the Bortman Declaration would suggest that GIC has been collecting information for quite some time.  (*See* Bortman Decl. ¶¶ 7-40).  However, the law is clear that simply retaining counsel to investigate *potential* claims is insufficient. As the Second Circuit instructed in *KPMG*:

> [T]he applicant must have more than a subjective intent to undertake some legal action. . . the Supreme Court's inclusion of the word "reasonable" in the "within reasonable contemplation" formulation indicates that the proceedings cannot be merely speculative. At a minimum, a § 1782 applicant must present to the district

9

court some concrete basis from which it can determine that the contemplated
proceeding is more than just a twinkle in counsel's eye.

798 F.3d at 123–24. The GIC Application does not satisfy this requirement because GIC seeks
to "to investigate whether litigation is possible before launching it" rather than to aid specific
litigation within its "reasonable contemplation." *See In re Sargeant*, 278 F. Supp. 3d 814, 823
(S.D.N.Y. 2017); *Jiangsu S.S. Co. v. Success Superior Ltd.*, No. 14 Civ. 9997, 2015
WL3439220, at *6 (S.D.N.Y. Feb. 5, 2015); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 708
(S.D.N.Y. 2015).

GIC is unable to articulate the most basic facts concerning its Contemplated Cayman
Litigation. GIC states only that it "*may* bring claims against, among others" the Port Fund and
Port Link in unspecified litigation in the Cayman Islands. (GIC Mem. at 13; Peccarino Decl. ¶ 7)
(emphasis added). But GIC cannot tell the Court which specific entities it intends to sue, much
less what claims it intends to assert against them. And while the GIC Application references
multiple financial transactions, in different countries, engaged in ever since Port Fund's
founding, GIC cannot identify which specific transactions will be at issue in its Contemplated
Cayman Litigation.

To obtain discovery under § 1782, petitioners must, at a minimum, do what GIC has
failed to do here: they must "provide the legal theories under which they plan[] to litigate"
against specific defendants. *See In re Top Matrix Holdings Ltd.*, No. 18 Misc. 465, 2020 WL
248716, at *4-5 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements
attesting to petitioners' intent to litigate and *describing the legal theories on which they plan to
rely* are sufficiently concrete to meet the statutory requirement.") (emphasis added); *see also In
re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15 MISC.
319, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (denying application because petitioners

DCACTIVE-54332465.1

failed to "identify with particularity the types of proceedings they expect to bring against the purported alter ego companies").  Not surprisingly, GIC has not cited a single case in which a court granted a Section 1782 petition where, as here, a petitioner failed to identify specific claims that it intended to assert against specific defendants. *Compare In re Kiobel*, No. 16 Civ. 7992, 2017 WL 354183, at *2-3 (S.D.N.Y. Jan. 24, 2017) (petitioner had already drafted a "writ of summons" articulating specific claims against Shell for its "involvement in the execution of her husband"), *rev'd*, 895 F.3d 238 (2d Cir. 2018); *In re IJK Palm LLC*, No. 3:16-mc-171, 2019 WL 2191171, at *1 (D. Conn. Jan. 30, 2019) ("IJK Palm intends to bring a lawsuit in the Cayman Islands against United Oils' CEO, Dennis Melka, as well as its board members, for breach of fiduciary duty, negligence, and fraud."); *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (Petitioner "articulated a theory on which it intended to litigate"); *In re Furstenberg Fin. SAS*, No. 10-mc-44, 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (petitioners "articulated a specific legal theory on which they intended to rely"); *In re Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (petitioners identified specific statutory and common law claims against specific defendants).

The GIC Application, by contrast, makes only generalized, conclusory allegations of potential wrongdoing in connection with multiple international financial transactions dating back to 2007.  Despite its "comprehensive investigation" (GIC Memo at 19), GIC remains unable to identify whom it intends to sue, for what damages, and under what legal theory. As GIC's Cayman counsel explained when filing the Application, GIC is seeking information for "*potential* claims that GIC is *considering* pursuing in the Cayman Islands." (Peccarino Decl. ¶ 6 (emphasis added)). But this is precisely what the case law prohibits. *See, e.g. In re Asia,* 253 F. Supp. 3d at 708 ("contemplating 'the possibility of initiating litigation' falls far short of an

DCACTIVE-54332465.1

'objective showing' that the proceedings are within 'reasonable contemplation'"; noting that the Southern District has attracted a number of such requests seeking discovery to determine whether to initiate a proceeding); *Jiangsu S.S. Co.*, 2015 WL3439220, at *6 (§ 1782 "is not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings.").[5]

Notably, six months have elapsed since GIC filed this petition, and GIC still has not filed its Contemplated Cayman Litigation. Rather than filing that litigation, GIC continues to pursue a lengthy and duplicative proceeding in the Cayman Islands' courts to obtain information, confirming that it does not have any basis to pursue claims at this time. Courts must "guard[] against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse . . . [T]he concerns about misuse of the discovery process are particularly pronounced in this case, since petitioners have had an opportunity to initiate judicial proceedings abroad but have failed to do so." *See In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 Civ. 1801, 2014 WL 3404955, at *6-7 (S.D.N.Y. July 9, 2014), *aff'd*, 798 F. 3d 113 (2d Cir. 2015).

Because the GIC Application fails to meet the second statutory requirement, it must be denied. *See Certain Funds*, 798 F.3d at 117. As to the other two statutory requirements, the Port Fund entities note that the Second Circuit has chosen to apply a more liberal standard than even Professor Smit advocated with respect to the extraterritorial reach of Section 1782, thereby abrogating a number of well-reasoned district court decisions and exposing the district courts to even more ex parte applications against international financial institutions in future. *See In re del*

---

[5] Nor can GIC use its reply brief to paper over the defects in its Application. The question before this Court is exclusively "whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed," and not whether, based on subsequent events, GIC can formulate new arguments to suggest that specific litigation is forthcoming. *See Certain Funds*, 798 F.3d at 124.

*Valle Ruiz*, 939 F. 3d 520, 528 and n. 16 (2d Cir. 2019); Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l. L. & Com. 1, 10-12 (1998) (discussing the "potent reasons" for not giving Section 1782 extraterritorial reach and expressing particular concern about the ease with which major banks may be "found" in the United States).  The Circuit did, however, also determine that a district court "may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery."  *In re del Valle Ruiz*, 939 F. 3d at 533.  The Port Fund Entities accordingly will address the issue at Point III.C of its Memorandum below.  It should also be noted that even the third statutory requirement is not entirely free from doubt, given GIC's status as an entity owned by foreign sovereigns (*see Al Fayed v. CIA*, 229 F.3d 272, 274 (D.C. Cir. 2000)), but the Port Fund Entities acknowledge that at present, in the ever-developing world of Section 1782 jurisprudence, the weight of authority is in favor of deeming GIC a "person" for Section 1782 purposes.

## POINT III

### THE COURT SHOULD EXERCISE ITS
### <u>DISCRETION TO DENY THE GIC APPLICATION.</u>

Even if GIC met the statutory requirements, which it does not, this Court should exercise its discretion and deny the application because the *Intel* discretionary factors weigh heavily against GIC, and granting the GIC Application would not further the twin aims of § 1782.

**A.     The GIC Application Should Be Denied Because It Seeks Documents In Possession Of Likely Parties To The "Contemplated Cayman Litigation"**

This Court should exercise its discretion to deny the GIC Application because it improperly seeks evidence that is already within the jurisdiction of a Cayman court. The first *Intel* factor asks "[w]hether the documents or testimony sought are within the foreign tribunal's

DCACTIVE-54332465.1

jurisdictional reach, and thus accessible absent § 1782 aid[.]" *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006). The "need for § 1782(a) aid generally is not as apparent" when the subpoena targets are parties to the foreign proceeding or where, as here, the likely parties are in possession of the requested evidence and "[a] foreign tribunal . . . can itself order them to produce [it]." *Intel,* 542 U.S. at 264.

The document requests set out in GIC's proposed subpoenas to the twelve correspondent banks (the "Requests") seek information that is within the possession or control of the Port Fund Entities. With respect to the Clark Asset Sale, which is the primary focus of the GIC Application, the Requests seek information that includes: (i) bank records showing details (including recipients, transaction amounts and dates, and supporting documents) of all transfers involving the $496 million in proceeds from the Clark Asset Sale to Udenna Development Corporation ("Udenna") pursuant to a July 2017 Share Purchase Agreement ("SPA"); (ii) the SPA with Udenna and other related due diligence materials provided in connection with the sale; (iii) details regarding payments to lobbying firms and public relations companies in connection with unfreezing the $496 million, including the legal basis for those payments; and (iv) details regarding payments to Apache Asia Limited ("Apache Asia"), an advisor to the Port Fund that helped facilitate the sale of the Clark Asset to Udenna.  (Tahler Decl. Exs. M-X).

The Requests also seek records from the twelve correspondent banks showing the details of transactions relating to two other investments made by the Port Fund: (i) its 2007 investment in the Damietta International Ports Company ("DIPCO") development project at a port in Damietta, Egypt; and (ii) its 2008 investment in Negros Navigation Co, Inc. ("Negros"), a Philippine port management company.  (*Id.* Exs. N, S, T, W). Finally, in addition to these already broad Requests, GIC seeks all documents and communications concerning every transaction

14

between the Port Fund Entities and 33 miscellaneous entities, 26 of which are not even mentioned in GIC's Memo or accompanying affidavits. (*Id.* Exs. M-X).

Notably, GIC does not contend that the twelve correspondent banks that are the targets of its proposed Requests have independent knowledge of any transactions discussed in its Application. To the contrary, in its pending proceeding in the Cayman Islands, GIC is seeking much[6] of *the exact same* information from respondents themselves, particularly with respect to the Clark Asset Sale, confirming that the requested evidence is within the Cayman court's jurisdiction. (Chin Decl. ¶¶ 29-31, Ex. A). And while the banks may have internal documents (*e.g.*, SWIFT messages) reflecting these transactions that typically would not be included in the bank customer's records, all of the requested information—the transaction dates, amounts, recipients, and underlying support—would appear in bank statements and other financial documentation in the possession of the Port Fund Entities.  Furthermore, it is the sharing and protection of such information that is the subject of proceedings in the Cayman court already, as GIC well knows.  (*See* Gowrie Decl. ¶¶ 18-21, 25).

While the correspondent banks themselves are not "participant[s] in the foreign proceeding, it would be a poor exercise of discretion in these circumstances to assist [a Cayman] court by providing discovery . . . within the [Cayman] court's jurisdiction." *See In re RSM Prod. Corp.*, No. 17-mc-213, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018); *In re Microsoft Corp.*, 428 F. Supp. 2d at 194 ("While IBM and Cleary Gottlieb are not 'participants,' per se, in the underlying antitrust proceeding, all of the documents sought by Microsoft are within the Commission's reach."); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir.

---

[6] The accompanying Chin Declaration addresses the relevant information requested by GIC in the Cayman Islands proceeding and the extent to which information sought in the § 1782 Requests already has been provided to GIC in that proceeding. (*See* Chin Decl. ¶¶ 29-33, Ex. A).

DCACTIVE-54332465.1

2004) ("for all intents and purposes petitioners are seeking discovery from [Cravath's client], their opponent in the [foreign] litigation.").

**B.**   **The GIC Application Should Be Denied Because It Seeks To Circumvent The Outcome Of GIC's Pending Cayman Proceeding**

This Court should exercise its discretion to deny the GIC Application because it seeks to avoid or preempt a negative ruling from the Cayman court in the pending proceeding. That effort weighs heavily against GIC under the third *Intel* factor, which asks whether an applicant is seeking discovery "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65.

On November 26, 2019, one month before filing its Section 1782 Application, GIC commenced a special proceeding in the Grand Court of the Cayman Islands under Section 22 of the Cayman Islands Exempted Limited Partnership Law (the "Section 22 Proceeding"), seeking expansive discovery from the Port Fund Entities regarding their finances and transactions, with a focus on the Clark Asset Sale. (Gowrie Decl. ¶¶ 12,13).  In its § 1782 Application to this Court, GIC makes only passing reference to its Section 22 Proceeding (*see* GIC Mem. at 20; Peccarino Decl. ¶ 2, n.1) but does not provide the Court with any details about that proceeding. GIC thereby avoided informing this Court that its Section 22 Proceeding asks the Cayman court to compel release to GIC and the other Cayman plaintiffs many of the same documents and information that it now seeks to obtain from the correspondent banks through this §1782 proceeding. (Gowrie Decl. ¶¶ 16-17; Chin Decl. ¶¶ 29-31, Ex. A).

In its Section 22 Proceeding, GIC has asked the Cayman court to determine whether, under Cayman law, GIC as a limited partner of the Port Fund is entitled to obtain detailed information about the Port Fund Entities' investments and financial transactions and, if so, what confidentiality safeguards and others restrictions as to receipt and/or use will apply.  (Gowrie

16

Decl. ¶¶ 13, 18-21, 25). GIC's simultaneous effort to invoke § 1782 in this court is improper

because the statute "was not intended 'as a vehicle to avoid … an unfavorable discovery

decision' from a foreign tribunal." *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL

5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (emphasis in original; citation omitted) *abrogated on

other grounds by In re del Valle Ruiz*, 939 F.3d 520, 532 (2d Cir. 2019). "It would create a

perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to

encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals

with clear jurisdictional authority." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6.

Indeed, courts routinely deny § 1782 petitions where, as here, the petitioner has a request for

identical information pending before another Court. *See, e.g., Andover Healthcare, Inc. v. 3M

Co.*, No. 14-mc-44, 2014 WL 4978476, at *7 (D. Minn. Oct. 6, 2014), *aff'd*, 817 F.3d 621 (8th

Cir. 2016) ("Because the same discovery request currently is pending before the German court, it

appears that Andover is simply attempting to avoid or preempt an unfavorable decision by that

court."); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195-96 ("a decision by this Court which

would either preempt or contradict a decision by the Commission[,] would render the

Commission's proceedings meaningless and undermine the Commission's rules on

confidentiality"); *see also In re OOO Promnefstroy for an Order to Conduct Discovery for Use

in a Foreign Proceeding*, No. M 19-99, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009)

("granting Promnefstroy's Application would only frustrate the careful balance struck by the

Dutch courts in the underlying Dutch Proceedings").

It should be noted that much of the information sought by the limited partners was

provided to GIC by the Port Fund Entities' Cayman counsel in a disclosure letter dated February

27, 2020.  A copy of the disclosure letter, with exhibits, is annexed to the Gowrie Declaration.

17

Concerns about sharing certain information, based on confidentiality concerns and concerns about the use to which the information would be put, meant that not every detail and every document could be shared.  As a result, the Cayman court also will be deciding GIC's entitlement under Cayman Islands law to certain limited categories of information, including details regarding the Clark Asset Sale, that the Port Fund Entities have not already disclosed. (Gowrie Decl. ¶¶ 13, 18-21, 25).

First, the Cayman court will decide whether information that is the subject of the Port Fund Entities' *ex parte* application under Section 4 of the Confidential Information Disclosure Law (the "CIDL Application") can be provided to GIC.  The CIDL Application seeks directions from the Cayman court in order to allow the Port Fund Entities to disclose to GIC certain information that is subject to third party confidentiality obligations without breaching those confidentiality obligations. (*Id.* ¶¶ 20, 21). As relevant here, the CIDL Application seeks the Cayman court's permission to provide GIC with the SPA and related documentation regarding the Clark Asset Sale. (*Id.* ¶¶ 18, 21). The Cayman court's decision on the CIDL Application also will establish what, if any, confidentiality protections should be imposed on the use of these documents. (*Id.* ¶¶ 21, 25).

Second, the Port Fund Entities have not provided the Noor Account bank statements requested in the Section 22 Proceeding in order to protect (i) the identities of a limited number of recipients of proceeds from the sale of the Clark Asset, (ii) the bank account numbers of third party recipients of those proceeds, and (iii) itself against claims by third parties due to disclosure of the information. (*Id.* Ex. 14 at pp. 11-13; Ex. 17 at pp. 17-19). As described above, the Port Fund Entities have serious concerns about potential malicious prosecution in Kuwaiti courts of individuals associated with professional service advisors to the Port Fund Entities, as well as

potential resulting claims against the Port Fund Entities for the release of third party information. For that reason, the Port Fund Entities have taken the position that GIC is not entitled to that limited subset of information, but if the Cayman court orders its production, GIC may be subject to an undertaking before the Cayman court that it will use the information only for the purpose of informing itself about the affairs of the Port Fund and no other purpose. (Gowrie Decl. Ex. 17 at pp. 18, 24).

Following extensive briefing by all parties, the Cayman court held a hearing on May 5-6, 2020 in the Section 22 Proceeding. (*Id.* ¶ 24). The Port Fund Entities expect that the Cayman court's ruling will be made within four to six weeks after the hearing and will address whether GIC is entitled under Cayman law to receive any additional disclosures and, if so, the confidentiality safeguards and other protections as to receipt and/or use required for that information.  (*Id.* ¶¶ 24-25). In the event that the Cayman court grants GIC's application, it will moot many of GIC's discovery requests in its §1782 Application. (Chin Decl. ¶¶ 29-31, Ex. A). If, on the other hand, the Cayman court denies GIC's Section 22 requests, or grants them subject to specific confidentiality safeguards or other protections, any inconsistent decision from this Court "would render the [Cayman Court's] proceedings meaningless and undermine [its] rules on confidentiality." *See In re Microsoft Corp.*, 428 F. Supp. 2d at 195–96. An inconsistent decision would run counter to the fundamental purpose of Section 1782 by "pitting this Court against the [Cayman Court], rather than fostering cooperation between them" and would "violate established principles of comity, under which 'United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries.'" *Id.* (quoting *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997)).

DCACTIVE-54332465.1

**C.      The GIC Application Should Be Denied Because The Requested Discovery Is Overbroad And Unduly Burdensome**

This Court should exercise its discretion and deny the GIC Application because it is an overly broad fishing expedition which, without any meaningful explanation, seeks voluminous financial records from twelve different financial institutions reflecting years of transactions among dozens of commercial entities across the globe. Under the fourth *Intel* factor, the Supreme Court has directed courts to "reject[] or trim[]" discovery if it is "unduly intrusive or burdensome[.]" *Intel*, 542 U.S. at 265.

Whether requests are overbroad or unduly burdensome is governed by the "familiar standards of Rule 26[.]" *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019) (internal quotations and citation omitted). "It is the burden of the party seeking the documents to demonstrate that the documents are relevant and within the bounds of discovery permitted by Rule 26(b)." *Hake v. Citibank, N.A.*, No. 19-mc-00125, 2020 WL 1467132, at *5 (S.D.N.Y. Mar. 26, 2020). This includes demonstrating that the requested discovery is "proportional to the needs of the case." *Id.* at *4 (internal quotations and citation omitted).

Here, GIC has not even attempted to meet its affirmative burden. GIC simply does not explain how information concerning financial transactions with each of the several dozen referenced entities is relevant to any cause of action, much less proportional to the needs of any case. Nor could it, as GIC has failed to articulate any cause of action or delineate the scope of any contemplated litigation.  *See* Point II.B *supra*.

GIC's subpoenas are intrusive, burdensome, and disproportionate on their face. GIC seeks to subpoena twelve different correspondent banks to request, *inter alia,* **all documents and communications concerning every transaction** between the Port Fund and the following 33 companies:

- Four companies identified as "Advisors," (i) **Apache Asia Limited**; (ii) Asia Pacific Advisory Credit Hybrids and Equity Pte. Ltd; (iii) **Matt Williams Consulting LLC**; and (iv) Weir & Associates, as well as any Advisor's parents, subsidiaries, affiliates, divisions, officers, directors and employees;

- Thirteen companies identified as "Related Companies," (i) Axis Solution for Computer Systems KSCC; (ii) **Kuwait & Gulf Link Transport Company KSC**; (iii) Kuwait & Gulf Link Holding Company KSCC; (iv) **Al-Morabitoon International Company**; (v) **Global Gateway Development Corporation**; (vi) GGDC Advisory Services; (vii) Global Gateway Logistics City Holding Company; (viii) **Damietta International Ports Company SAE**; (ix) Clark Gateway Investment Group LP; (x) KGLI Asia ROHQ; (xi) KGLINM Holdings Inc; (xii) KGL International for Ports Warehousing & Transport Company KSCC; and (xiii) Capital Link Company, as well as any Related Company's parents, subsidiaries, affiliates, divisions, officers, directors and employees; and

- Sixteen companies identified as "Anomalous Companies," (i) Clark Gateway GP; (ii) **GGDC Holdings**; (iii) GGDC Investment Group; (iv) GGDC Management Holdings; (v) GGDC ROV; (vi) Global Gateway Holdings Limited; (vii) Port Fund Holdings Inc; (viii) Port Link Holdings Limited; (ix) Port Link Holdings USA Limited; (x) Excel Port Limited; (xi) LPG Link Limited; (xii) Progas Holdings Limited; (xiii) MWEM Capital; (xiv) Port Fund Management SA; (xv) Building Smart Limited; and (xvi) HCS International, as well as any Anomalous Company's parents, subsidiaries, affiliates, divisions, officers, directors and employees.

(Tahler Decl. Exs. M-X). While requesting all documents and information concerning all transactions with these 33 entities, neither GIC's Memo nor any of its supporting affidavits even reference (much less explain the relevance of) 26 of the 33 entities. Only the seven bolded entities are actually referenced in GIC's Memo and supporting affidavits.[7]

Courts routinely deny applications for such facially overbroad discovery. *See In re MT BALTIC SOUL*, 2015 WL 5824505, at *3 (rejecting application "given the significant breadth of the requested discovery" which sought "discovery from 11 large, international banks as to seven

---

[7] Similarly, while the GIC Application at least attempts to establish a general basis for requesting documents concerning the Clark Asset Sale, it provides no meaningful discussion to substantiate its request for documents regarding the DIPCO and Negros investments. And while the GIC Application references alleged concerns involving a dispute before the Dubai International Financial Centre ("DIFC") Courts (GIC Mem. at 11, n.6), it does not suggest that any of the requested documents are relevant to that dispute.

different business entities"); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d at 705 (a court should

exercise "its discretion to deny [a] petition [that] this is an overly broad fishing expedition"); *see*

*In re Sargeant*, 278 F. Supp. 3d at 824 (recognizing that "sweeping discovery requests" which

are "likely not be proportional to the needs of" the contemplated litigation weigh against a

petitioner's application).

    Because GIC has failed to articulate the relevance of its various requests, the proper

result is to deny its Application in its entirety rather than engage the Court in an effort to narrow

those requests. *See In re Sargeant*, 278 F. Supp. 3d at 824 ("no court could intelligently cabin the

scope of this subpoena on the gossamer record in support of Sargeant's application."); *In re*

*Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-00797,

2015 WL 3439103, at *9 (D. Nev. May 28, 2015) ("When a party chooses to serve overly broad

discovery, it runs the risk that the discovery will be denied outright without an opportunity to

narrow it.").

    In addition to their clear overbreadth, GIC's subpoenas impose an undue burden on the

twelve targeted financial institutions. The requested documents implicate privacy concerns for

the Port Fund Entities and third parties, as well as confidentiality restrictions under both private

agreements and Cayman law. (Gowrie Decl. ¶¶ 18-21). To produce this information, the banks

will have to navigate these issues to ensure the continued protection of confidential information,

a process that may invite significant disputes before this Court.

    The resulting burden is particularly unwarranted given that GIC is already seeking to

obtain, or has already obtained, much of the same information in its Section 22 Proceeding and

the Cayman court is already engaged both in determining whether GIC is entitled to the

information as a limited partner and addressing confidentiality issues. "When the information

22

sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re Judicial Assistance*, 2015 WL 3439103, at *9 (collecting cases).

In the disclosure letter and in their evidence in the Section 22 Proceeding, the Port Fund Entities have now provided GIC with nearly all of the requested details related to transactions involving the Clark Asset. (Chin Decl. ¶ 29, Ex. A).  This includes the details of any payments falling into the specific categories identified by GIC in its § 1782 Requests, including payments to Apache Asia in connection with the Clark Asset Sale and payments made to lobbying firms and public relations companies in connection with unfreezing the $496 million. (*Id.* Ex. A).  This evidence also includes the 2017 audited financial statements for the Port Fund, which confirm the actual sales price of the Clark Asset and that, after paying off bank loans, $496,429,777 in net proceeds from the Clark Asset were wired to Port Link's Noor Bank account, thereby definitively putting to rest GIC's concern about the purported discrepancy with the $1 billion sales figure reported by Udenna. (*Id.* ¶ 22; Ex. B).[8]

The burden imposed by GIC's proposed subpoenas is also particularly unwarranted given that there is no basis to conclude that the material sought will be located in the United States, let alone the Southern District of New York.  Although courts in this Circuit are not "categorically barred from allowing discovery under § 1782 of evidence located abroad," the Second Circuit has directed that district courts should "consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery." *In re del Valle Ruiz*, 939 F.3d at 533. The subpoenas here seek documents related to foreign financial transactions between entities outside the United States. Although there is no "categorical bar" on

---

[8] The Port Fund Entities also have provided GIC with detailed information about the Port Fund's investments in DIPCO and Negros, despite GIC's failure to assert anything more than unsubstantiated suspicion about those investments. (Chin Decl. ¶¶ 31, 32).

DCACTIVE-54332465.1

discovery of documents located abroad, allowing GIC to use § 1782 to subpoena foreign

financial records as part of its global search for information will not further the "twin aims" of §

1782, and thus is a factor that supports this Court exercising its discretion and denying the

application.

  We should also mention here the second *Intel* discretionary factor in accordance with the

recommendation of the Second Circuit.  *In re del Valle Ruiz*, 939 F.3d at 533-34.  While the GIC

Application sets its sights on a Contemplated Cayman Litigation, many of the concerns about

sharing information with GIC and the other limited partners associated with the government of

Kuwait stem from what has happened to the former directors of Port Link in the Kuwaiti justice

system and the direct impact such proceedings have had on the affairs of the Port Fund,

including the Noor Bank freeze.  Recent events suggest that GIC will not hesitate to bring any

information it uncovers to the attention of the Kuwaiti authorities in hopes of commencing yet

another criminal investigation.  (*See* Chin Decl. ¶ 19).  And while this Court need not engage in

any study of the Kuwaiti judicial system to decide this Application, courts may consider

concerns raised as a matter of discretion and limit any discovery granted carefully to avoid any

misuse of the information.  *See Deposit Ins. Agency v. Leontiev*, No. 17- mc-00414, 2018 WL

3536083, at *5 (S.D.N.Y. July 23, 2018) (while concern that information would be given to

Russian authorities to concoct criminal charges did not require the Court to deny the application

where the mandatory and statutory factors were met, the court took steps to require narrowing of

the requests).  *See also Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, No.

18-103, 2019 WL 1559433, at *8 (D.D.C. Apr. 10, 2019) ("A refusal to grant assistance under

Section 1782 may also be based on the district court's finding that, in some way, the foreign

proceedings are unfair or incompatible with domestic notions or propriety.") (quoting Smit at

24

15); *U.S. v. Sealed 1, Letter Of Request For Legal Assistance From The Deputy Prosecutor General Of The Russian Federation*, 235 F.3d 1200, 1205 (9th Cir. 2000) ("[T]he statute provides considerable discretion to district courts to decline to order U.S. authorities to assist in situations where the foreign government has, for example, insufficient basis to believe that evidence may be found here, or is simply seeking to harass political opponents.")  Under the circumstances, were this Court to choose to grant any portion of the GIC Application, we would ask that the Court prohibit use of the discovery in proceedings other than the Contemplated Cayman Litigation.  *See generally In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (evidence of intent to use foreign litigation as a ruse to obtain discovery for use in other foreign proceedings could provide good cause for a protective order or support denying the application altogether).

Finally, this request for voluminous bank records that would garner largely duplicative information available from the Port Fund Entities must be reviewed as well in the exercise of discretion as an instance of bad faith warranting denial of the Application.  A "request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, which would be grounds for a discretionary denial of discovery."  *Mees*, 793 F.3d at 299 n.10 (internal citation omitted).  *See also WinNet R CJSC*, No. 16-mc-484, 2017 WL 1373918, at *9 (S.D.N.Y. April 13, 2017) (denying application and noting lack of candor in original application).

## CONCLUSION

For the foregoing reasons, this Court should grant the Port Fund Entities' motion to intervene and deny GIC's Application.

25

Dated: May 15, 2020                              Respectfully submitted,

                                                 CROWELL & MORING LLP


                                                 By: /s/ Kathy Hirata Chin
                                                     Kathy Hirata Chin
                                                     Sarah M. Gilbert
                                                     590 Madison Avenue
                                                     New York, New York 10022
                                                     (212) 223-4000
                                                     kchin@crowell.com
                                                     sgilbert@crowell.com

                                                     *Counsel for the Port Fund L.P. and Port
                                                     Link GP Ltd.*

DCACTIVE-54332465.1