**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

EX PARTE APPLICATION OF GULF
INVESTMENT CORPORATION FOR AN ORDER
TO OBTAIN DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No. 1:19-mc-00593-VSB

## <u>DECLARATION OF KATHY HIRATA CHIN</u>

KATHY HIRATA CHIN hereby declares under penalty of perjury:

1.     I am a partner at the law firm of Crowell & Moring LLP, U.S. Counsel for The Port Fund L.P. ("Port Fund") and Port Link GP Ltd. ("Port Link") (together, the "Port Fund Entities").  I am an attorney admitted to practice in this Court.  The Port Fund Entities are among the targets of the discovery sought by the above-captioned application, and I make this declaration in support of their motion to intervene and in opposition to the application.  I am familiar with the information set forth in this declaration either from personal knowledge or on the basis of documents I have reviewed.[1]

**A.     The Port Fund Investments**

2.     The Port Fund is a Cayman Islands exempted limited partnership established on March 21, 2007 that was set up to invest in the port management industry and related sectors.[2]  The Port Fund's General Partner is Port Link GP Ltd., a Cayman Islands exempted limited company.

3.     KGL Investment Company K.S.C.C. ("KGLI"), a company incorporated under the laws of the State of Kuwait, acted as the Fund's sponsor and placement agent at its establishment.[3]

4.     Ms. Maria (Marsha) Lazareva is a former director of Port Link and currently serves

---

[1] I also certify that the exhibits attached hereto are true and correct copies of the original documents. The translations provided are as a courtesy and have not been certified.
[2] *See* **Ex. B**, Port Fund 2017 audited financial statements, at p. 8.
[3] *See* **Ex. C**, 2007 Port Fund Executive Summary Placement Memo, at p. 16.

1

as the Vice Chairman and CEO of KGLI, and Mr. Saeed Dashti is a former director of Port Link and

the former Chairman of the KGL Group.[4]

5.      Between 2007 and 2013, the Port Fund raised $188,152,000 from limited partners

located primarily in Kuwait.[5] The Port Fund has invested in four major infrastructure projects:

- Clark Civil Aviation Complex (the "Clark Asset"): Beginning in 2008, the Port Fund made a profitable equity investment of approximately $100 million in the Clark Asset, a former airport infrastructure site in the Philippines. In July 2017, the Port Fund sold the redevelopment project for proceeds of $655,000,000.[6]

- Negros Navigation Co, Inc. ("Negros"): In 2008, the Port Fund made a profitable investment of $28.5 million in Negros, a Philippine port management company. In November 2016, the Port Fund sold its stake in Negros for net proceeds of approximately $91.9 million.[7]

- Damietta International Ports Company ("DIPCO"): In 2007, the Port Fund entered into a $20 million convertible loan to invest in the DIPCO development project at a port in Damietta, Egypt. As a result of civil unrest in Egypt, the project was canceled by the Damietta Ports Authority ("DPA") and DIPCO defaulted on the loan. The Port Fund currently is pursuing recovery of the DIPCO loan in the Kuwaiti courts. On February 13, 2020, DIPCO was awarded over $400 million in damages in an arbitration against DPA. The Port Fund intends to seek recovery of the $20 million it is owed from the arbitration award.[8]

- MPC Global Maritime Opportunities S.A. ("MPC"): In 2007, the Fund committed to invest $25 million in MPC, a Luxembourg based entity that owned and operated cargo ships. As a result of the global financial crisis in 2008, MPC failed and the fund lost its equity investment.[9]

**B.    Port Fund Limited Partners**

6.      Applicant GIC is a sovereign financial institution that is located in Kuwait and

owned equally by six sovereign governments: The State of Kuwait; The Kingdom of Bahrain;

The Sultanate of Oman; The State of Qatar; The Kingdom of Saudi Arabia; and The United Arab

---

[4] *See* **Ex. C**, 2007 Port Fund Executive Summary Placement Memo, at p. 14.
[5] *See* **Ex. D**, Port Fund 2013 audited financial statements, at p. 23.
[6] *See* **Ex. B**, Port Fund 2017 audited financial statements, at pp. 19, 27; Gowrie Decl. Ex. 11, at p. 4.
[7] *See* Gowrie Decl. Ex. 11, at p. 310.
[8] *See* **Ex. B**, Port Fund 2017 audited financial statements, at p. 24; Gowrie Decl. Ex. 11, at p. 287.
[9] *See* **Ex. D**, Port Fund 2013 audited financial statements, at p. 17.

DCACTIVE-54343091.1

Emirates.[10]  GIC is a limited partner and minority investor in the Port Fund. GIC invested $20

million in the Port Fund, accounting for approximately 9.28% of the Port Fund's capital.[11]

7.      To date, GIC has received distributions totaling over $28.1 million, achieving a

more than 40% return on its investment. This includes $25.3 million from the sale of the Clark

Asset and $2.8 million from the Negros transaction.[12]

8.      Other limited partners include Kuwait Ports Authority ("KPA") and Public

Institution for Social Security ("PIFSS"), both of which are Kuwaiti state-owned entities.[13]

## C.      Kuwaiti Criminal Proceedings

9.      Over the past several years, the Port Fund Entities and Port Link's former

directors have endured multiple criminal investigations, travel bans, fines, disproportionate bail

requirements, and imprisonment under Kuwait's opaque criminal justice system. Many of those

investigations were instigated by state-owned entities such as KPA and more recently GIC, a

continuing pattern which poses real concerns for entities that do business with the Port Fund.

10.     In April 2017, the Public Prosecution of the State of Kuwait ("Kuwaiti

Prosecutor") commenced criminal proceedings against Ms. Lazareva and Mr. Dashti, who were

then directors of Port Link, accusing them, among other things, of embezzling $166,009,756

from the Port Fund through 167 allegedly illegal financial transactions (Case No. 1496/2012).[14]

These charges originated from multiple criminal complaints first made by Ms. Mona Abdul

Wahab in or around June 2012.  In those complaints, Ms. Wahab alleged that Ms. Lazareva had

---

[10] *See* Gulf Investment Corporation, http://www.gic.com.kw/; ECF No. 3.
[11] *See* **Ex. B**, Port Fund 2017 audited financial statements, at p. 21.
[12] *See* **Ex. E**, Port Fund 2016 audited financial statements, at p. 19; **Ex. B**, Port Fund 2017 audited financial statements, at p. 28.
[13] *See* **Ex. B**, Port Fund 2017 audited financial statements, at p. 21.
[14] *See* **Ex. F**, Case No. 1496/2012, Accusation Report, dated April 26, 2017.

DCACTIVE-54343091.1

stolen KPA and PIFSS's capital contributions to the Port Fund.[15]

11.     Ms. Wahab was an employee of Ms. Lazareva in Kuwait who, following her termination on March 30, 2010, forged Ms. Lazareva's identity and stole more than $500,000 from Ms. Lazareva's personal bank account.  Ms. Wahab was subsequently convicted on charges of embezzlement and sentenced to three years imprisonment on May 30, 2016.[16]

12.     On November 11, 2019, a Kuwaiti Court absolved Ms. Lazareva and Mr. Dashti of embezzling $166,009,756 and dismissed the claims with respect to 165 of the 167 transactions, finding that these 165 transactions were legitimate.  The court nevertheless convicted Ms. Lazareva and Mr. Dashti on the remaining two transactions, finding them guilty on one charge of embezzling of public funds and one charge of money laundering (the "2019 Conviction").  They were each sentenced to 15 years imprisonment.[17]

13.     As the basis for the 2019 Conviction, the Kuwaiti Court relied on the testimony of two witnesses: (i) Ms. Wahab, who at the time of the verdict had already been found guilty of embezzling funds from Ms. Lazareva; and (ii) Hamad Al-Allayan, who served as the prosecution's expert witness but who, at the time of the verdict, had already been convicted of forging evidence for the prosecution in a separate criminal proceeding against Ms. Lazareva and Mr. Dashti described below.[18]  The 2019 Conviction is the subject of a currently pending appeal before the Kuwaiti Appeals Court.

14.     On December 19, 2017, the Kuwaiti Prosecutor filed charges against Ms. Lazareva and Mr. Dashti for embezzling public funds from KPA in connection with KGLI

---

[15] See **Ex. G**, Complaint submitted on behalf of Mona Abdul Wahab to the Kuwaiti Prosecutor, dated June 26, 2012.
[16] See **Ex. H**, Case No. 144/2016, Verdict, dated May 30, 2016.
[17] See **Ex. I**, Case No. 1496/2012, Verdict, dated November 11, 2019.
[18] See **Ex. I**, Case No. 1496/2012, Verdict, dated November 11, 2019, at pp. 126, 254; **Ex. J**, Case No. 3531/2019, Appeal Verdict, dated May 27, 2019.

4

billing the KPA for advisory services (Case No. 1942/2015), based on a criminal complaint filed by KPA in October 2015.  Ms. Lazareva was alleged to have signed three specific documents requiring payment for advisory services that, according to the KPA, were allegedly never performed.[19]  On May 6, 2018, the Kuwaiti Court, without permitting the accused to present any defense, found the defendants guilty and sentenced Ms. Lazareva to 10 years imprisonment and Mr. Dashti to 15 years imprisonment (the "2018 Advisory Work Conviction").[20] They were immediately imprisoned.

15.     On November 7, 2018, the Kuwaiti Prosecutor charged Mr. Al-Alyaan with forging Ms. Lazareva's signature on the three documents that formed the basis of her conviction. On May 27, 2019, Mr. Al-Alyaan was convicted of that forgery and sentenced to 6 months in prison.[21] In addition, on March 25, 2019, a Kuwaiti court found in separate civil proceedings that there was a valid contractual relationship between the KPA and KGLI, and that the advisory work had indeed been performed by KGLI and appropriately invoiced.[22]

16.     On May 5, 2019, the Kuwaiti Appeals Court issued a verdict nullifying the 2018 Advisory Work Conviction against Ms. Lazareva and Mr. Dashti.  Although GIC characterizes this nullification as based merely on "procedural grounds,"[23] the conviction was voided because defendants were not given the fundamental right to present a defense.[24]

17.     Despite nullifying the 2018 Advisory Work Conviction, the Court of Appeal ordered that Ms. Lazareva and Mr. Dashti continue to be held in prison pending a final review of

---

[19] See **Ex. K**, Case No. 1942/2015, Accusation Report, dated December 17, 2017, at pp. 1-3, 35.
[20] See **Ex. L**, Case No. 1942/2015, Verdict, dated May 6, 2018.
[21] See **Ex. M**, Case No. 292/2017, Accusation Report, dated November 7, 2018; **Ex. N**, Case No. 3531/2019, Appeal Verdict, dated May 27, 2019.
[22] See **Ex. O**, Case No. 10095/2015, Verdict, dated March 25, 2019.
[23] See Bortman Decl. ¶ 13.
[24] See **Ex. P**, Case No. 1942/2015, Appeal 1596/2018 Verdict, dated May 5, 2019, at pp. 8-9.

DCACTIVE-54343091.1

the charges against them by the Court of Appeal unless they made bail payments of approximately $65 million each.[25]

18.     On January 20, 2020, Ms. Lazareva and Mr. Dashti were reconvicted on the charges related to the advisory work conducted by KGLI for the KPA and were sentenced to 7 years and 10 years imprisonment respectively.[26]  Those convictions are currently on appeal to Kuwait's highest court.[27]

19.     Both GIC and KPA continue to reach out to the Kuwaiti authorities seeking renewed or new action against Ms. Lazareva and Mr. Dashti, including:  (i) KPA complaint dated February 18, 2019 alleging forgery and manipulation of the accounts, books and audited financial statements of the Port Fund by "its executives;"[28] (ii) GIC complaint dated December 18, 2019 seeking charges against Ms. Lazareva and Mr. Dashti for embezzlement of public funds;[29] and (iii) GIC complaint dated February 20, 2020 seeking charges against Ms. Lazareva and Mr. Dashti for embezzlement of Port Fund money.[30]

20.     KPA has also indicated its intent to seek criminal charges against professional service providers to the Port Fund, including law, lobbying and public relations firms. For example, in a press release dated August 17, 2019, KPA states that payments made to advisors to

---

[25] *See* **Ex. P**, Case No. 1942/2015, Appeal 1596/2018 Verdict, dated May 5, 2019, at pp. 9-10.

[26] *See* **Ex. Q**, Appeal Case No. 1596/2018, Verdict, dated January 20, 2020.

[27] A great deal of media coverage has already been shared with this Court in the GIC Application.  *See, e.g.*, footnotes to Bortman Declaration.  There has indeed been tremendous interest in the plight of Ms. Lazareva in particular, from not only the media but from supporters in the United States, Russia and Great Britain.  *See* **Ex. R**, Shane McGinley, The Marsha Lazareva Files, Arabian Business (June 30 – July 13, 2019). The international outcry includes a pending review by the United Nations Working Group on Arbitrary Detention (*see* **Ex. S**, Working Petition, *In the Matter of Maria Lazareva v. Government of the State of Kuwait*, dated May 23, 2019) and efforts to initiate a Global Magnitsky Act inquiry (*see* **Ex. T**, U.S. Sen. Roger F. Wicker and U.S. Rep. Steve J. Chabor, *Request to Initiate Global Magnitsky Act Inquiry into Kuwaiti Officials for Human Rights Abuses of Ms. Maria Lazareva*, dated April 25, 2019).

[28] *See* **Ex. U**, Letter submitted by KPA to the Attorney General, dated February 18, 2019.

[29] *See* **Ex. V**, Letter submitted on behalf of GIC to the Attorney General, dated December 18, 2019.

[30] *See* **Ex. W**, Letter submitted on behalf of GIC to the Attorney General, dated February 20, 2020.

DCACTIVE-54343091.1

the Port Fund, including Crowell & Moring LLP, may be a "further misappropriation of public funds" and constitute "crimes against the State [of Kuwait]."[31]

21.     On October 2, 2019, the KPA wrote a letter to the Kuwaiti Attorney General, complaining that KGLI "contracted with … foreign companies in the U.S.A. to organize a media campaign aimed for tarnishing the state's image and to defame it within the U.S.A. through the defendant's lawyer (Crowell & Moring)" and seeking criminal charges against KGLI executives and those "foreign parties." The letter seeks criminal charges under a section of the Kuwaiti penal code carrying a minimum five-year prison sentence.[32]

**D.     The Kuwaiti Government's Attempt To Confiscate The Clark Asset Sale Proceeds.**

22.     In July 2017, the Port Fund sold the Clark Asset project to Udenna Development Corporation ("Udenna"), a Philippine entity, for the sale price of $655,000,000 pursuant to a July 2017 Share Purchase Agreement. After repaying bank loans, on November 14, 2017, Udenna wired the net closing proceeds due to the Port Fund of $496,429,777 (the "$496 Million") to a bank account held in the name of Port Link at Noor Bank in Dubai (the "Noor Account").[33]

23.     As a result of the pending criminal charges in Case No. 1496/2012, Noor Bank froze these funds at the request of the Dubai authorities on November 21, 2017.[34]  Significantly, although the claims against Ms. Lazareva and Mr. Dashti in Case No. 1942/2015 for failure to perform advisory services for KPA had been working their way through the system since 2015, they were not arrested and detained until November 28, 2017, shortly after the freeze was placed and Kuwait authorities were notified.

---

[31] *See* **Ex. X**, KPA press release dated August 17, 2019. The English-language version of the KPA press release remains available as a pop up on the front page of KPA's website at http://www.kpa.gov.kw/.

[32] *See* **Ex. Y**, Letter submitted by KPA to the Attorney General, dated October 2, 2019.

[33] *See* **Ex. B**, Port Fund 2017 audited financial statements, pp. 18-19, 27.

[34] *See* Gowrie Decl. Ex. 11, at p. 43.

DCACTIVE-54343091.1

24.     Although the Dubai authorities quickly concluded that the "funds are free from any illegitimate activities,"[35] this transfer remained frozen for over 14 months at the direct request of the Attorney General of Kuwait.  As noted above, the 2018 Advisory Work Conviction was entered on May 6, 2018.  Three days later, the Kuwait Attorney General wrote to the Dubai Attorney General requesting judicial assistance to "transfer USD 400 million deposited at UAE bank accounts to [Kuwaiti government-owned entities] in Kuwait."[36] Fortunately, Kuwait's request was refused unless and until it could provide a court order allowing it to "confiscate or freeze" the requested amount.[37]

25.     The freeze forced the Port Fund to incur substantial expenses to retain lawyers, lobbyists, and public relations firms to secure the release of the $496 Million.[38] On February 5, 2019, the Dubai Attorney General agreed to fully release the $496 Million to Port Link, but only after Port Link consented to the Kuwait Attorney General's demand to transfer to KPA more than $13 million above its legal entitlement.[39]

**E.     Section 1782 Proceedings**

26.     On December 26, 2019, GIC filed its Section 1782 application.  A month later, KPA filed its Section 1782 application.[40]  Both applications were filed *ex parte*, despite knowledge of the identity of the Port Fund's U.S. counsel.[41]

27.     The GIC Application barely mentions its pending Section 22 proceeding in the

---

[35] *See* Gowrie Decl. Ex. 11, at pp. 44, 59.
[36] *See* Gowrie Decl. Ex. 11, at p. 55.
[37] *See* Gowrie Decl. Ex. 11, at pp. 55-56.
[38] *See* Gowrie Decl. Ex. 11, at pp. 19-29.
[39] *See* Gowrie Decl. Ex. 11, at p. 5.
[40] *See In re Application of Kuwait Ports Authority*, Case No. 1:20-mc-00046-ALC, (S.D.N.Y. filed Jan. 27, 2020).
[41] *See* Tahler Decl., p 6 at n. 14.

8

Cayman Islands[42] and focuses instead on other aspects of GIC's quest for information, claiming

that the Port Fund Entities have refused to provide answers to GIC's many questions.[43]   Since the

filing of the GIC Application, however, the Port Fund Entities have provided much of the

requested information, first in a disclosure letter dated February 27, 2020 (the "Disclosure

Letter"), and then through their Section 22 evidence.[44]

28.      We understand that GIC counsel remain skeptical of the need for confidentiality.

However, the Port Fund Entities must remain mindful of potential third party claims against the

Port Fund if confidentiality obligations are breached, as well as the need to protect the identities

of a limited number of recipients of proceeds from the Clark Asset Sale.[45]

**F.      Information Already Provided to GIC in the Section 22 Proceedings**

29.      Because GIC sought much of the same information in the Section 22 Proceeding,

much of the information sought in the GIC Application has already been provided to GIC.   For

example, in the Section 22 Proceeding, GIC made detailed requests regarding the Clark Asset,

including bank statements from the Noor Account and details regarding each transaction

involving the Clark Asset, including the identities of all recipients of the $496 Million.[46] As set

forth below and in Exhibit A, response to these requests must satisfy the GIC Application

requests regarding the Clark Asset.

30.      We have compared the Disclosure Letter and the evidence filed by the Port Fund

Entities in the Section 22 Proceeding (the "Section 22 Evidence"),[47] to the document requests set

---

[42] The Section 22 proceeding is described in the Gowrie Declaration. *See* Gowrie Decl. ¶¶ 9-25.
[43] *See* GIC Memo at 2, 3, 8, 10, 12; Tahler Decl. at ¶¶ 5-6.
[44] *See* Gowrie Decl. ¶¶ 18, 23.
[45] *See* Gowrie Decl. ¶ 19, Ex. 11 at p. 12.
[46] *See* Gowrie Decl. ¶ 17.
[47] *See* Gowrie Decl. Exs. 11, 14, 16.

9

out in GIC's proposed subpoenas in its § 1782 Application (the "Section 1782 Requests")[48] and while the underlying exhibits remain the best source for the details of these requests, for the Court's convenience we have summarized in **Exhibit A** the extent to which GIC already has been provided with the information requested in the GIC Application related to the Clark Asset.

31.     While the Clark Asset is the principal focus of the GIC Application, it is worth noting the extent of the information provided in the Disclosure Letter and the Section 22 Evidence. Thus, GIC also requested information regarding the DIPCO investment in both the Section 22 Proceeding and the GIC Application.[49] The Disclosure Letter and the Section 22 Evidence provide detailed information regarding that investment, including an explanation for the purported "write-off" of this investment mentioned in the GIC Application.[50]

32.     And while GIC did not request any information relating to Negros in the Section 22 Proceeding, the Disclosure Letter provided information in addition to the previously distributed exit report regarding that investment, including a detailed response to the concern expressed in the GIC Application about the use of the exit proceeds.[51]

33.     Finally, the Disclosure Letter invited GIC to articulate the basis for the Section 1782 Requests for all transactions involving the over 30 entities defined as "Related Companies," "Anomalous Companies," and "Advisors"[52] so that additional information could be provided if appropriate.[53] GIC has not responded to that invitation.

*     *     *

---

[48] *See* Tahler Decl. Exs. M-X.
[49] *See* Gowrie Decl. Ex. 14, at pp. 18-19; Tahler Exs. M-X.
[50] *See* GIC Mem. at 12 n.8; Gowrie Decl. Ex. 11 at pp. 16-17; Ex. 14 at pp. 18-19; Ex. 16 at pp. 30-31; Ex. 17 at pp. 37-39.
[51] *See* GIC Mem. at 10 n.5; Gowrie Decl. Ex. 11 at pp. 17-18.
[52] *See* Tahler Decl. Exs. M-X.
[53] *See* Gowrie Decl. Ex. 11 at pp. 22-23.

DCACTIVE-54343091.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Middleburgh, New York,
on May 15, 2020.

KATHY HIRATA CHIN