**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

EX PARTE APPLICATION OF GULF
INVESTMENT CORPORATION FOR AN ORDER
TO OBTAIN DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No. 1:19-mc-00593-VSB

**DECLARATION OF BARNABY GOWRIE**

Pursuant to 28 U.S.C. § 1746, I, **BARNABY GOWRIE** hereby declare, under penalty of

perjury under the laws of the United States of America, that the following is true and correct to

the best of my knowledge and belief:

**Introduction**

      1.     I am an Attorney-at-Law in the Cayman Islands with the firm, Walkers, of 190

Elgin Avenue, George Town, Grand Cayman KY1-9001, Cayman Islands, where I am a Partner

in the Insolvency and Dispute Resolution group.

      2.     I am a graduate of Magdalene College, Cambridge University, England where I

studied Law. I was admitted to the Law Society of England and Wales in 2004 and practiced as a

solicitor in England prior to being admitted as an Attorney-at-Law in the Cayman Islands in

2007.  I became a partner of Walkers in 2014.

      3.     I act as Cayman Islands legal counsel to The Port Fund L.P. (the "**Fund**") and its

general partner, Port Link GP Ltd. (the "**GP**", and together with the Fund, the "**Port Fund**

**Entities**") on a number of matters, including an ongoing proceeding in the Cayman Islands

pursuant to which Gulf Investment Corporation ("**GIC**") seeks the disclosure of certain

documents and information pursuant to section 22 of the Cayman Islands Exempted Limited Partnership Law (2018 Revision) (the **"ELP Law**," attached hereto as **Exhibit 1**) (the **"GIC S.22 Proceeding"**).

4.      Although I am not a U.S. Attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am reasonably well acquainted with section 1782 of Title 28 of the US Civil Procedure Code (**"Section 1782"**) due to my experience advising clients on complex cross-border litigation.

5.      I make this declaration in support of the Port Fund Entities' motion to intervene and opposition to GIC's application for an order under Section 1782 to serve subpoenas on twelve correspondent banks for the purpose of obtaining documents relating to certain transactions entered into by the Port Fund Entities (the **"GIC Application"**).

6.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge, and my review of relevant documents which are identified throughout this declaration.  To the extent that statements in this declaration are of my legal opinion, they represent my views of the laws of the Cayman Islands only.[1]

## Overview of Cayman Islands Exempted Limited Partnerships

7.      Exempted limited partnerships (each an **"ELP"**) are principally governed by the ELP Law.  An ELP is not an entity with separate legal personality.  As such, all letters, contracts, deeds, instruments or documents must be entered into by the general partner for and on behalf of the ELP: section 14(2) of the ELP Law.  In addition, a limited partner shall not take part in the conduct of the business of an ELP in its capacity as a limited partner: section 14(1) of the ELP Law.

8.      Consistent with the matters set out above, section 33(1) of the ELP Law provides

---

[1] I also certify that the exhibits attached hereto are true and correct copies of the original documents.

that, subject to sub-sections to section 33, any legal proceedings on behalf of an ELP must be brought by the general partner, stating: *"...legal proceedings by or against an exempted limited partnership may be instituted by or against any one or more of the general partners only, and a limited partner shall not be a party to or named in the proceedings."*

**Overview of S.22 Proceedings**

9.      Relevantly, section 22 of the ELP Law provides: *"Subject to any express or implied term of the partnership agreement, each limited partner may demand and shall receive from a general partner true and full information regarding the state of the business and financial condition of the exempted limited partnership."*

10.      Accordingly, section 22 of the ELP Law provides a mechanism under Cayman Islands law that permits limited partners to access documents and information concerning the state of the business and financial condition of an ELP, subject to the terms of the partnership agreement that relates to that particular ELP.

11.      In addition to the ELP Law, the rights and obligations of the GP and the limited partners are set out in the Fund's Limited Partnership Agreement which is dated 22 March 2007 (as amended and restated on 24 July 2008) (the **"LPA,"** attached hereto as **Exhibit 2**).  The LPA contains certain provisions which govern the provision of documents and information to the limited partners (which section 22 of the ELP Law is subject to).

12.      GIC commenced the GIC S.22 Proceeding in the Grand Court of the Cayman Islands (the **"Cayman Court"**) by way of originating summons dated 26 November 2019 (the **"GIC Summons,"** attached hereto as **Exhibit 3**).[2]

13.      Paragraph 29 of First Affidavit of Bader Abdulmohsen El-Jeaan sworn 26

---

[2] GIC filed and served an Amended Originating Summons dated 12 December 2019 (**"Amended GIC Summons,"** attached hereto as **Exhibit 4**) in materially the same terms as the Summons, but correcting an error in the GP entity name.

November 2019 ("**El-Jeaan 1**," attached hereto as **Exhibit 5**) sets out GIC's requests for expansive discovery from the Port Fund Entities regarding their finances and transactions, with a focus on the Fund's investment in the Clark Civil Aviation Complex (the "**Clark Asset**") transaction (the "**GIC S.22 Requests**").[3]

14.     The Port Fund Entities were served with a further originating summons dated 29 January 2020 by a third limited partner of the Fund, the Kuwait Ports Authority (the "**KPA**", and the "**KPA Summons**," attached hereto as **Exhibit 7**) which sought information from the Port Fund Entities pursuant to clause 7.1 of the LPA and/or section 22 of the ELP Law (the "**KPA S.22 Proceeding**").[4]

15.     It was agreed between all parties that, given the identical information sought by three limited partners of the Fund, the GIC S.22 Proceeding and the KPA S.22 Proceeding would be heard together by the Cayman Court (together, the "**S.22 Proceedings**").

**Similarities between the GIC S.22 Proceeding and the GIC Application**

16.     Despite GIC initiating the GIC S.22 Proceeding, GIC subsequently proceeded with filing the GIC Application which, as set out below, appears to be largely duplicative of the GIC S.22 Requests.[5]

---

[3] Following the filing of the GIC S.22 Proceeding, on 29 January 2020, the Port Fund Entities were served with a further summons seeking to add an additional limited partner, the General Retirement and Social Insurance Authority ("**GRSIA**"), as a second plaintiff to the GIC S.22 Proceeding on the basis that it sought the same information as GIC from the Port Fund Entities (the "**GRSIA Summons**").  Mr El-Jeaan swore a second affidavit on 21 January 2020 in support of the GRSIA Summons ("**El-Jeaan 2**," attached hereto as **Exhibit 6**).

[4] The KPA Summons was supported by the First Affidavit of Yousef Al Sabah sworn on 27 January 2020 ("**Al Sabah 1**," attached hereto as **Exhibit 8**).  Al Sabah 1 set out, in the schedule to the affidavit, the KPA's requests for information from the Port Fund Entities, the majority of which are identical to the GIC S.22 Requests (the "**KPA S.22 Requests**").

[5] Accordingly, on 24 January 2020, Walkers, on behalf of the Port Fund Entities, wrote to GIC (via its Cayman Islands' counsel, Travers Thorpe Alberga ("**TTA**")) (the "**24 January Letter**," attached hereto as **Exhibit 9**) requesting that GIC withdraw the GIC Application, given the duplicative information requests, and inviting GIC to amend the GIC S.22 Requests to include any additional information requests.  On 31 January 2020, TTA responded stating that GIC would not be withdrawing the GIC Application and

17.     In order to illustrate the overlap between the GIC S.22 Requests and the information GIC seeks in the GIC Application, I set out a non-exhaustive list of information requested in the GIC S.22 Requests as it relates to the Clark Asset: (a) Bank statements from the Noor Bank account relating to the Clark Asset; (b) The identities of all parties who received disbursements from the Noor Account, the amount and date of such disbursement, and the bank account details for such disbursements; and (c) The legal basis upon which each and every payment above was made to such parties.

**Disclosure Letter**

18.     On 27 February 2020, the Port Fund Entities sent a letter to GIC disclosing certain documents and information sought by GIC pursuant to the GIC S.22 Proceeding and the GIC Application (the "**Disclosure Letter**", attached hereto with its enclosures as **Exhibit 11**).

As set out in the Disclosure Letter, the Port Fund Entities did not disclose certain information (which includes documents and information relating to the Clark Asset) because that information is subject to strict third party confidentiality obligations (the "**Confidential Information**").  The Confidential Information, insofar as it relates to the Clark Asset, includes but is not limited to, the following: (a) Certain correspondence relating to the Clark Asset; (b) Documentation relating to the financing of the Clark Asset; (c) Bank transfer slips and related documentation in connection with the sale of the Clark Asset; (d) Correspondence with the Philippines Competition Commission in relation to the sale of the Clark Asset; and (e)Agreements relating to the sale of the Clark Asset, (the "**Clark Confidential Information**").

19.     If the Port Fund Entities were to disclose the Confidential Information without an order from the Cayman Court permitting the Port Fund Entities to disclose the Confidential

---

declining the Port Fund Entities' invitation to consolidate the information requests into the GIC S.22 Proceeding (the "**31 January Letter**", attached hereto as **Exhibit 10**).

Information, it is arguable that disclosure would likely constitute a breach by the Port Fund Entities of their duty of confidence to the respective third party principals of the Confidential Information, and could expose the Port Fund Entities to potential claims by those third party principals.

**CIDL Application**

20.     Accordingly, on 14 February 2020 the Port Fund Entities made an application under the Cayman Islands Confidential Information Disclosure Law (2016 Revision) (the "**CIDL**") seeking directions from the Cayman Court which would enable them to make disclosure of the Confidential Information requested by GIC without breaching the Port Fund Entities' strict third party confidential obligations (the "**CIDL Application**").

21.     The CIDL Application sought orders from the Cayman Court that the Port Fund Entities be permitted to disclose the Confidential Information (including the Clark Confidential Information) in response to the S.22 Proceedings (including the GIC S.22 Requests), subject to GIC and other recipients of the Confidential Information executing appropriate confidentiality and non-disclosure agreements in order to protect the third party principals of the Confidential Information.

22.     The CIDL Application was listed to be heard *ex parte* on 17 April 2020.[6]  Despite the CIDL Application initially proceeding on 17 April 2020, the Cayman Court ultimately adjourned the substantive hearing of the CIDL Application to be heard together with the S.22 Proceedings on 5 and 6 May 2020.[7]

---

[6] Notwithstanding the *ex parte* nature of the CIDL Application, GIC, together with GRSIA and the KPA, objected to the CIDL Application being heard on this basis (the "**CIDL Objections**," attached hereto as **Exhibit 12**).  The Port Fund Entities responded to the CIDL Objections (the "**Response to CIDL Objections**," attached hereto as **Exhibit 13**).

[7] At the hearing of the S.22 Proceedings on 5 and 6 May 2020, the CIDL Application was further adjourned to date to be fixed following the delivery of the judgment of the Cayman Court in respect of the

**Procedural timeline of the GIC S.22 Proceeding**

23.     The table below sets out the procedural timeline of the GIC S.22 Proceeding:

| Date | Procedural step |
|---|---|
| 26 November 2019 | GIC Summons issued by GIC supported by El-Jeaan 1 |
| 12 December 2019 | Amended GIC Summons issued by GIC |
| 29 January 2020 | GRSIA Summons issued by GRSIA supported by El-Jeaan 2 |
| 9 April 2020 | The Port Fund Entities filed and served their evidence in response to the GIC Summons (the **"Port Fund Evidence"**, attached hereto as **Exhibit 14**) |
| 24 April 2020 | GIC (with GRSIA) filed evidence in reply to the Port Fund Entities' evidence (the **"GIC Reply Evidence"**, attached hereto as **Exhibit 15**) |
| 1 May 2020 | The Port Fund Entities filed further evidence in reply to the GIC Reply Evidence (the **"Port Fund Further Evidence"**, attached hereto as **Exhibit 16**) |
| 1 May 2020 | Parties exchanged skeleton arguments in respect of the S.22 Proceedings (the **"Skeleton Arguments"**, attached hereto as **Exhibit 17**) |
| 5 and 6 May 2020 | Hearing of the S.22 Proceedings |

**Current status of S.22 Proceedings**

24.     The S.22 Proceedings were heard before Justice Parker, a judge of the Cayman Court, on 5 and 6 May 2020.  The Cayman Court has reserved its judgment, but indicated it will

S.22 Proceedings.

provide a written judgment in due course.  I would typically expect a written judgment of this nature to be delivered within 6 to 8 weeks of the hearing, but this will depend on the workload of the individual Judge.

25.     The decision of the Cayman Court is expected to address what information the Port Fund Entities are required to provide to GIC (and the other limited partners), and what confidentiality safeguards and/or other restrictions will be placed on the receipt and/or use of the information ordered to be provided to GIC.[8]

**Response to declaration of Ms Peccarino**

26.     I have read the declaration by GIC's Cayman Islands counsel, Ms Anna Peccarino, executed on 20 December 2019 and filed in support of the GIC Application, the purpose of which is stated to *"explain Cayman court procedure in connection with Section 1782 applications filed in U.S. courts."* (the **"Peccarino Declaration"**).

27.     As a preliminary matter, the Peccarino Declaration states at paragraph 6 that the documents sought by GIC in the GIC Application are to support potential claims that GIC is considering pursuing in the Cayman Islands in relation to the Fund.  The Peccarino Declaration does not properly explain what potential claims GIC may have against the Fund in the Cayman Islands with any level of specificity, nor does it identify the legal basis for any such potential claims.

28.     To the extent that GIC considers that it has claims against the GP that are fiduciary in nature, it is important to note that any such claims do not vest in GIC personally, but rather are claims that vest in the limited partners of the Fund as a whole for the benefit of the

---

[8] In addition, even once the Cayman Court hands down its judgment, the order for provision of documents may still be subject to the adjourned CIDL Application, which Justice Parker has indicated he may wish to hear prior to finalisation of the Cayman Court's order (which is of course subject to the judgment in the S.22 Proceedings in any event).

Fund: section 33(1) of the ELP Law.[9]

29.     As to the Cayman Islands law on the reception of section 1782 applications in the Cayman Islands, the Peccarino Declaration appears to mischaracterise the position in the Cayman Islands, by selectively quoting sections of *Lyxor Asset Management S.A. v Phoenix Meridian Equity Limited* [2009] CILR 553 (attached hereto as **Exhibit 18**) helpful to the GIC Application.  Accordingly, I set out below the full position in the Cayman Islands with respect to section 1782 applications.

30.     The position in the Cayman Islands with respect to section 1782 applications is set out in some detail at paragraphs 20 to 21 of *In the Matter of Nord Anglia Education, Inc -* FSD 235 of 2017 – Costs ruling (18 April 2019) (attached hereto as **Exhibit 19**):

> *"20.     However, for present purposes the critical finding was not that the pursuit of section 1782 applications could never be complained of in Caymanian proceedings. On the contrary, the finding in the circumstances of that case was that:*
>
> *"In the particular circumstances of this case... Phoenix has taken the view that its interests are best served by seeking to obtain the information which it needs by taking oral depositions in New York - a relatively summary process - rather than by proceeding by way of further and better particulars and interrogatories in the Grand Court - with the potential for procrastination and delay inherent in that process. It cannot be said that, in making that choice, it is acting oppressively or unconscionably or that its choice amounts to an abuse of the process of the Cayman courts."*
>
> *21.     It is accordingly competent for this Court to find that a party has acted unreasonably or abused the process of this Court by pursuing section 1782 proceedings in a manner which disrupts primary proceedings before this Court.  On the other hand, the only authority cited which addresses the interaction between section 1782 applications and proceedings in the Grand Court supports the general proposition that parties are free in appropriate circumstances to pursue such applications in the US courts. In considering the propriety of the applications, it is relevant to note that:*

---

[9] Similarly, to the extent that GIC has complaints about transactions that may have been entered into by third parties that cannot be attributed to the Port Fund Entities as a matter of Cayman Islands law (for example, commercial transactions that are unrelated to the business of the Fund), those transactions could not form the basis of any cause of action against the Port Fund Entities, including any application by GIC or any other limited partner of the Fund to seek to wind up the Fund in bankruptcy: *Re Hydrosan Ltd* [1991] BCLC 418 (attached hereto as **Exhibit 20**).

(a)        the Company has not contended that the applications (against third parties) <u>are wholly unnecessary and are seeking information which could be obtained through applications against the Company before this Court</u>; and

(b)        the Company has essentially contended that the Dissenters have exaggerated their discovery complaints and manipulated them with a view to aligning the timetable in this action to that in the US proceedings." [emphasis added]

31.    While the Cayman Court recognised in *Nord Anglia* that the US Courts are usually best placed to determine if section 1782 applications are abusive or oppressive, it is clear that the Cayman Courts are not always receptive to the existence of parallel section 1782 proceedings in the United Stated as a matter of course, particularly where the section 1782 application seeks to interfere with proceedings before the Cayman Court.

32.    The Peccarino Declaration omits any reference to the *Nord Anglia* case.   In addition, while citing a passage from paragraph 57 of *Lyxor*, Ms Peccarino omits to cite the entire passage, which is set out below (the underlined being the relevant sentences omitted from the Peccarino Declaration):

"...prima facie a party who can invoke the jurisdiction of the US District Court under §1782 may choose to do so. The choice (in the present case) arises from the fact that SGAS is resident in New York. The right to take pre-trial deposition testimony from Mr. Rosenberg and Mr. Phlipponneau is a right conferred by US law—it is not a right conferred by, or to be withheld under, Cayman law.  <u>The relevant question is not whether Phoenix could achieve a similar result in the Cayman Islands but whether (if it could) it is acting oppressively or abusively in seeking to rely on the right which it enjoys under US law</u>."

33.    Accordingly, it is clear from *Nord Anglia* and *Lyxor* that the Cayman Court may not consider it appropriate for a party to a proceeding in the Cayman Islands to seek relief under section 1782 where: (a) pursuing a section 1782 application would disrupt primary proceedings before the Cayman Court; and/or (b) the section 1782 application would be wholly unnecessary because the same information can be obtained through proceedings in the Cayman Court.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 14th day of May, 2020.

_____
BARNABY GOWRIE