# Exhibit C

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3615**

WRITER'S EMAIL ADDRESS
**kristintahler@quinnemanuel.com**

January 9, 2020

**VIA E-MAIL**
SGILBERT@CROWELL.COM

Sarah Gilbert
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Re:   *Ex Parte* Application of Gulf Investment Corporation for an Order to Obtain Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. §1782 (19-mc-00593)

Dear Ms. Gilbert:

We write in response to your letter of January 5, 2020, wherein you purport to extend us and our client Gulf Investment Corporation ("GIC") the opportunity to engage in "reasonable and adequate due diligence" before proceeding with 1782 Application filed by GIC on December 26, 2019.

As an initial matter, we unequivocally reject the suggestion that the diligence conducted prior to the filing of the 1782 Application was not reasonable or adequate. Any such suggestion is refuted by the 1782 Application filing itself, which appends over *fifty* individual exhibits, spanning hundreds of pages. It is ironic that you have recognized this fact in your highly inflammatory and procedurally improper separate correspondence to the Court, wherein you request adequate time to respond given the "voluminous filing, which is over 800 pages in length." (ECF 8) In short, we and our client stand by our diligence, investigation, and the resulting 1782 Application. Any suggestion that we have fallen short of our legal and professional obligations and responsibilities is not well taken.

Before responding to your offer to meet, we must first address two additional matters. First, your transparent effort to provoke our engagement as to Agility and Mr. Sultan is out of place and unavailing. It should suffice to note that your relevant account is false and misleading. Because such matters have no bearing on the instant matter involving the 1782 Application filed on behalf of our client, GIC, we see no reason to address them further.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Sarah Gilbert
January 9, 2020

      Second, your assertion that GIC "rejected" an offer from the Port Fund to meet to discuss transactions of interest is incorrect.  Lest there be any doubt, in correspondence from Meysan Partners, counsel for GIC, dated November 13, 2019, to counsel for the Port Fund, including your law firm, counsel for GIC expressly stated "*[a]s you have indicated that you are willing to engage with representatives of GIC . . . we would appreciate if you could please speak with us at your earliest convenience in order to do so.*"  Not only was your firm a recipient of this letter, this letter was also exhibited in the 1782 Application (ECF 5-1, Exhibit K).  Had you yourself conducted reasonable and adequate due diligence prior to sending specious letters to us, as well as the Court, your misrepresentation could have been avoided.  As you must also be well aware, the Port Fund failed to respond substantively to GIC's acceptance.

      Returning to your offer, consistent with the foregoing, we are willing to meet with you.  Given the concerns engendered by the facts and matters set out in GIC's evidence in the 1782 Application and the Cayman proceedings, it will be necessary for us to see documentary corroboration of any assertions made orally at a forthcoming meeting.  We view such a meeting as a continuation of our already vast and well-evidenced diligence process.  As such, acceptance of your offer to meet should in no way be construed as acceptance that there was a lack of diligence prior to the filing of the 1782 Application.  Nor should such meeting occasion delay of either the 1782 Application or the Cayman proceedings, given the importance of those two proceedings to GIC in obtaining proper access to examine the full documentary record.  Especially given the significant delays caused by the Port Fund leading up to the filings, GIC cannot reasonably incur any further delay.

      Finally, with regard to your requirement for a confidentiality agreement prior to such meeting, we note that you have failed to express why such an agreement is necessary in light of the fact that Section 7.3 of the Limited Partnership Agreement already obligates GIC to ensure that it and its advisors comply with confidentiality obligations.  Indeed, your purported need to "protect" the other Limited Partners rings hollow, particularly given that Limited Partners representing more than 82% of the total commitments in the Port Fund have themselves requested the same information from you, to no avail.

      That being said, in a final good faith effort, attached hereto as Exhibit A is a draft confidentiality agreement that GIC would be prepared to execute.  Please advise how you wish to proceed in that regard and generally with regard to scheduling our meeting.

Best regards,

*/s/ Kristin Tahler*

Kristin N. Tahler

Attachment

# Exhibit A

January 9, 2020

Dear Sirs:

In connection with its investment in The Port Fund, L.P., an exempted limited partnership organized in the Cayman Islands (the "*Fund*"), Gulf Investment Corporation ("*GIC*") has requested access to certain financial and other non-public information concerning the Fund, Port Link GP Ltd., and each of their respective activities, current and former investments (including, without limitation, current and former portfolio companies), business, financial and other records (the "*Evaluation Material*"). In consideration for, and as a condition to, the Fund's furnishing access to such information to GIC, its directors, officers, employees, agents, consultants, advisors or other representatives (collectively, our *"Representatives"*), we have agreed to the following:

1. GIC agrees to hold and to keep Evaluation Material (other than information of the type described in paragraph 2 below) confidential, except to the extent as provided in paragraph 3 below.

2. For purposes hereof, the term "Evaluation Material" shall be deemed not to include information that (i) is or becomes generally available to the public other than as a result of disclosure by GIC or by our Representatives in violation of this letter agreement, (ii) was within GIC's possession prior to it being furnished to GIC by the Fund, its directors, officers, employees, agents, consultants, advisors or other representatives (collectively, the "*Fund's Representatives*") pursuant hereto, or, becomes available to GIC on a non-confidential basis from a source other than the Fund or the Fund's Representatives, in each case, provided that the source of such information was not known by GIC to be breaching any obligation of confidentiality to the Fund by supplying such information, or (iii) was developed by GIC or by our Representatives independently of and without reference to any Evaluation Material communicated to GIC or our Representatives by the Fund or the Fund's Representatives.

3. GIC and our Representatives shall keep the Evaluation Material confidential. GIC shall not disclose any of the Evaluation Material to any third party, except that (i) GIC may disclose the Evaluation Material to our Representatives; and (ii) GIC may disclose such Evaluation Material to the extent that it reasonably determines that (a) such disclosure is required by applicable law or the direction of any court or governmental authority or (b) such disclosure is made by GIC in connection with or in support of the filing of any claim by it before any court or governmental authority.

2

4. This letter agreement shall be construed in accordance with the laws of the Cayman Islands, without giving effect to its principles of conflicts of law.

5. If any provision of this letter agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not effect any other provision hereof or invalidate or render unenforceable such provision in any other jurisdiction.

6. This letter agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this letter agreement and all of which, when taken together, will be deemed to constitute one and the same instrument.

7. Unless earlier terminated in accordance with the terms of this letter agreement, each party's obligations hereunder expire two years from the date hereof.

If you are in agreement with the foregoing, please sign and return one copy of this letter agreement, which thereupon will constitute the agreement between GIC and the Fund with respect to its subject matter.

Very truly yours,

Gulf Investment Corporation

By: _____
    Name:
    Title:

Accepted and agreed as of
the date first written above:

The Port Fund, L.P., signed by its general partner,
Port Link GP Ltd.

By: _____
    Name:
    Title:

3