# Exhibit H

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3615**

WRITER'S EMAIL ADDRESS
**kristintahler@quinnemanuel.com**

April 7, 2020

<u>VIA E-MAIL</u>
**SGILBERT@CROWELL.COM**

Sarah Gilbert
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Re:     *Ex Parte* Application of Gulf Investment Corporation for an Order to Obtain Discovery
        for Use in Foreign Proceedings Pursuant to 28 U.S.C. §1782 (19-mc-00593)

Dear Ms. Gilbert:

I write in response to your email of February 28, 2020, referring to Walkers' letter of February 27, 2020, addressed to Travers Thorp Alberga ("**TTA**") in response to GIC's Section 22 Application in the Cayman Islands ("**Walkers Letter**").

As we set out below, have previously made clear, and will address in detail in due course in reply evidence, the Walkers Letter and its purported supporting schedules and evidence, fall far short of approaching sufficient or meaningful disclosure such that GIC would consider dismissing its proceedings against your clients.

As an initial matter, we must address a number of preliminary points.

First, we categorically reject the assertion in the Walkers Letter that purportedly "defamatory statements" were made in a June 2019 email sent by Bader El-Jeaan,[1] or that any "misleading" statements have been made in the Cayman proceedings. For the avoidance of doubt, we also again make clear that no incorrect statements have been made in the U.S. proceedings. The allegations made by GIC are serious, and are entirely credible.

---

[1]     Indeed, Mr. El-Jeaan repeatedly has made it clear that his email refers to privileged advice. Your continued reference to it mandates that we once again repeat our instruction that you cease and desist from any further use of this privileged communication.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Sarah Gilbert
April 7, 2020

In addition, your clients' attempt to raise Mr. El-Jeaan's unrelated mandate to have acted for Agility (and the position of Mr. Sultan) has been made before and is unavailing. We reiterate that Agility and Mr. Sultan are irrelevant to the applications for disclosure and discovery that GIC is pursuing in Cayman and the United States, pursuant to applicable statutory provisions. Indeed, the only relevant issue in the Cayman proceeding is whether sufficient disclosure has been given by your clients. There plainly has not. These points in the Walkers Letter are nothing more than continued attempts by your clients to muddy the waters. The issues facing the Port Fund and Port Link have nothing to do with Agility and Mr. Sultan, but lie exclusively at the feet of your clients, and we see no point in wasting any more time and effort dealing with these meritless allegations. Indeed, the fact that limited partners representing more than 80% of the Port Fund's total commitments are supportive of GIC's applications for disclosure and discovery should confirm to you the validity of GIC's concerns, and should warrant your cooperation.

Second, we reject the Walkers Letter's assertion that "GIC has yet to provide any credible evidence to substantiate th[e] serious allegation" that KGLI may have been involved in the misappropriation of Port Fund assets. The voluminous exhibits filed by GIC in the proceedings speak for themselves. In any event, this is not the focus of the disclosure and discovery applications in Cayman and the United States. In addition, we are confident that as these matters proceed, these allegations will undoubtedly be evidenced further.

Third, your effort to blame GIC for costs associated with the proceedings is fundamentally misconceived. All of these costs could have been avoided had your clients (1) been transparent with the Fund's limited partners from the beginning; and (2) provided the limited partners with the information to which they are entitled when it was initially sought. Instead, obfuscation, delay, and distraction has regrettably required the present applications and correspondence. Indeed, complaints about "costly legal proceedings" stand in stark contrast to the Fund's failure to present *any* defense in the DIFC litigation, and corresponding election to default on EMPEML's USD 59 million claim. Incurring legal expenses to defend that claim plainly would have been warranted, and that the Fund affirmatively declined to do so only heightens GIC's well-founded concerns.

Fourth, your assertions regarding a nondisclosure agreement are misconceived. None of the information requested requires any further undertakings by GIC. Indeed, despite the convenient and self-serving claims otherwise, we are far from convinced that any information is in fact confidential. As such, any attempts to impose additional confidentiality obligations are nothing more than further excuses to avoid necessary disclosure. In any event, as we have repeatedly advised, GIC is already bound by confidentiality obligations, which only further highlight the lack of merit to these purported concerns.

Finally, we turn to the purported disclosures in the Walkers Letter. Your suggestion that GIC has repeated refused to "meaningfully engage" with your clients is wrong. The parties that have failed meaningfully to engage are your clients, by their failure to provide sufficient information in response to GIC's multitudinous requests. Nevertheless, we refrain from repeating the now well-worn chronology of these requests being met with obfuscation, avoidance, fabricated

Sarah Gilbert
April 7, 2020

roadblocks, and delay, and instead note that the "disclosures" are selective, incomplete, and, in many cases, demonstrably inaccurate.

By way of example, the Walkers Letter notes that the Port Fund made over USD 86 million in disbursements across three transactions on February 7, 2019. *See id.* ¶ 3.11 at Transactions 15, 16, 18. It further reveals that Crowell, "acting on instructions of the board of directors of the Fund," made a USD 36.2 million disbursement on an undisclosed date. *See id.* ¶ 3.12 at Transaction 12. The Walkers Letter, however, fails to disclose the critical identity of the payees in receipt of these funds. The anonymity of these payees is glaring, suspicious, and renders the purported disclosure plainly insufficient to assess disbursements of Fund monies totaling *more than USD 120 million.*[2]

In addition, the Walkers Letter fails to account for millions of dollars of Port Fund monies. While the Walkers Letter (at ¶ 3.11) claims to provide "a summary and breakdown of the vast majority of the payments made from the Noor Account," the 34 listed disbursements from the Noor Account only sum to USD 481,079,527.97, leaving USD 15,350,239.03 unaccounted for from the USD 496,429,767 that the Port Fund purportedly received from Udenna in connection with the sale of the Clark Asset. Further, the 18 listed disbursements from Crowell's trust account (at ¶ 3.12) only sum to USD 46,423,854.23, leaving USD 4,276,145.77 unaccounted for from the USD 50,700,000 in disbursements that the Port Fund made to Crowell from the Noor Account.

This missing information only further highlights GIC's continued urgent need for the bank account statements for (1) the Noor Account into which the USD 496 million was deposited, from the date of deposit to present; and (2) the C&M LLP DC IOLTA into which USD 50.7 million was deposited, from February 7, 2019 (the first date of deposit) to present. *See* March 26, 2020 Letter from TTA to Walkers at 3.

Until we see your clients' affidavit and evidence, and any further purported clarifications contained therein, however, there is no point in our dealing with the detail of the Walkers Letter, save to again note that in all respects the Walkers Letter falls far short of satisfactorily addressing the requests made in the Cayman and U.S. proceedings, and it even raises additional questions. As you have now at long last agreed to a procedural timetable in the Cayman proceedings, we remain hopeful that your clients will comprehensively and satisfactorily address GIC's requests for

---

[2]   We reject the Walkers Letter's baseless assertion (at ¶ 3.13) that purported "malicious persecution from the authorities in Kuwait" necessitates "confidentiality protections" for "the identity of service providers to the Fund."

Sarah Gilbert
April 7, 2020

information and documentation in the evidence which is due to be filed and served on April 10, 2020. GIC will address that evidence in its reply, which is due two weeks thereafter.

Best regards,

Kristin N. Tahler

cc.     Walkers
        Travers Thorp Alberga