# Appendix E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF<br>GULF INVESTMENT CORPORATION FOR<br>AN ORDER TO OBTAIN DISCOVERY FOR<br>USE IN FOREIGN PROCEEDINGS<br>PURSUANT TO 28 U.S.C. §1782 | Case No. 1:19-mc-00593-VSB |

<u>**SUPPLEMENTAL DECLARATION OF ANNA PECCARINO**</u>

Pursuant to 28 U.S.C. § 1746, I, Anna Peccarino, declare under penalty of perjury as follows:

1.      I am the same Anna Peccarino of Travers Thorp Alberga, Attorneys-at-Law ("**TTA**") who submitted a declaration on 20 December 2019 (**"First Peccarino Declaration"**) in support of the *ex parte* application submitted by Gulf Investment Corporation ("**GIC**") for an order under 28 U.S.C. § 1782 ("**Section 1782**") permitting GIC to take discovery from 12 banks ("**Correspondent Banks**") in the Southern District of New York ("**Application**").[1]

2.      I continue to represent GIC, one of the limited partners in The Port Fund L.P. ("**Port Fund**"), on a number of matters, including an ongoing[2] proceeding in the Cayman Islands against the Port Fund and its general partner Port Link GP Ltd. ("**Port Link,**" collectively with the Port Fund, "**Port Fund Entities**"), which seeks information from the Port Fund Entities

---

[1]      As I explained in the First Peccarino Declaration (¶ 5), I understand that GIC seeks documents and information from the Correspondent Banks relating to, among other things, hundreds of millions of dollars that have gone missing from the Port Fund ("**Requested Discovery**") primarily relating to the sale of the Clark Asset, but also other transactions. As I also explained in the First Peccarino Declaration (¶ 6), the Requested Discovery was being sought to support the Contemplated Cayman Litigation.

[2]      A hearing was held in the Grand Court of the Cayman Islands on 5 and 6 May 2020. As at today's date, the parties are awaiting the hand-down of judgment in this matter, which is expected next week. When that final judgement is received, I will endeavour to update the Court through a further supplemental declaration.

pursuant to Section 22 of the Cayman Islands Exempted Limited Partnership Law ("**Section 22**" and "**Section 22 Proceeding**").

3.      I submit this supplemental declaration (a) in response to the Declaration submitted by Barnaby Gowrie ("**Gowrie Declaration**"), dated 14 May 2020, which was submitted in support of the Port Fund Entities' Opposition to the Application; and (b) in further support of the Application.

4.      As Cayman counsel for GIC, I am familiar with the information set forth in this declaration from (a) information and documentation provided to me by my instructing attorneys, Quinn Emanuel Urquhart & Sullivan, LLP and Meysan Partners; and (b) documents I have prepared and/or reviewed.

5.      The purpose of this second declaration is to: (a) provide further detail on, and a legal framework for, the petition that GIC currently intends to pursue in the Cayman Islands, namely, the winding up of the Port Fund on the grounds that it would be just and equitable to do so ("**J&E Petition**"); (b) respond to certain mischaracterizations of Cayman law and practice raised in the Gowrie Declaration; and (c) rebut the Port Fund Entities' repeated, incorrect assertions that the Requested Discovery is duplicative of the disclosures GIC seeks in the Section 22 Proceeding.[3]

## I.      JUST AND EQUITABLE WINDING UP PETITION

6.      The legal basis for the J&E Petition is grounded in Section 92(e), Part V, of the Cayman Companies Law (2020 Revision) ("**Companies Law**") and the Companies Winding Up Rules ("**CWR**"), pursuant to which, contributories in a company who satisfy certain conditions may petition for the winding up of a company incorporated under the Companies Law. Section

---

[3]     The purpose of this supplemental declaration is not to set out the factual background to the case, or to GIC's concerns, which are set out briefly in First Peccarino Declaration (¶ 7) and more fully in the Application (at 5-12).

36(3) of the Exempted Limited Partnership Law (2018 Revision) ("**ELP Law**") provides that a winding up of a company on the just and equitable ground may also be presented by limited partners. Part V of the Companies Law and the CWR apply equally to limited partnerships as they do to companies. Accordingly, references to company, director and shareholder in the legislation are treated as if they refer to limited partnership, general partner and limited partner.

7.     A just and equitable winding up is a significant and important remedy in the Cayman Islands. The four common grounds that petitioners usually rely upon to bring a just and equitable winding up petition include: (a) loss of substratum; (b) deadlock; (c) mismanagement; and/or (d) exclusion from management.

8.     The third ground is applicable in the present case. In order to substantiate such ground, a petitioner must be able to show that there has been (a) a mismanagement by the general partner; which (b) gives rise to a justifiable loss of confidence in the management of the fund. A justifiable loss of confidence must be both justified and irreparable. A loss of confidence will be justifiable if it stems from serious instances of mismanagement and, in this regard, it is usually necessary to show a want of probity on the part of the management. Significantly, there have been numerous instances in the Cayman Courts where a petitioner has relied on the mismanagement ground and a winding up has been ordered in circumstances where information has been wrongly withheld from a limited partner. Such cases include instances where management have failed to disclose audited accounts to limited partners.[4] Finally, a petitioner must be able to show that the circumstances justify a winding up of the relevant entity.

---

[4]    *In re Cybernaut Growth Fund L.P* (Unreported) Jones J, Grand Court, 12 September 2013. In this case, the Court found that, based on the evidence, the petitioners were justified in bringing the petition. The Court placed particular reliance upon the general partner's failure to provide proper financial transparency and the breakdown in the relationship between the principals of the general partner.

9.      GIC's primary concerns, and hence its currently intended grounds for the J&E Petition, stem from the facts that, in breach of duty and in breach of Clauses 2.4, 7.1 and 7.2 of the Limited Partnership Agreement ("**LPA**") respectively, (a) the Port Fund was not wound up in an orderly and responsible manner at the end of the term on 31 December 2012, or at all; (b) Port Link has failed to provide the vast majority of the books, records and other information reasonably requested by GIC;[5] (c) the Port Fund's audited financial statements for the year ending 31 December 2017, which Pork Link only provided to GIC following the issuance of the Section 22 Proceeding, demonstrate that Port Link caused the Port Fund to enter into numerous transactions in breach of its duty to act at all times in good faith and in the interests of the limited partnership, amongst other things; (d) Port Link has still failed to provide audited financial statements for the Port Fund for the years ending 31 December 2018 and 31 December 2019; and (e) the Port Fund has advanced substantial sums to Ms Lazareva and Mr Dashti, in violation of the LPA, by way of indemnification for the costs of responding to criminal charges brought against them in Kuwait.[6]

10.     GIC is currently awaiting a final judgment from the Grand Court of the Cayman Islands in respect of the Section 22 Proceeding.[7] The additional information to which GIC is entitled under Section 22 will assist GIC in the J&E Petition and it will also enable it to put

---

[5]    With particular regard to the Clark Asset, Port Link has failed to (a) provide a satisfactory explanation for the discrepancy between, among other amounts, the USD 305 million in sale proceeds distributed to the partners and the near USD 1 billion purchase price for the Clark Asset reported to regulators; and (b) disclose the identity of recipients of tens of millions of dollars of Port Fund monies, on the bogus grounds that the recipients' identity is confidential and/or that revealing their identity might lead to unspecified "unjust consequences" for those undisclosed recipients.

[6]    Port Link should not have advanced any sums in support of these individuals given the criminal proceedings against them arose from their negligence, wilful default, fraud or dishonesty and as such their defence costs were not covered by the indemnity in Clause 5.3 of the LPA. Alternatively, once the individuals were convicted, any indemnity should have been withdrawn immediately and steps should have been taken to recover all sums paid prior to the conviction.

[7]    *See supra* n.1.

4

together evidence and formulate potential direct claims that may be pursued for and on behalf of the limited partnership.

11.     Section 22 of the ELP Law provides a statutory framework for obtaining pre-action disclosure in Cayman. Should GIC and the other limited partners be successful in the Section 22 Proceeding, the Port Fund Entities will be required to hand over a documentation and other information constituting "*true and full information regarding the state of business and financial condition*"[8] of the Port Fund. For the avoidance of doubt, there is no requirement under Section 22 for a limited partner to identify the reasons why it wishes to demand (and receive) such "*true and full"* information; GIC is therefore entitled to it as a matter of statute. Should such "*true and full information*" show further evidence of wrongdoing, GIC will be able to use this information to form part of its evidence in the J&E Petition and to further bolster the already compelling evidence it has in its possession (and had when the Application was filed) demonstrating both (a) want of probity on the part of management; and (b) a resultant loss of confidence in the general partner, which is both justified and irreparable.

12.     GIC is not able to seek discovery from the Correspondent Banks pursuant to Section 22 as the Cayman Court does not have personal jurisdiction over the Correspondent Banks, nor access to the documentation possessed by the Correspondent Banks. The Requested Discovery will serve as important *additional* evidence of the Port Fund's mismanagement in the J&E Petition, however, it has no bearing on whether or not GIC files the J&E Petition. GIC intended to file the J&E Petition when it filed the Application, and that remains its intent. GIC is not using the Application as a fishing expedition to obtain discovery to then decide whether or not to file the J&E Petition.

---

[8]    *See Dorsey Ventures Limited v XIO GP Limited* (FSD 38 of 2018).

## II.     MISCHARACTERIZATION OF CAYMAN LAW AND PRACTICE

13.     The Gowrie Declaration mischaracterizes numerous points of Cayman law and practice. Although Mr Gowrie purports (at ¶¶ 7-15) to set out an overview of the law and practice on limited partnerships in the Cayman Islands, he mischaracterises the position in two key regards. *First*, Mr Gowrie refers to Section 33(1) of the ELP Law in support of his argument that limited partners have no standing to bring any claims by or on behalf of a limited partnership because any such claims "*may be instituted by or against any one or more of the general partners only*." However, Mr Gowrie conveniently neglects to mention that, pursuant to Section 33(3) of the ELP Law, in the event that a general partner fails to bring or defend any such claims, a limited partner may step into its shoes and do so instead.[9] *Second*, Mr Gowrie fails to mention that a general partner owes fiduciary duties to its limited partners, as well as contractual duties to the limited partnership, and that to the extent that any such duties are breached, the limited partners will have direct causes of action against the general partner since the claim to be made would be that of the individual limited partners (rather than a partnership asset), and each limited partner has its own contractual or fiduciary claim for its own loss. Although there is no direct Cayman authority on this point, the Cayman Court is likely to be persuaded by the English case of *In Certain Limited Partners in Henderson PFI Secondary Fund II LLP (a firm) v Henderson PFI Secondary Fund II LP (afirm) & Others* [2012] EWHC 3259 (Comm).[10]

14.     Further, Mr Gowrie refers to "Confidential Information" and seeks to argue (at ¶¶ 18-22) that, because the Port Fund Entities owe purported duties of confidentiality to third

---

[9]     Section 33(3) ELP Law states: "A limited partner may bring an action on behalf of an exempted limited partnership if any one or more of the general partners with authority to do so have, without cause, failed or refused to institute proceedings."

[10]     In this case, the High Court found that the claim to be made was that of the individual limited partners and was not a partnership asset and each limited partner had its own contractual or fiduciary claim for its own loss, and that therefore there was no need and no room for a derivative claim by limited partners against the general partner of an English limited partnership (*see* ¶¶ 28-32 of the judgment).

parties, they are unable to disclose information sought by the limited partners pursuant to Section 22 without a court order under Section 4 of the Confidential Information Disclosure Law 2016 ("**CIDL**"). This is misconceived for a number of reasons. First, a third party's right of confidentiality is no bar to an order under Section 22. The mere fact that a partnership document may be confidential, or even privileged, to a third party, is not a reasonable ground to refuse production. *Brown v Perkins* (1843) 2 Hare 540. Second, the provisions of the CIDL do not apply to the information GIC seeks through the Section 22 Proceeding. If GIC is entitled to the information requested under Section 22, which we say it is, then there is no breach of the CIDL by virtue of s.3(1)(j) CIDL, which permits disclosure pursuant to statute, so that the Port Fund Entities would not be in breach of the CIDL if such information is disclosed to GIC in accordance with GIC's Section 22 right.[11] As a result, the Port Fund Entities' *ex parte* CIDL application has no relevance.[12] Third, another partner's right of confidentiality is no bar to an order under Section 22. As a third party's right of confidentiality or even legal professional privilege is not a bar to an order under Section 22, it follows that the respondent partner's assertion of confidentiality is also not a bar to an order. *In re Pickering* (1883) 25 Ch D 247. Fourth, a partner cannot redact, on the basis of confidentiality, information or documents relating to partnership affairs that they have an obligation to provide. Any information or documents in relation to the partnership's affairs must be disclosed, even if they contain other confidential information.

---

[11]   Section 3(1)(j) CIDL: "3. (1) Where a person owes a duty of confidence, the disclosure by that person of confidential information — […] **(j)** in accordance with, or pursuant to, a right or duty created by any other Law or Regulation, shall not constitute a breach of the duty of confidence and shall not be actionable at the suit of any person. "

[12]   Although the CIDL application was adjourned, it will not arise for determination if GIC is found by the Cayman Court to be entitled to information under Section 22. *Re XYZ Ltd v Genesis Trust & Corporate Services Ltd* [2019 (1) CILR 175] ¶¶ 21-22. This point has already been argued before the Cayman Court. As set out above, the Court will be updated as to the manner in which the Cayman Court addresses this point once judgment is handed down.

### III.   DISTINCTIONS BETWEEN DISCLOSURES SOUGHT IN SECTION 22 PROCEEDING AND REQUESTED DISCOVERY SOUGHT IN APPLICATION

15.     The Application does not seek discovery from the Port Fund Entities, but instead from the Correspondent Banks, which are financial institutions based in and/or operating out of New York. Indeed, the Port Fund Entities are not currently parties to the Application.

16.     Some of the Requested Discovery sought through the Application is motivated by the same background concerns that underlie the disclosure requests made against the Port Fund Entities in the Section 22 Proceeding. Beyond that, however, there is no overlap between the U.S. proceedings pursuant to the Application and the Section 22 Proceeding. The Requested Discovery in the former and the requested disclosures in the latter seeking different information from different parties. Indeed, the fact that the Application is directed against the Correspondent Banks demonstrates its irrelevance to the Section 22 Proceeding against the Port Fund Entities. As such, there can be no merit in any suggestions of impropriety or abuse of process in commencing the Application in the United States to seek Requested Discovery that is separate from, and at most supplemental to, the disclosures sought in the Section 22 Proceeding.

17.     Mr Gowrie's misguided assertions regarding the receptivity of Cayman courts to discovery obtained in Section 1782 proceedings (Gowrie Declaration at ¶¶ 29-33) has no bearing on this point. The *Nord Anglia* case that Mr Gowrie refers to does not change the position with regard to the Application because: (a) the Application does *not* somehow "disrupt" or "seek[] to interfere with" the Section 22 Proceeding before the Cayman Court;[13] and (b) the Application *is* necessary and justified, because it seeks different information from third parties that are *not*

---

[13]     Similarly, there is no merit to any suggestion that that GIC may be using the Application to appeal or avoid an unfavorable discovery decision by the Cayman Court in the Section 22 Proceeding.

parties to the Section 22 Proceeding and therefore *not* subject to the jurisdiction of the Cayman Court.[14]

18.    Mr Gowrie's criticisms regarding my quotation of *Lyxor* in the First Peccarino Declaration similarly fall flat. He complains that I omitted to quote the entire passage from paragraph 57 of *Lyxor* and highlights the following purportedly "relevant sentences [sic] omitted" therefrom: *"The relevant question is not whether Phoenix could achieve a similar result in the Cayman Islands but whether (if it could) it is acting oppressively or abusively in seeking to rely on the right which it enjoys under US law."* The foregoing, however, has no relevance to GIC's position in relation to the Application, as GIC could not obtain the Requested Discovery sought in the Application via the Section 22 Proceeding. Far from "acting oppressively or abusively," GIC had no choice but to institute both the Cayman and US proceedings to take advantage of its statutory rights to information conferred by Cayman and US law.

* * * * *

I declare under penalty of perjury under the laws of the United States and Cayman Islands that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Grand Cayman, Cayman Islands, on this the 12th day of June 2020.

Anna Peccarino

---

[14]    Relatedly, because GIC has not sought the Requested Discovery through the Cayman Court—which would have no jurisdiction to grant such a request—it is axiomatic that the Cayman Court has never rebuffed or denied an attempt by GIC to obtain the Requested Discovery.