**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

EX PARTE APPLICATION OF GULF
INVESTMENT CORPORATION FOR AN ORDER
TO OBTAIN DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No. 1:19-mc-00593-VSB

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THE PORT FUND ENTITIES'**
**MOTION TO INTERVENE AND OPPOSITION TO GIC APPLICATION**
**PURSUANT TO 28 U.S.C. §1782**

i

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................2

I.     The Port Fund Entities' Motion To Intervene Should Be Granted ...................................... 2

II.    The GIC Application Should Be Denied Due To Its Failure To Seek Discovery For Use In Reasonably Contemplated Litigation As Required By Section 1782............................. 4

III.   The Court Should Exercise Its Discretion To Deny The GIC Application ........................ 7

        A.     The GIC Application Should Be Denied Because It Seeks Documents In Possession Of Likely Parties To The "Contemplated Cayman Litigation".... 7

        B.     The GIC Application Should Be Denied Because It Seeks To Circumvent The Outcome Of GIC's Pending Cayman Islands Proceeding....................... 8

        C.     The GIC Application Should Be Denied Because The Requested Discovery Is Overbroad And Unduly Burdensome ......................................................... 9

     CONCLUSION...................................................................................................................11

DCACTIVE-54949393.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017)....................................................................6

*In re Auto-Guadeloupe Investissement S.A.*,
  No. 12-mc-221, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)..............10

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of
  Fortress Inv. Grp. LLC*, No. 14-cv-1801, 2014 WL 3404955 (S.D.N.Y. July 9,
  2014), *aff'd*, 798 F.3d 113 (2d Cir. 2015)...............................................6

*Deposit Ins. Agency v. Leontiev*,
  No. 17-mc-00414, 2018 WL 3536083 (S.D.N.Y. July 23, 2018)...........10

*Eaton & Van Winkle, LLP v. Yunling Ren*,
  No. 17 cv-1535, 2020 WL 1244135 (S.D.N.Y. Mar. 16, 2020).............7

*In re Hornbeam Corp.*,
  No. 14-mc-424, 2017 WL 2241522 (S.D.N.Y. May 22, 2017)...........5, 6

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
  No. 14-cv-00797, 2015 WL 3439103 (D. Nev. May 28, 2015) .............9

*In re Kreke Immobilien KG*,
  No. 13 Misc. 110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013).............9

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015).....................................................................6

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006).....................................................8

*In re RSM Prod. Corp.*,
  No. 17-mc-213, 2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018)................8

*In re Sarrio, S.A.*,
  119 F.3d 143 (2d Cir. 1997).....................................................................2

*In re Top Matrix Holdings Ltd.*,
  No. 18 Misc. 465, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)...............5

*In re WinNet R CJSC*,
  No. 16-mc-484, 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017)..............10

i

DCACTIVE-54949393.2

By its memorandum of law in response to the Port Fund Entities' motion to intervene and in further support of its *ex parte* application ("GIC Reply") (ECF 31), and by its accompanying Declarations (ECF 31-1, 31-10, 35-1), Gulf Investment Corporation ("GIC") has amply demonstrated why this Court should grant the Port Fund Entities' motion and deny the GIC Application as an exercise of its discretion, whether or not the Court concludes that the new legal theories GIC has revealed for its Contemplated Cayman Litigation are adequate to satisfy the statutory requirement of a litigation that is "within reasonable contemplation."  The remarkable revisionist history that GIC supplies to depict the Port Fund Entities' efforts to be heard in opposition to the GIC Application as a source of prejudicial delay is only the beginning of a distorted series of arguments that fail to address the concerns articulated by the Port Fund Entities with respect to the use GIC intends for any information it gathers, and confirms, rather than rebuts, the Port Fund Entities' claim that the GIC Application was not brought with the requisite candor.  GIC swings wildly at the Port Fund Entities' "specious, wholly unsupported hysterics regarding alleged motivations and confidentiality," but when it supposedly addresses that concern, stating that "there is no basis to suggest GIC will misuse any disclosed information" and citing to Appendix D at ¶¶ 23-24 to prove that statement (GIC Reply at 13, n.8), there is no rebuttal in that declaration, merely repetition that the concern is baseless and that the suggestion of "bad faith" is "insulting."  (ECF 31-1 at ¶¶ 23-24.)  The Port Fund Entities in the Chin Declaration (ECF 26) have provided copies of the GIC criminal complaints (Chin Decl., Exs. W, X); amply described the fate of the two former directors of Port Link (*id.* ¶¶ 9-20) who fell victim to criminal complaints filed in Kuwait (including those filed by another Port Fund limited partner and § 1782 applicant, Kuwait Ports Authority ("KPA")); and provided a copy of the press release (*id.* Ex. Y) that GIC dismisses as the sole basis for the Port Fund Entities' concern.  (GIC Reply at 13, n.8.)  GIC claims that the Port Fund Entities have wrongfully

1

alluded to the "role of the Kuwaiti government in the freez[ing]" of the Clark Asset sale proceeds (GIC Reply at 3), changing the word "freeze" used by the Port Fund Entities in order to argue that the Kuwaiti government did not itself commit the act of "freezing," something that the Port Fund Entities did <u>not</u> seek to establish.  (Chin Decl. ¶¶ 22, 23).  Through this misleading sleight of hand, GIC sidesteps the fact that it was the Kuwaiti government that prolonged the freeze as it attempted to secure the proceeds for two Kuwaiti-owned limited partners (*id.* ¶ 23), making no response whatsoever to this point.

Such tactics, especially when considered in conjunction with GIC's clear and conceded failure to be forthcoming in its *ex parte* Application, surely confirm the kind of bad faith that warrants denial of the Application.  GIC may have provided an entirely new description of its Contemplated Cayman Litigation in its response, but it has revealed that it intentionally failed to apprise the Court of necessary details – allegedly because "as a matter of litigation strategy" it did not wish to reveal its theory to the Port Fund Entities.  (GIC Reply at 10).  For all these reasons, for the reasons stated in the Port Fund Entities' opening memorandum ("PFE Memo") (ECF 24) and accompanying declarations, and for the additional reasons stated in this Reply Memorandum and accompanying Supplemental Gowrie Declaration ("Supp. Gowrie Decl."), the Port Fund Entities should be granted leave to intervene and the Application should be denied.

## <u>ARGUMENT</u>

### I.    The Port Fund Entities' Motion To Intervene Should Be Granted

GIC does not dispute that the Port Fund Entities are entitled to intervene in this action as a matter of right under controlling law; as previously, it concedes that the Port Fund Entities are the ultimate targets of the § 1782 subpoenas.  *See* GIC Reply at 8; *In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (granting intervention to "parties against whom the requested information will be used").  Instead, GIC argues only that the Port Fund Entities "failed to timely

DCACTIVE-54949393.2

file the[ir] Motion, which caused unnecessary delay and prejudice to GIC" (GIC Reply at 4).
Remarkably, GIC does not even attempt to articulate any prejudice, but spins a tale that seeks to
lay blame for the delay it perceives anywhere except where it belongs, at its own doorstep.

There is nothing untimely about the Port Fund Entities' Motion.  The Port Fund Entities
apprised the Court of their desire to be heard on January 6, 2020, less than two weeks after GIC
filed its *ex parte* application.  (ECF 8).  Despite the clear right of the Port Fund Entities to be
heard, GIC responded by demanding a two-step process that would have only served to delay
consideration of the Application, requesting in a January 9, 2020 letter that the Court "[1] require
the Port Fund Entities to file a proper Rule 24 motion; [2] set forth a briefing schedule relating to
such motion, if filed; and [3] and postpone any challenges to the Application until after this
Court has ruled on any potential motion to intervene." (ECF 10).  GIC expresses outrage that on
January 30, the Port Fund Entities again failed to move to intervene, but rather wrote to the Court
for guidance on whether they should make such a motion and requesting consolidation with the
§ 1782 proceeding filed on January 29, 2020 by GIC's limited partner KPA, which had filed its
*ex parte* application without notifying the Clerk that a similar proceeding was already pending
before this Court.  (ECF 17).  GIC wrote again on February 3, allegedly "to correct a number of
misrepresentations" in that letter, claiming that to avoid burdening the Court "with further
unnecessary correspondence from the Port Fund, GIC will endeavor to do so as neutrally as
possible to avoid provoking a response by the Port Fund."  (ECF 18).

Having complained to the Court about "unnecessary correspondence" and expressing its
desire not to provoke a response, GIC now takes the Port Fund Entities to task for not responding
to the February 3 letter, and suggests that this lack of response was the factor "ultimately forcing
the Court's involvement" in March 2020.  Such accusations are beyond baseless.  The tactics
employed by KPA and GIC, necessitating consideration of whether to consolidate the § 1782

3

proceedings; GIC's insistence on a formal motion and consideration of the Application only after the Motion was decided; and GIC's own multiple letters surely had more to do with any delay than the speed of any response.  Furthermore, the Port Fund Entities would not presume to consider any letter they wrote (or did not write) as "forcing" this Court to do anything.

Ultimately, as this Court is well aware, the Court chose on March 6, 2020 to require a briefing schedule that combined the motion to intervene and opposition, thereby cutting a step out of the process demanded by GIC "for judicial economy."  (ECF 19).  Far from appreciating this practical resolution, GIC continues to complain that the motion to intervene should have been brought after the Application was granted.  (GIC Reply at 5).  The Port Fund Entities are as perplexed by this gratuitous criticism of the procedure established by this Court as they are by the claim that they are to blame for delay in consideration of the GIC Application, especially since much of the purported "unnecessary delay" was the result of GIC's own extended contemplation of whether to amend its Application. On March 20, 2020, GIC notified the Court that it might seek to amend its Application (ECF 20), but it was not until almost a month later, on April 16, 2020, that GIC confirmed it would proceed based on its existing papers (ECF 21). On April 20, 2020, the Court entered the stipulated briefing schedule submitted by GIC (ECF 22).

To summarize, GIC's claim of delay is unwarranted, does not constitute a valid basis for denial of the motion and says a great deal about the tactics and lack of good faith that taint GIC's § 1782 arguments.  Given the absence of any substantive opposition, and pursuant to controlling law, this Court should grant the Port Fund Entities' motion to intervene.

## II.  The GIC Application Should Be Denied Due To Its Failure To Seek Discovery For Use In Reasonably Contemplated Litigation As Required By Section 1782

GIC essentially concedes that its Application as originally presented failed to inform the Court of basic facts underlying its Contemplated Cayman Litigation, including which specific

entities it intended to sue and what claims it intended to assert against them, as pointed out by the Port Fund Entities.  (PFE Memo at 10).  GIC does contend that "sworn statements describing an applicant's legal theories in contemplated litigation is one factor that may be considered" but "is not a necessary prerequisite" (GIC Reply at 9); however, none of GIC's cited cases support this proposition and GIC does not identify a single case that granted a § 1782 petition that failed to "provide the legal theories under which [petitioners] plan[] to litigate" against specific defendants. *See In re Top Matrix Holdings Ltd.*, No. 18 Misc. 465, 2020 WL 248716, at *4-5 (S.D.N.Y. Jan. 16, 2020).  GIC's complete reworking of its Contemplated Cayman Litigation to address the failings identified by the Port Fund Entities suggest that GIC recognizes the deficiency of its own Application, whatever cases it may (misleadingly) cite.[1]

In an effort to salvage its Application, GIC now claims that its deficiencies were actually part of a "litigation strategy [as] GIC did not wish to lay bare for the PFEs the precise legal theory it will pursue in the Contemplated Cayman Litigation[.]" (GIC Reply at 10). In other words, in its Application, GIC deliberately omitted the actual basis for its Contemplated Cayman Litigation, concealing from the Court material information needed to assess the relevance and proportionality of the requested discovery.  Now, for the first time, GIC claims that it brought the Application to support "a just and equitable winding up petition in the Cayman Islands against the PFEs ('J&E Petition')." (GIC Reply at 7).

But even now, despite the Port Fund Entities' pointing this out a month ago and noting the implications of such failure to file (PFE Memo at 12), GIC still has not filed its Contemplated

---

[1] Contrary to GIC's claims (GIC Reply at 10), the Second Circuit's decision in *In re Hornbeam Corp.* specifically noted that Hornbeam "articulated a theory on which it intended to litigate[.]" 722 F. App'x 7, 10 (2d Cir. 2018). And while the published decision in *In re Hansainvest Hanseatische Inv. GmbH* had no reason to discuss the details of the applicant's proposed litigation, the relevant application included particularized allegations, noting that "In the German Litigation, Applicants will allege . . . that HSH (i) breached its duties to investors under Section 280 of the German Civil Code by intentionally structuring and pricing the Bank Sale and the NPL Portfolio Sale to the detriment of T1 holders; (ii) willfully caused damages to Applicants through conduct contrary to public policy, in violation of Section 826 of the German Civil Code . . . ." No. 18-mc-00310 S.D.N.Y. (ECF 4, July 2, 2018).

Cayman Litigation.  *See In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-cv-1801, 2014 WL 3404955, at *6-7 (S.D.N.Y. July 9, 2014), *aff'd*, 798 F.3d 113 (2d Cir. 2015) ("[T]he concerns about misuse of the discovery process are particularly pronounced in this case, since petitioners have had an opportunity to initiate judicial proceedings abroad but have failed to do so.").[2]

In any event, GIC's post hoc explanations are insufficient, because it failed to even mention its proposed "J&E Petition" in its Application.  To rebut a point made in the PFE Memo at page 12, n.5, GIC suggests that the Second Circuit in *Certain Funds* was making only  a generalized statement about *appellate review* when it specifically instructed courts to determine whether proceedings are within reasonable contemplation based on the actual pleading of the § 1782 application.  (GIC Reply at 11).  But as this Court has already recognized, the Second Circuit was stating the proper scope of review in a proceeding where the § 1782 petition is the operative pleading: "courts in this Circuit 'assess the indicia of whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed.'" *In re Hornbeam Corp.*, No. 14-mc-424, 2017 WL 2241522, at *1 (S.D.N.Y. May 22, 2017). GIC was required to set forth the basis for its requested relief in its § 1782 Application.  It chose not to do so as part of its "litigation strategy."  GIC cannot now use its reply brief to provide this

---

[2] It may be that GIC has not filed its "J&E Petition" because it has no good faith basis to do so. GIC Cayman counsel Ms. Peccarino and the Port Fund Entities' Cayman counsel Mr. Gowrie agree that key to the petition would be a showing of mismanagement by the general partner giving rise to a justified and irreparable loss of confidence in management of the fund.  (31-10 at ¶ 8; Supp. Gowrie Decl. at ¶ 20). What Ms. Peccarino does not mention is that on January 29, 2020, independent directors from FFP (Directors) Limited were appointed to the board of Port Link to manage the affairs of the Port Fund Entities. This is a significant development. As Mr. Gowrie notes, "In circumstances where the acts which allegedly caused the purported loss of confidence in the GP occurred prior to the appointment of the FFP Directors, who now control the majority of the board of directors of the GP, it is difficult to see how GIC can reasonably claim that such purported loss of confidence is 'irreparable.'"  (Supp. Gowrie Decl. ¶ 20).  In short, transactions pre-dating January 29, 2020 can hardly provide support for an irreparable loss of confidence in current management.  For this reason, GIC cannot satisfy the "for use" element, because the requested evidence would not "increase [GIC's] chances of success" in its contemplated proceeding. *See Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (discovery cannot be "for use" if it cannot "be employed with some advantage or serve some use in the proceeding").

6

missing element of its Application.  *See, e.g., Eaton & Van Winkle, LLP v. Yunling Ren*, No. 17

cv-1535, 2020 WL 1244135, at *4 (S.D.N.Y. Mar. 16, 2020) ("new arguments cannot be raised

for the first time in a reply brief").[3]

## III.   The Court Should Exercise Its Discretion To Deny The GIC Application

### A.   The GIC Application Should Be Denied Because It Seeks Documents In Possession Of Likely Parties To The "Contemplated Cayman Litigation"

GIC does not actually dispute that the Port Fund Entities possess all of the *information*

requested in the proposed subpoenas to the correspondent banks; rather, GIC argues that the

banks possess some separate documents conveying the exact same information.

At the outset, GIC fails to grapple with the fact that its proposed subpoenas seek all

documents provided to the banks by the Port Fund Entities, including "[a]ny contracts,

agreements, invoices or other documents relating to the legal basis for or authorization of the

transactions." (*See* ECF 5-1, Exs. M-X). Those documents are not bank documents at all, and are

*identical* to the documents requested in the Section 22 Proceeding.  (*See* Chin Decl. Ex. A). For

this reason, GIC's representation that "there is no overlap between the U.S. proceedings pursuant

to the Application and the Section 22 Proceeding" (ECF 31-10 ¶ 16) is simply not true.

Moreover, to the extent that GIC requests internal bank documents that are not in

possession of the Port Fund Entities, GIC does not dispute that the information in those

documents will be entirely duplicative of the information in the Port Fund Entities' documents.

Instead, GIC offers speculation that, even if GIC prevails in its Section 22 Proceeding, the Port

Fund Entities will not comply with the Cayman Islands Court's Order because they "have fought

mightily against disclosing any bank records in their possession[.]" (GIC Reply at 13). The Port

---

[3] GIC cites cases relying on post-petition statements at oral argument in a vain attempt to excuse its omission.  (GIC Reply at 11).  But those cases simply reference statements made at oral argument that echoed arguments presented in the Petitioners' underlying application. None of those cases address a situation like this one, in which the petitioner chose not to meet its initial burden when filing its application.

Fund Entities will of course comply with any court order, whether issued by this Court or the Cayman Islands Court. GIC's baseless allegations to the contrary do not alter the fact that "it would be a poor exercise of discretion in these circumstances to assist [a Cayman Islands] court by providing discovery . . . within the [Cayman Islands] court's jurisdiction." *See In re RSM Prod. Corp.*, No. 17-mc-213, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018).

### B. The GIC Application Should Be Denied Because It Seeks To Circumvent The Outcome Of GIC's Pending Cayman Islands Proceeding

GIC cannot credibly dispute that granting its Application would render the Cayman Islands Court's Section 22 "proceedings meaningless and undermine [its] rules on confidentiality[.]" *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195–96 (S.D.N.Y. 2006). Notably, GIC does not even attempt to dispute that courts routinely deny § 1782 petitions where the petitioner has a request for identical information pending before another court. (*See* PFE Memo at 17). Instead, GIC goes to great lengths to suggest there is no connection between the two proceedings. But here, again, it deliberately fails to address the fact that its proposed subpoenas seek many of the exact same documents at issue in the Section 22 Proceeding.

The Cayman Islands Court has now issued its Judgment concerning GIC's entitlement to those documents. (*See* Supp. Gowrie Decl. Ex. 1). Pursuant to the Judgment, the parties are now required to seek to agree on an order regarding the production of various categories of documents and information, and the Cayman Islands Court retains authority to address any disputes over the terms of that order.  (*Id.* ¶¶ 7-13). Because the Judgment does not explicitly direct what to disclose, there remain a significant amount of issues to be worked out between the parties, with the possibility of a further hearing before Justice Raj Parker if agreement cannot be reached. (*Id.*)  GIC cannot dispute that granting the Application runs the risk of undermining the Cayman Islands Court's oversight of the disclosure process with respect to all overlapping

8

documents.  This is a problem of GIC's own making: GIC made the decision to burden two different courts with two discovery proceedings seeking certain identical documents. By doing so, it created the possibility for conflicting results that weigh heavily against this Court granting any relief that might undermine the decision of the Cayman Islands Court.  *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013).

### C.   The GIC Application Should Be Denied Because The Requested Discovery Is Overbroad And Unduly Burdensome

GIC does not make any real effort to dispute the clear over breadth of its requests. In opposing the Application, the Port Fund Entities noted that GIC did not even attempt in its petition to explain the relevance of 26 of the 33 entities listed in its proposed subpoenas. (PFE Memo at 20-21). Despite having ample opportunity to respond, including the Court's permission to file an additional 15 pages (ECF 30), GIC still makes no such attempt.[4]  And remarkably, to rebut the Port Fund Entities' "incoherent and false" argument that GIC seeks to use § 1782 to subpoena foreign financial records, GIC offers only the unsupported statement that it "plainly seeks records held in the United States by the Correspondent Banks."  (GIC Reply at 18.)  There is no such limitation in GIC's proposed subpoenas (ECF 5-1, Exs. M-X), lending credence to the Port Fund Entities' concerns (PFE Memo at 23-24).

Nor does GIC dispute that, to the extent it is already obtaining documents in the Section 22 Proceeding, its effort to serve duplicative discovery is unduly burdensome on its face.  "When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie*

---

[4] Notably, GIC's requests for all documents concerning any transaction with these entities are among the few §1782 requests that do not overlap with the Section 22 requests, underscoring the irrelevance of these requests and GIC'S inability to defend them before any tribunal.  (*See* Chin Decl. Ex. A).

*Bank Ltd.*, No. 14-cv-00797, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015).

Moreover, GIC has demonstrated bad faith by failing to provide this Court from the outset with details concerning the Section 22 Proceeding. (PFE Memo at 16). Such omission is inexcusable given the overlap between several of the § 1782 subpoena requests and the diclosure sought in the Section 22 Proceeding. Even now, GIC continues to misrepresent those identical requests for documents, claiming that "there is no overlap between the U.S. proceedings pursuant to the Application and the Section 22 Proceeding" (ECF 31-10 ¶ 16).[5]

GIC's lack of candor about the Section 22 Proceeding is only one example of the many misstatements and material omissions in the Application and subsequent filings. As noted above, GIC has now admitted that it chose not to provide details of its Contemplated Cayman Litigation in its original Application.  In addition, GIC attempts to distance itself from concerns about malicious prosecution in Kuwait while failing to acknowledge that GIC itself has been requesting such prosecution. Taken together, these and the other examples of GIC's bad faith are more than sufficient grounds to deny its Application. *See In re Auto-Guadeloupe Investissement S.A.*, No. 12-mc-221, 2012 WL 4841945, at *8 (S.D.N.Y. Oct. 10, 2012) (finding "the third *Intel* factor weighs in favor of quashing all or part of [petitioner's] subpoena" due to petitioner's "bad faith" in failing to "disclose … critical information in its ex parte § 1782 Application").  The failure to abide by the heightened requirement of candor in an *ex parte* filing is yet another ground for denial of GIC's Application. *In re WinNet*, 2017 WL 1373918, at *9.

---

[5] "Courts have quashed § 1782 subpoenas for misrepresenting related actions involving the same parties" including where they "misrepresent or omit" proceedings to conceal facts that would affect the outcome of a § 1782 petition. *Deposit Ins. Agency v. Leontiev*, No. 17-mc-00414, 2018 WL 3536083, at *11 (S.D.N.Y. July 23, 2018). Denial of a petition is warranted where, as here, the petitioner deliberately fails to disclose key facts about related litigation out of recognition that "a candid description of the litigation would have undermined if not defeated its application." *In re WinNet R CJSC*, No. 16-mc-484, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017).

DCACTIVE-54949393.2

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Port Fund Entities' motion to intervene and deny GIC's Application.

Dated: June 26, 2020

Respectfully submitted,

CROWELL & MORING LLP

By: /s/ Kathy Hirata Chin
    Kathy Hirata Chin
    Sarah M. Gilbert
    590 Madison Avenue
    New York, New York 10022
    (212) 223-4000
    khchin@crowell.com
    sgilbert@crowell.com

*Counsel for the Port Fund L.P. and Port Link GP Ltd.*

11