UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

EX PARTE APPLICATION OF GULF INVESTMENT CORPORATION FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No. 1:19-mc-00593-VSB

## SUPPLEMENTAL DECLARATION OF BARNABY GOWRIE

Pursuant to 28 U.S.C. § 1746, I, **BARNABY GOWRIE** hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**Introduction**

1. I am the same Barnaby Gowrie, Attorney-at-Law in the Cayman Islands with the firm, Walkers, who submitted a declaration executed on 14 May 2020 in these proceedings ("**Gowrie 1**").

2. I continue to act as Cayman Islands legal counsel to The Port Fund L.P. (the "**Fund**") and its general partner, Port Link GP Ltd. (the "**GP**", and together with the Fund, the "**Port Fund Entities**") on a number of matters, including an ongoing proceeding in the Cayman Islands pursuant to which Gulf Investment Corporation ("**GIC**") seeks the disclosure of certain documents and information pursuant to section 22 of the Cayman Islands Exempted Limited Partnership Law (2018 Revision) (the "**ELP Law**") (the "**GIC S.22 Proceeding**").

3. I make this declaration (a) in support of the Port Fund Entities' motion to intervene and opposition to GIC's application for an order under section 1782 of Title 28 of the

US Code ("**Section 1782**") to serve subpoenas on twelve correspondent banks for the purpose of obtaining documents relating to certain transactions entered into by the Port Fund Entities (the "**GIC Application**"); and (b) in response to the second and third declarations submitted by Anna Peccarino in these proceedings, executed respectively on 12 June 2020 ("**Peccarino 2**") and 19 June 2020 ("**Peccarino 3**").

4.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge, and my review of relevant documents which are identified throughout this declaration.  To the extent that statements in this declaration are of my legal opinion, they represent my views of the laws of the Cayman Islands only.[1]

**Status of the S.22 Proceedings**

5.      As noted in Gowrie 1, both GIC and the Kuwait Ports Authority (another limited partner of the Fund) (the "**KPA**", and together with GIC, the "**S.22 LPs**") commenced proceedings in the Cayman Islands under section 22 of the ELP Law (the "**KPA S.22 Proceeding**" and together with the GIC S.22 Proceeding, the "**S.22 Proceedings**").

6.      On 16 June 2020, the Grand Court of the Cayman Islands (the "**Cayman Court**") handed down its judgment in the S.22 Proceedings (the "**S.22 Judgment**") (attached hereto as **Exhibit 1**).  Rather than determining the entitlement of the S.22 LPs to the specific information they requested, Justice Parker made high level determinations on certain legal issues with respect to the interpretation of section 22 of the ELP Law, concluding that section 22 is to have a broad operation providing the S.22 LPs with an entitlement to demand and receive *"true and full information regarding the business and financial affairs of the partnership."*, which includes the books and records of the Fund.

7.      In light of the S.22 Judgment, Ms Peccarino submitted Peccarino 3 to *"update the*

---

[1] I also certify that the exhibits attached hereto are true and correct copies of the original documents.

*Court on the [S.22] Judgment"*. While Peccarino 3 is largely uncontroversial, it does not highlight the significant amount of issues which are to be worked out between the parties as to the implications of the S.22 Judgment.

8. Firstly, as stated above, the S.22 Judgment has not dealt with the question of whether all (or any) of the information/documents sought by the S.22 LPs fall within the scope of section 22, but rather only dealt with the legal interpretation of section 22 of the ELP Law. Accordingly, the parties must now seek to agree an order on the specific disclosure to be given by the Port Fund Entities through the application of the S.22 Judgment (the "**Disclosure Order**"), by seeking to agree what information and documents are required to provide *"true and full information regarding the business and financial affairs of the partnership."*

9. Secondly, the S.22 Judgment does not expressly deal with a number of arguments made by the Port Fund Entities in the S.22 Proceedings, including (a) whether there should be a "proportionality" test applied to the disclosure of the information and documents, and (b) whether or not the Port Fund Entities are entitled to redact confidential aspects of documents and/or whether redactions are permitted as regards documents which include irrelevant information which would not fall within section 22 in the first place.

10. Thirdly, it is not entirely clear from the S.22 Judgment whether working papers, which are specifically sought by the S.22 LPs, are in fact required to give "true and full" information about the Fund's affairs.

11. Fourthly, while it may be interpreted from the S.22 Judgment that the Port Fund Entities may not be entitled to insist on the undertaking sought from the S.22 LPs as set out at paragraph 25 of Gowrie 1, this is not explicitly stated.

12. Fifthly, the S.22 Judgment is not entirely clear as to whether an order for

disclosure should be made as regards documents and information which have already been provided by the Port Fund Entities to the S.22 LPs, and where there is nothing further to provide in answer to those particular document and information requests.

13.   In circumstances where the S.22 Judgment has not resulted in an order explicitly directing disclosure of certain documents/information or categories of documents/information and where there are substantial issues required to be agreed between the parties, the S.22 Proceedings should still be considered very much active and on foot.  Should the parties be unable to reach agreement as to the terms of the Disclosure Order, it may be necessary for a further hearing to take place before Justice Parker in order to determine what information/documents fall within section 22 of the ELP Law and how the parties are to deal with the outstanding issues I have set out at paragraphs 8 to 12 above, with reference to the legal findings made in the S.22 Judgment.

14.   In addition, as stated by Ms Peccarino at paragraph 21 of Peccarino 3, it is open to the Port Fund Entities to appeal the forthcoming Disclosure Order up to 14 days after the order has been perfected, should they consider it appropriate to do so.  In addition, it is open to the Port Fund Entities to apply for a stay in the execution of the Disclosure Order should the Port Fund Entities appeal the Disclosure Order.

**Just and Equitable Winding Up Petition**

15.   As noted at paragraph 27 of Gowrie 1, Ms Peccarino's first declaration submitted in these proceedings on 20 December 2019 ("**Peccarino 1**") failed to "*properly explain what potential claims GIC may have against the Fund in the Cayman Islands with any level of specificity, nor does it identify the legal basis for any such potential claims*".  It is only in response to Gowrie 1, more than 6 months after Peccarino 1 was executed, that GIC (in

4

Peccarino 2) has now sought to explain with any specificity the claims which it contemplates against the Port Fund Entities in the Cayman Islands. In particular, paragraph 5 of Peccarino 2 confirms (again, for the first time) that GIC intends to present a petition to the Cayman Court seeking the winding up of the Fund on the grounds that it would be just and equitable to do so – such confirmation being an obvious attempt to remedy the failure in Peccarino 1 to adequately particularise the *"Contemplated Cayman Litigation"* referred to therein.

16. Peccarino 2 further states that "*GIC intended to file the J&E Petition when it filed the [GIC] Application*"[2] and that GIC was already in possession of "*compelling evidence…demonstrating both (a) want of probity on the part of management; and (b) a resultant loss of confidence in the general partner, which is both justified and irreparable*" (allegation (a) and (b) together, the "**GP Allegations**")[3]. Ms Peccarino's suggestion that GIC has always intended to file a winding up petition on just and equitable grounds is particularly surprising in circumstances where (a) Peccarino 1 failed to refer to any intention to bring an action seeking to wind up the Fund, nor provides any explanation on the associated legal framework in the Cayman Islands as Peccarino 2 has sought to do; and (b) GIC has never identified or relied upon any of this "compelling" evidence which purportedly supports the intended just and equitable petition, which one would reasonably expect to have, at very least, been identified by GIC in light of the detailed correspondence flowing between GIC (and its representatives) and the Port Fund Entities (and their representatives) over the past year and the various ensuing legal actions brought by GIC. Accordingly, Ms Peccarino's statement that the purpose of Peccarino 2 "*is to (a) provide further detail on, and a legal framework for, the petition that GIC currently intends to pursue in the Cayman Islands*" is misleading in

---

[2] Paragraph 12 of Peccarino 2
[3] Paragraph 11 of Peccarino 2

circumstances where this is clearly the first time the Court and, indeed, the Port Fund Entities have been provided notice that GIC intends to pursue such claims against the Port Fund Entities.

17. What is equally surprising is Ms Peccarino's suggestion at paragraph 11 of Peccarino 2 that GIC has been in possession of "compelling" evidence to substantiate the GP Allegations since at least the date on which the GIC Application was filed (i.e. 26 December 2019)[4]. Notwithstanding GIC apparently being in possession of such evidence for at least six months, as stated above, it has not yet identified or brought any of this "compelling" evidence to the attention of the Port Fund Entities. Further, the KPA has also filed an application pursuant to section 1782 of Title 28 of the US Code (Case 1:20-mc-00046-ALC), (the "**KPA Application**"). The KPA has sought substantially the same information as GIC in the S.22 Proceedings and has always had the same access to the Port Fund Entities' information as GIC. In support of the KPA Application, the KPA's Cayman Islands counsel, Ms Jennifer Fox submitted a declaration executed on 27 January 2020 which confirmed at paragraph 10 that the KPA currently has insufficient evidence to bring a winding up petition against the Fund on the just and equitable ground. In circumstances where the KPA and GIC have been provided with all of the same information from the Port Fund Entities, including in respect of the S.22 Proceedings, it is reasonable to conclude that GIC does not have any such "compelling" evidence. Accordingly, notwithstanding Ms Peccarino's statement at paragraph 12 of Peccarino 2 that "*GIC is not using the Application as a fishing expedition to obtain discovery…*", it certainly appears to be an application which would reasonably be categorised as a "fishing expedition".

18. Peccarino 2 further contends that "*there have been numerous instances in the Cayman Courts where a petitioner has relied on the mismanagement ground and a winding up has been ordered in circumstances where information has been wrongly withheld from a limited*

---

[4] Paragraph 11 of Peccarino 2


*partner. Such cases include instances where management have failed to disclose audited accounts to limited partners*"[5]. However, the only case Peccarino 2 uses to support this statement is *In re Cybernaut Growth Fund L.P* (Unreported) Jones J, Grand Court, 12 September 2013. Relevantly, the Judge in *Cybernaut* at paragraph 6 outlined the cumulative test a petitioner is required to satisfy when bringing a J&E Petition on the grounds that GIC intends to rely:

> "*The onus is on the Petitioners to establish that the GP is guilty of misconduct as alleged in the petition; that their loss of trust and confidence in the GP is both justifiable **and** irreparable; **and** that the circumstances justify making of a winding up order*"
>
> [emphasis added]

19. In circumstances where the facts in *Cybernaut* can be distinguished in a number of material respects to the present circumstances, Ms Peccarino's absolute reliance on *Cybernaut* is misplaced where the matters for determination and the facts before the Judge in *Cybernaut* are clearly not "on all fours" with those that would exist should GIC present a petition to wind up the Fund on the just and equitable ground. Firstly, the parties in *Cybernaut* agreed that the circumstances of the case justified the winding up of the partnership, and the question the Judge was asked to determine was whether the limited partners should have a right to participate in the process through the appointment of independent official liquidators rather than the general partner winding up the partnership in accordance with the partnership agreement. Secondly, *Cybernaut* certainly does not go so far so as to establish that, in circumstances where audited financial accounts are not provided in accordance with the general partner's obligation to do so, such failure gives rise to a "justifiable" and "irreparable" loss of trust and confidence and is conclusively determinative on winding up a partnership on a just and equitable basis.

20. As set out above, it is not enough for any loss of confidence to be only

---

[5] Paragraph 8 of Peccarino 2

"justifiable". In order for a J&E Petition to be successful, the petitioner must satisfy the second limb such that it must also be shown that any loss of confidence is also "irreparable". Determining whether any alleged loss of trust or confidence is "*irreparable*" is plainly a fact dependent exercise. As noted in the exhibit to Gowrie 1, on 29 January 2020, independent directors from FFP (Directors) Limited (the "**FFP Directors**") were appointed to the board of directors of the GP to manage the affairs of the Port Fund Entities. In circumstances where the acts which allegedly caused the purported loss of confidence in the GP occurred prior to the appointment of the FFP Directors, who now control the majority of the board of directors of the GP, it is difficult to see how GIC can reasonably claim that such purported loss of confidence is "irreparable".

21. Finally, Ms Peccarino states at paragraph 9 of Peccarino 2 that "*the Fund was not wound up in an orderly and responsible manner at the end of the term on 31 December 2012, or at all*". There is no general requirement under Cayman Islands law to immediately realise assets once the investment term of a fund has expired, only that no new investments should be undertaken and that the investments are dealt with and realised for the benefit of the Fund. As far as I am aware, it is not alleged by any of the parties that the Port Fund Entities made any new investments following the expiry of the term of the Fund.

**Overlap between the information sought and GIC's ability to obtain such information in the GIC S.22 Proceeding**

22. In Gowrie 1, I noted how "*the Cayman Court may not consider it appropriate for a party to a proceeding in the Cayman Islands to seek relief under section 1782 where: (a) pursuing a section 1782 application would disrupt primary proceedings before the Cayman Court; and/or (b) the section 1782 application would be wholly unnecessary because the same*

*information can be obtained through proceedings in the Cayman Court."*[6]

23. Ms Peccarino states at paragraph 16 of Peccarino 2 that the above comments have *"no bearing"* in the present case in circumstances where (i) *"there is no overlap between the U.S. proceedings pursuant to the Application and the Section 22 Proceeding"*[7], *"GIC could not obtain the Requested Discovery sought in the Application via the Section 22 Proceeding"*[8] and *"had no choice but to institute both the Cayman and US proceedings"*[9].

24. Not only have the Port Fund Entities demonstrated that there is significant overlap between the information requested by GIC in the GIC Application and the GIC S.22 Proceeding[10], the Port Fund Entities provided GIC with an opportunity to amend the information requests in the GIC S.22 Proceeding to incorporate any information sought in the GIC Application (to the extent such information was not already included in GIC's information requests in the GIC S.22 Proceeding).[11] GIC refused to consolidate the information requests into the GIC S.22 Proceeding. Accordingly, it is misconceived to state that GIC *"had no choice"* but to commence parallel information gathering proceedings in different jurisdictions which seek overlapping information.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 26th day of June, 2020.

_____
BARNABY GOWRIE

---

[6] Paragraph 33 of Gowrie 1
[7] Paragraph 16 of Peccarino 2
[8] Paragraph 18 of Peccarino 2
[9] Paragraph 18 of Peccarino 2
[10] Paragraph 17 of Gowrie 1
[11] Footnote 5 at Paragraph 16 of Gowrie 1