## quinn emanuel trial lawyers | washington, dc

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3615**

WRITER'S EMAIL ADDRESS
**kristintahler@quinnemanuel.com**

September 2, 2020

<u>VIA ELECTRONIC FILING</u>

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

Re:   <u>*Ex Parte* Application of Gulf Investment Corporation: Case No. 1:19-mc-00593</u>

Dear Judge Broderick:

We write in response to the August 31, 2020 letter ("**August 31 Letter**") (ECF 43) submitted by counsel to intervenors The Port Fund L.P. and Port Link GP Ltd. (collectively, "**Intervenors**"). Petitioner Gulf Investment Corporation ("**GIC**") objects to Intervenors' (1) requests related to the retention agreement between GIC and its Cayman counsel, Anna Peccarino, an attorney with the Cayman Island office of Travers Thorp Alberga, Attorneys-at-Law ("**Retention Agreement**"); and (2) improper attempt to inject unsolicited and irrelevant supplemental argument and information for the Court's consideration.

Retention Agreement

On August 14, 2020, during oral argument in the above-referenced action ("**Oral Argument**") on GIC's *ex parte* application ("**Application**") pursuant to 28 U.S.C. § 1782 ("**Section 1782**"), the Court requested that GIC submit the Retention Agreement for *in camera* review. Oral Argument Transcript (ECF 41) at 13:20–14:1 ("What I would ask is – and this would just be solely for my *in camera* review, but to the extent that there is a retention letter … I would ask that it be produced for in camera review by myself with regard to Ms. Peccarino's retention").

On August 28, 2020, in compliance with the Court's request, GIC submitted the Retention Agreement for *ex parte*, *in camera* review, making clear that no privileges or confidences were being waived—in the United States or Cayman—and marking the Agreement "Confidential" and "Privileged." Intervenors now make the conclusory assertion that GIC should "be required to either provide [them] with a copy of the Retention Agreement or establish that the agreement is protected

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

The Honorable Vernon S. Broderick
September 2, 2020

from disclosure." August 31 Letter at 2. GIC disagrees. The Court granted Intervenors leave to object if a copy of the Retention Agreement was "not disclosed to [them] *if [they] believe that it should be*." Oral Argument Transcript at 63:25-64:2 (emphasis added). Intervenors have failed to comply with the Court's directive, neglecting to even attempt to provide any reason for *why they believe the Retention Agreement should be disclosed them*.[1] They did not because they cannot. Indeed, there is there is no basis on which Intervenors could argue that the Retention Agreement should be disclosed given that the agreement is fundamentally immaterial to any inquiry before this Court, and the irrelevant details of Ms. Peccarino's engagement are privileged, confidential, and could provide unfair advantages to Intervenors (in multiple jurisdictions) by, for example, revealing fees for work done in the matter. Regrettably, Intervenors appear to be attempting to create, whether for the purposes of diversion or delay, a collateral contest about a matter that bears no relevance to, nor determinative effect on, the narrow questions before the Court.

The context in which the Court requested the Retention Agreement was in discussing GIC's contemplated just and equitable winding up petition ("**J&E Petition**"), and specifically to confirm whether or not the Agreement made reference to such. GIC did not, as Intervenors' wrongly claim, "put[] the scope of Ms. Peccarino's retention at issue." August 31 Letter at 1. Again, without waiving any privileges or confidences, that Ms. Peccarino was so engaged is clear from the Retention Agreement, which states "Thank you for your instructions to act on behalf of the Gulf Investment Corporation ("GIC") in connection with a potential information request in relation to [Port Link (GP) Limited and The Port Fund] and any related advice or assistance that may be required for any further action, including a potential just and equitable winding up application."

GIC respectfully submits that this should resolve any remaining issue for Intervenors, and, absent the Court's direction, declines to engage in Intervenors' additional irrelevant digressions regarding the Retention Agreement. If the Court wishes to hear from the parties on any remaining matters relevant to the Retention Agreement, GIC respectfully requests a briefing schedule.

Supplemental Argument and Information

GIC similarly rejects Intervenors' attempt to provide "further answers" to the Court. August 31 Letter at 2. Your Honor only authorized GIC's submission of (1) the Retention Agreement; and (2) a joint update on GIC's ongoing proceeding in Cayman against Intervenors ("**Section 22 Proceeding**"), which the parties submitted on August 28, 2020 (ECF 42). The purported "answers" are neither. They also are entirely irrelevant to the question of GIC's entitlement for disclosure under Section 1782, currently before the Court, and represent a plain attempt to muddy the waters. The time to make these points was at the Oral Argument, or before, and Intervenors failed to do so. Notably, Intervenors tried a similar *post facto* tactic in the Section

---

[1] At no point during the Oral Argument or any time thereafter did Intervenors request to see the Retention Agreement or explain why they needed to see it. Indeed, Intervenors have no valid grounds for demanding to see the Retention Agreement because the terms of Ms. Peccarino's engagement are not at issue. The only question related to the J&E Petition, which is now resolved for Intervenors.

2

The Honorable Vernon S. Broderick
September 2, 2020

22 Proceeding (couched there in terms of a proposed, unsolicited joint submission to the Cayman court). GIC rejected Intervenors' attempt there and the Cayman court followed, prior to finding for GIC in the Section 22 Proceeding. *See* May 21, 2020 email from Cayman court to Walkers and Travers Thorp Alberga (Intervenors' and GIC's Cayman counsel, respectively), annexed hereto as Ex. A.

*   *   *

Accordingly, we respectfully request that the Court (1) deny Intervenors' requests related to the Retention Agreement; and (2) disregard the unsolicited, supplemental argument and information that Intervenors provided in and with the August 31 Letter.[2] To the extent the Court has any remaining questions, we respectfully request a briefing schedule on any remaining issues so that GIC may fully respond.

Thank you for your consideration.

Respectfully submitted,

*/s/ Kristin Tahler*

Kristin N. Tahler


cc:   Kathy Chin, Esq.
      Sarah Gilbert, Esq.
      Crowell & Moring LLP (via ECF)

---

[2] Intervenors highlight (August 31 Letter at 2) the U.S. Department of State's Kuwait 2019 Human Rights Report ("**Report**") (ECF 43-1), and its mention of alleged abuses faced by now-convicted Port Fund executive Marsha Lazareva. The August 31 Letter, however, fails to acknowledge the Report's sourcing to unnamed "defense attorneys" for these allegations (Report at 7), and that Crowell & Moring LLP, Intervenors' counsel in this action, "leads Lazareva's defense team." Press Release, Crowell & Moring LLP, Kuwaiti Court Convicts Mother of 5-Year Old American Citizen (Nov. 11, 2019), https://www.crowell.com/NewsEvents/PressReleasesAnnouncements/Kuwaiti-Court-Convicts-Mother-of-5-Year-Old-American-Citizen. Moreover, the inclusion of these allegations in the Report appears to be yet further fruits of Intervenors' robust lobbying campaign, which only adds to GIC's well-founded concerns and supports the need for the discovery GIC seeks though the Application. *See, e.g.*, Supplemental Declaration of Kristin N. Tahler (ECF 31.1) at ¶¶ 25–26 (discussing GIC's concerns about expenditures for a USD 4.9 million lobbying and public relations campaign benefitting Ms. Lazareva).