# Exhibit A



Walkers
190 Elgin Avenue
George Town
Grand Cayman KY1-9001
Cayman Islands

**D:** +1 345 815 1879

**E:** Jennifer.Fox@ogier.com

Ref:  JJF/BYL/427021.00001

Your ref:  BG/LP/D08984

**Attention: Barnaby Gowrie, Blake Egelton and Luke Petith**

14 October 2020

Dear Counsel

**THE PORT FUND L.P. (THE "FUND") AND PORT LINK GP LTD. (THE "GP" AND TOGETHER, THE "PORT FUND ENTITIES")**

1   As you know, we act for the Kuwait Ports Authority ("KPA").

2   We refer to your letter dated 30 September 2020 purporting to make a demand that KPA pay the sum of US$13,230,877 to the Fund on the basis that it was unjustly enriched in this amount consequent upon an alleged over-payment of its entitlement following the distribution made to it in February 2019.

3   We note that your client's claim against KPA is entirely premised and dependent upon wholly unsubstantiated assertions including, entirely without limitation:

(i)   that the gross sale price of the Clark Asset and the receipt by the Fund of US$496,429,767 in respect of it (we note that the sale price of the Clark Asset has been reported by your client at different times as ranging from US$380 to US$655 million and was reported by the purchaser and by the independent press as being approximately US$1 billion), and

Ogier
89 Nexus Way
Camana Bay
Grand Cayman, KY1-9009
Cayman Islands

T +1 345 949 9876
F +1 345 949 9877
**ogier.com**

A list of Partners may be inspected on our website

-10904721-1

THE PORT FUND L.P. (THE "FUND") AND PORT LINK GP LTD.
14 October 2020

    (ii)    that the US$496,429,767 received upon the sale of the Clark Asset legitimately resulted in a distribution to the Limited Partners of only US$305 million "following the settlement of certain of the Fund's obligations and payment [of] the Fund's outstanding liabilities".

4    As to the difference between the sum allegedly received by the Fund upon the sale of the Clark Asset and that distributed to the Limited Partners, the accuracy and legitimacy of the US$191,429,767 deductions reported by the Fund are themselves dependent upon various factors including, without limitation:

    (i)    (the right of the GP to admit on behalf of the Fund an obviously bad, and in any event grossly overstated, US$60 million claim by the Fund's Investment Manager in the DIFC,

    (ii)    the legitimacy of very considerable payments to third parties who had allegedly provided services to the Fund in connection with the sale of the Clark Asset and other assets in circumstances where:

        (a)    no evidence of any retainer, engagement letter or of any services having actually been rendered, have been provided by the Fund to the Limited Partners, and

        (b)    it is highly likely that the GP and the alleged service providers failed to disclose close connections to each other,

    (iii)    the legitimacy of the payment of a considerable sum to a director of the company whose SPV subsidiary purchased the Clark Asset, apparently to ensure that such director would favour the interests of the Fund rather than those he owed to the company of which he was a director,

    (iv)    the legitimacy of payments of further considerable sums amounting to at least US$16 million to a series of undisclosed recipients for undisclosed reasons.

5    In addition to, and irrespective of, the various facts and matters referred to above, the Fund's claim is further dependent on the legitimacy and accuracy of the allocation the Fund has made of the US$305 million distribution as between the different Limited Partners (including those linked to the GP).  As to this, we note that your letter dated 30 September 2020 sets out KPA's 2019 ownership and loss allocation as being 41.39 percent, aligning with the Fund's financial statements for the year ended 31 December 2019.  However, the Fund has been entirely inconsistent in its use of 41.39 percent in the calculation of KPA's Limited Partner profit share and has failed to provide any justification for the basis upon which it "allocat[ed] estimated losses for the period 1 January 2019 through 5 February 2019" such that it can credibly assert that KPA's capital account was US$111,769,124.  Accordingly, it is not currently possible to determine whether KPA's capital account balance was correct as at 1 January 2019, nor whether they were correctly allocated losses to 5 February 2019.

6    Notwithstanding the dependency of your client's claim on (inter alia) the various facts and matters outlined above, your letter of 30 September 2020 does not attach any evidence whatsoever to substantiate the bald assertions it contains.

7    Unless and until full and contemporaneous supporting documentary evidence has been provided by your client, neither we nor our client is in any position either to consider the contents of your letter or to respond to it.  Should your client decide to carry out its threat to issue proceedings, all such material (and more) will of course have to be provided in very short order

THE PORT FUND L.P. (THE "FUND") AND PORT LINK GP LTD.
14 October 2020

to our client in discovery and be exposed to the full scrutiny of the Court and we will draw this letter to the attention of the Court on the issue of costs.

Yours faithfully,

*Ogier*

**Ogier**

-10904721-1