```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/30/2020__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                :
GULF INVESTMENT CORP.,               :
*In re: Ex Parte Application of Gulf Investment*  :
*Corp. for an Order to Conduct Discovery for*  :
*Use in Foreign Proceedings Pursuant to 28*  :      19-mc-593 (VSB)
*U.S.C. 1782*                                   :
                                                :      **OPINION & ORDER**
                                Applicant,  :
                                                :
                                                :
THE PORT FUND L.P., PORT LINK GP  :
LTD.,                                                 :
                                                :
                               Intervenors.  :
-----------------------------------------------------------X

Appearances:

Kristin Tahler
Quinn Emmanuel Urquhart & Sullivan, LLP
Washington, D.C.
Counsel for Applicant

Kathy Hirata Chin
Crowell & Moring LLP
New York, NY
Counsel for Intervenor

VERNON S. BRODERICK, United States District Judge:

       Gulf Investment Corporation ("GIC") brings this application for an Order pursuant to 28 U.S.C. § 1782 authorizing it to obtain discovery from banks and professional service providers within the Southern District of New York for future use in foreign litigation. (Doc. 1.) Because GIC did not show in its application that the discovery it seeks is "for use" in a foreign proceeding that is "within reasonable contemplation," the application is DENIED.

I.   **<u>Background</u>**[1]

GIC is a Kuwait-based corporation owned by the governments of the six member states of the Gulf Cooperation Council; specifically, Bahrain, Kuwait, Oman, Qatar, Saudi Arabia, and the United Arab Emirates. (Tahler Decl. ¶ 1 n.1.) The Port Fund L.P. is an exempted limited partnership organized under the laws of the Cayman Islands created to make private equity investments. (GIC Mem. 5.) Port Link GP Ltd., is the general partner in Port Fund L.P. (together "the Port Fund"). (*Id.* 2.) The Port Fund was set up in 2007 as a vehicle for investments in port-related assets around the world. (*Id.*) GIC is one of the limited partners in the Port Fund. (*Id.* 1.) Specifically, GIC invested a total of USD 20 million into the Port Fund between 2007 and 2013. (*Id.* 5.)

The investment most referenced and relied upon in the application is Clark Global City, a major greenfield airport infrastructure site in the Philippines (the "Clark Asset"). (*Id.* 1.) In November 2017, the Port Fund announced the sale of the Clark Asset. (*Id.* 2.) According to GIC, financial filings in the Philippines indicated that the sale price approached 1 billion dollars in United States currency,[2] yet the amount reported by the Port Funds was $496 million. (*Id.*) Following the sale, and unbeknownst to GIC, the sale proceeds were transferred to an account at Noor Bank in Dubai held in the name of Port Link. (*Id.*) Upon arrival in Dubai, the money was frozen by the UAE Central Bank. (*Id.*) The monies remained frozen in Dubai until February 2019, when some of it was unfrozen and eventually distributed to the Port Fund's limited partners. (*Id.*) However, as of the filing of the application, only $305 million (or approximately

---

[1] The background is taken from the memorandum of law submitted by GIC in support if it's § 1782 application, ("GIC Mem.", Doc. 3), the Declaration of Kristin N. Tahler in support of the application, ("Tahler Decl.", Doc. 5), and the Declaration of Anna Peccarino in support of the application, ("Peccarino Decl.", Doc. 6). The information relayed in this section is not meant to be factual findings, and I make no such findings.

[2] Unless otherwise indicated all amounts referenced in the Opinion & Order are in United States dollars.

61% of the total amount) had been distributed to the Port Fund's limited partners, of which GIC received $25.4 million.  (Tahler Decl. ¶ 12.)

GIC filed its application seeking discovery to "support contemplated litigation by GIC in the Cayman Islands ('Contemplated Cayman Litigation') pursuing [] answers" to two main questions "and, ultimately, its now-missing money." (GIC Mem. 1.)  First, the basis for the discrepancy between the sales price of the Clark Asset as reported in the Philippines and the Port Fund's reported exit amount, and second, the basis for the discrepancy between the reported exit amount and the amount distributed to the limited partners.  (*Id.* 3.)  The other alleged misconduct includes:  (1) litigation in Dubai instituted by the Fund Manager against the Port Fund and Port Link which resulted in an uncontested award of $57 million to the Fund Manager; (2) the potential misappropriation of Port Fund assets to pay lobbying and public relations firms; (3) unexplained, favorable treatment of a party related to KGL Investment Company KSCC ("KGLI"), the sponsor of the Port Fund, and the placement agent and administrator for the Port Fund, under a loan agreement related to the Port Fund's investment in Damietta International Ports Company ("DIPCO"); and (4) the Port Fund's engagement of an alleged interested and/or conflicted financial advisor, Apache Asia Limited ("Apache Asia"), purportedly to assist with transactions relating to at least two of its investments.  (*Id.*)  GIC brings the application seeking permission to subpoena documents and information for use in contemplated litigation in the Cayman Islands from twelve non-party banks located in the Southern District of New York ("Correspondent Banks").  GIC seeks this discovery because it "has been unable to fully investigate or substantiate the misconduct involving the Port Fund." (*Id.* 12.)

GIC also seeks from the Correspondent Banks documents and information relating to, among other things,:  (1) the Port Fund's investment in the Clark Asset; (2)  the Port Fund's

3

investment in shipping company Negros Navigation; (3) the Port Fund's investment in DIPCO; (4) transactions between the Port Fund, Port Link, KGLI, and the Fund Manager and certain companies that advised the Port Fund ("Advisors"); (5) transactions between the Port Fund Companies and lobbying firms that worked on behalf of the Port Fund ("Lobbying Firms"); (6) transactions between the Port Fund Companies and public relations companies that may have worked on behalf of the Port Fund ("Public Relations Companies"); (7) transactions between the Port Fund Companies and entities controlled by KGLI's former parent Kuwait and Gulf Link Transport Company K.S.C.P. ("KGL") ("Related Companies"); and (8) transactions between the Port Fund Companies and certain companies outside of the Related Companies that have suspicious/hidden ownership structures ("Anomalous Companies") (collectively, "Requested Discovery"). (*Id*. 4, 5.) According to GIC, its investigation to date indicates that the Correspondent Banks would have processed such transactions. (*Id*.)

## II. Procedural History

GIC filed its § 1782 application on December 26, 2019, with a memorandum of law in support and declarations from Kristin Tahler, Anna Peccarino, and Nicholas Bortman, each declaration with one or more exhibits. (Docs. 1, 4, 5, 6, 7.) On January 6, 2020 the Port Fund filed a letter request to intervene and objecting to the application. (Doc. 8.) On January 9, 2020, GIC filed a letter opposing the Port Fund's letter request to intervene. (Doc. 10.) On January 30, 2020, the Port Fund filed a letter in further support of its request to intervene, and GIC followed a response on February 3, 2020. (Docs. 17, 18.)

On March 6, 2020, I issued an Order directing the parties to meet and confer on a briefing schedule jointly briefing the motion to intervene and the opposition to the 1782 application. (Doc. 19.) On April 20, 2020, I adopted the proposed briefing schedule. (Doc. 22.)

On May 15, 2020, the Port Fund filed its motion to intervene and in opposition to GIC's § 1782 application, (Doc. 23), a memorandum of law, (Doc. 24), declarations of Barnaby Gowrie with exhibits, (Doc. 25, 28), and declaration of Kathy Chin with exhibits, (Doc. 26).  On June 12, 2020, GIC filed its opposition to the Port Fund's motion to intervene and reply in further support of its application.  (Doc. 31.)  On June 26, 2020, the Port Fund filed a reply memorandum of law in further support of its motion to intervene and in opposition to the application with supplemental declarations of Kristin Tahler with exhibits, and Anna Peccarino.  (Doc. 36.)  Oral argument was held on August 14, 2020.  At oral argument I granted the Port Fund's motion to intervene.  (*See generally* Transcript of Proceedings ("Tr.") at 3-10, Doc. 40.)  After oral arguments the parties filed a joint status update, and numerous subsequent letters in further response to my questions at oral argument and with further status updates.  (Docs. 42, 43, 44, 45, 46, 47.)

### III.  Legal Standard

When reviewing an application for discovery related to a foreign proceeding under 28 U.S.C. §1782, I must first determine whether I have the authority to grant the request.  I am authorized to grant a § 1782 request if: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)).  These requirements are jurisdictional in nature, and if not met I cannot grant the § 1782 application.  *See In re del Valle Ruiz,* 939 F.3d 520, 526 (2d Cir. 2019); *Kiobel by Samkalden v. Cravath, Swaine, & Moore LLP*, 895 F.3d 238, 243 (2d Cir.

2018).

"[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." *In re Application for an Order Permitting Metallgesellschaft AG To Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). To determine whether to exercise my discretion to grant the discovery request, I must consider the four so-called *Intel* factors: (1) whether the person from whom discovery is sought is not a participant in the foreign proceeding and is therefore outside the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal and its receptivity to judicial assistance by United States federal courts; (3) whether the request conceals an attempt to circumvent foreign evidence-gathering rules; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Applicant need not "affirmatively show" that the foreign courts are receptive to United States federal judicial assistance; rather, the burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782. *In re Application of OOO Promnefstroy for an Order To Conduct Discovery for Use in a Foreign Proceeding*, No. 19-mc-99, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009). *Cf. In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006) (relying on foreign tribunal's express objection to conclude that it was not receptive to the assistance of the U.S. federal courts).

I may also weigh the probative value of the requested materials in considering whether the requests are unduly burdensome. *See In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Solution Int'l To Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 428, 432 (S.D.N.Y. 2014); *see also Schmitz v. Bernstein Liebhard & Lifshitz,*

6

*LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) (expressing a "preference for narrowly tailored discovery orders where possible," in lieu of the outright rejection of applications under § 1782).  An application must seek a "specific, discrete set of documents that are easily identifiable." *In re Berlamont*, No. 14-mc-00190, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014).

### IV. Discussion

I first address the statutory requirements.  Here, the first and third statutory requirements are not in dispute.  (*See* Port Fund Mem. 13.)[3]  Therefore, the only statutory requirement in dispute is whether or not the requested materials are for use in a foreign proceeding.

To satisfy the "for use in a foreign proceeding" requirement, the proceeding before a foreign or international tribunal need not be ongoing or imminent, rather litigation must merely be within "reasonable contemplation." *Intel*, 542 U.S. at 259.  "Courts must embrace Congress's desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse." *In Re Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, No. 14 Civ. 1801(NRB), 2014 WL 3404955, at* 6 (S.D.N.Y July 9, 2014).  Therefore, courts should "be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the claims they have already made." *Deposit Ins. Agency v. Leontiev*, No. 17MC00414GBDSN, 2018 WL 3536083, at *9 (S.D.N.Y. July 23, 2018) (citing *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-CV-1801 (NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accounts &/or Inv.*

---

[3] "Port Fund Mem." refers to the Memorandum of Law in Support of the Port Fund Entities' Motion to Intervene and Opposition to GIC Application Pursuant to 28 U.S.C. §1782.  (Doc. 24.)

7

*Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015)). Merely retaining counsel and "discussing the possibility of initiating litigation" is insufficient to show that a proceeding is within reasonable contemplation. *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015). An applicant is required to show "objective indicium that the action is being contemplated" that goes beyond a subjective "twinkle in counsel's eye." *Id.* at 123–24. "[S]worn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement." *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, *4 (S.D.N.Y. Jan. 16, 2020) (citing *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018)).

GIC fails to demonstrate in its application that the evidence it seeks is "for use" in foreign litigation as the litigation is not "within reasonable contemplation." In the initial Declaration of Anna Peccarino, an attorney with the Cayman Islands office of Travers Thorp Alberga, Attorneys-at-Law ("TTA") counsel for GIC in the Cayman Islands, she states that "the Requested Discovery is being sought to support potential claims that GIC is considering pursuing in the Cayman Islands in relation to the Port Fund." (Peccarino Decl.[4] ¶ 6.) Ms. Peccarino further states that her law firm has "been evaluating" claims against the Port Funds in a number of areas. (Peccarino Decl. ¶ 7.) In its memorandum submitted in support of its application, GIC admits that it seeks discovery because it "has been unable to fully investigate or substantiate the misconduct involving the Port Fund." (GIC Mem. 12.) These statements suggest GIC intends to use the discovery to gather evidence to initiate a proceeding. An assertion that the applicant "plans to use the evidence [it] seeks to assess whether to initiate actions . . . underscores the 'mere[ ] speculative[ness]' of the contemplated proceedings, and is

---

[4] "Peccarino Decl." refers to the Declaration of Anna Peccarino filed in support of GIC's application. (Doc. 6.)

plainly insufficient to provide th[e] Court with 'some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.'" *In re Sargeant*, 278 F. Supp 3d 814, 823 (S.D.N.Y. 2017) (quoting *KPMG*, 798 F.3d 16 124).

GIC argues that its private investigations into the Port Fund is sufficient to show that the contemplated proceeding is more than a twinkle in counsel's eye, (Tr. 15); however, this argument is unpersuasive.  Although these investigations may have aided GIC in its consideration of legal action, GIC did not provide any detail as to the potential form of litigation it intended to pursue, nor does it provide legal theories under which it intended rely in such litigation.  Specifically, Ms. Peccarino, an attorney at TTA retained to "evaluate potential claims", fails to provide a description of the form of litigation GIC intends to pursue, nor does she describe the potential claims and/or legal theories GIC would include or employ in such a contemplated litigation.  Although stating a legal theory is not a requirement of § 1782, it is one factor I can consider.  *See In re Top Matrix Holdings Ltd.*, 2020 WL 248716 at *4; *see also Mangouras v. Squire Patton Boggs*, Nos. 17-3633, 19-100, 19-186, 2020 WL 6554050, at *9 (2d Cir. Nov. 9, 2020) (holding that the district court erred in finding a foreign proceeding reasonably contemplated where petitioner's "submissions did not provide the legal theory supporting such a proceeding, nor did he clearly lay out . . . the content of his claims").  The cases GIC cites in support of its motion all include an articulation of a legal theory upon which they intend to initiate proceedings.  *See In re Hornbeam Corp.*, 722 F. App'x at 9–10 (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate"); *In re Kiobel*, No. 16 Civ. 7992, 2017 WL 354183, at *2–3 (S.D.N.Y. Jan. 24, 2017) (petitioner had already drafted a "writ of summons" articulating specific claims against the target company),

9

rev'd, 895 F.3d 238 (2d Cir. 2018); *In re Furstenberg Fin. SAS*, 2018 WL 3392882, at *4 (holding that for use requirement was been met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *In re IJK Palm LLC*, No. 3:16MC171(RNC), 2019 WL 2191171, at *4 (D. Conn. Jan. 30, 2019) (stating specific legal theories of breach of fiduciary duty, negligence, and fraud). GIC lists the alleged wrongdoings that it has investigated and intends to address by purportedly initiating legal action, but fails to articulate legal theories upon which it intends to proceed to right these purported wrongs. (*See* GIC Mem. 13.)

In its reply brief, GIC states for the first time that the contemplated litigation is a "just and equitable winding up petition in the Cayman Islands against the PFEs [(Port Fund Entities)] ("J&E Petition")." (GIC Reply, 7.)[5] However, courts in this Circuit "assess the indicia of whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d at 124. Because GIC did not identify the J&E Petition as the contemplated proceeding in its application, and because the application contained no details concerning the legal theories under which GIC intended to bring suit, GIC has not shown that the foreign proceeding is within reasonable contemplation. As justification for why it failed to describe the nature of the proceeding GIC intended to bring in its application, GIC argued in its reply brief and at oral argument that it did not specify the details of the contemplated litigation because it "was a matter of litigation strategy," (GIC Reply at 10; Tr. 17), and because of the distrust between the parties, (Tr. 17). I find this explanation wanting in light of the relevant case law,

---

[5] "GIC Reply" refers to the Gulf Investment Corporation's Memorandum of Law in Response to the Port Fund Entities' Motion to Intervene and in Further Support of its Ex Parte Application for an Order to Conduct Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782. (Doc. 31.)

and alternatives available to GIC. As an initial matter, I note that GIC filed its application ex parte, so the Port Fund was not served the motion and supporting papers at the time they were filed. Moreover, assuming that GIC was still concerned about the Port Fund's reaction if they were able to access the motion and supporting papers despite it being filed ex parte, GIC does not explain why it did or could not have filed its motion and supporting documents under seal, or with redactions of, among other things, attorney work product privilege, in order to avoid tipping its hand.

GIC retained counsel in the Cayman Islands which is representing GIC in another discovery related proceeding in the Cayman Islands (the "Section 22 proceeding") in which a consent order was recently entered into, (Port Fund Nov. 11, 2020 Ltr. Ex. A.)[6], and not specifically with regard to the potential J&E Petition. The "Matter Description" in the retainer agreement states "[a]ny advice and assistance that may be required in connection with a potential information request in relation to Port Link (GP) Limited and/or The Port Fund and any related advice or assistance that may be required for any further action, including a potential just and equitable winding up application." (Retainer Agreement, submitted *in camera*.) This broad description does not concretely indicate that Cayman Islands counsel was hired with the specific purpose of filing the J&E petition. Rather, the scope of the Retainer Agreement is very broad, and includes "any advice and assistance" relating to a "potential" information request, and "potential" J&E proceeding. *Id.* No other counsel has been retained in connection with the potential J&E Petition. (Tr. 14.)

Because GIC failed to meet the second statutory requirement of § 1782, I need not

---

[6] "Port Fund Nov. 11, 2020 Ltr." refers to the letter filed by the Port Fund Entities on November 11, 2020. (Doc. 48).

11

address the four discretionary factors articulated in *Intel*. *In Re Certain Funds Accounts and/or Investment Vehicles v. KPMG*, 2014 WL 3404955 at *8.

### V.     Conclusion

Because GIC did not demonstrate in its application that the discovery it seeks is "for use" in a foreign proceeding that is "within reasonable contemplation," GIC's application for an Order pursuant to 28 U.S.C. § 1782 authorizing it to obtain discovery from banks and professional service providers within the Southern District of New York for future use in foreign litigation is DENIED.

The Clerk of Court is respectfully directed to close the motions at Documents 1 and 23, and close the case.

The Clerk of Court is respectfully directed to make the unredacted Opinion & Order viewable to attorney Kristin Tahler at Quinn Emanuel Urquhart & Sullivan.

SO ORDERED.

Dated:  November 30, 2020
        New York, New York

_____
Vernon S. Broderick
United States District Judge